**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | | |
|---|---|---|
| MARQUIS RAQUEL PARRISH and TYESHA LOVE, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No.: 4:23-cv-00261-JRH-CLR |
| ASHLEY WOOD, in her individual capacity and in her official capacity as an employee of the Savannah Police Department, NICOLE KHAALIS, in her individual capacity and in her official capacity as employee of the Savannah Police Department, and THE MAYOR AND ALDERMEN OF THE CITY OF SAVANNAH, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**SECOND AMENDED COMPLAINT**

COME NOW Plaintiffs and file this Second Amended Complaint pursuant to 42 U.S.C. §§ 1983 and 1988 to enforce their rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, pursuant to Georgia law, against Defendants Ashley Wood, in her individual capacity and in her official capacity as an employee of the Savannah Police Department, against Defendant Nicole Khaalis, in her individual capacity and in her official capacity as an employee of the Savannah Police Department, and the Mayor and Aldermen of the City of Savannah, showing the following:

**PARTIES, JURISDICTION AND VENUE**

1.      Plaintiff Marquis Raquel Parrish is a citizen and resident of Georgia.

2.      Plaintiff Tyesha Love is a citizen and resident of Georgia.

1

3.     Defendant Ashley Wood is a resident of Chatham County, Georgia and may be served with process at 109 Goette Trail, Savannah, Chatham County, Georgia 31410. Defendant Wood is being sued in both her official capacity and in her individual capacity.

4.     Defendant Nicole Khaalis is resident of Chatham County, Georgia and may be served with process at 409 Lions Den Drive, Pooler, Georgia 31322. Defendant Khaalis is being sued in both her official capacity and her individual capacity.

5.     Alternatively, Defendant Nicole Khaalis may be served with process at the Savannah Police Department, 1710 Martin Luther King, Jr., Blvd., Savannah, Georgia 31401. Defendant Khaalis is being sued in both her official capacity and her individual capacity.

6.     Defendant The Mayor and Aldermen of the City of Savannah ("City of Savannah") is a municipal entity located in Chatham County, Georgia. Process may be served upon the City of Savannah through its mayor, Van Johnson, located at 2 East Bay Street, Savannah, Chatham County, Georgia 31401.

7.     Plaintiffs bring and this Court has jurisdiction over this action pursuant to 42 U.S.C. § 1983, 28 U.S.C. §§ 1331, 1343(3) and (4), and the Fourth, Fifth and/or Fourteenth Amendments to the United States Constitution.

8.     Plaintiffs bring and this Court has supplemental jurisdiction over Plaintiffs' State law claims pursuant to 28 U.S.C. § 1367.

9.     Venue is proper in the Southern District of Georgia pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in Chatham County, Georgia in the Southern District of Georgia and because at least one defendant resides in the Southern District of Georgia. To the extent required by O.C.G.A. §36-33-5, ante litem notice

has been provided within six months of the accrual of the causes of action asserted herein. A copy of the notice is attached hereto as Exhibit "A".

## **FACTUAL ALLEGATIONS**

10.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 9 above as fully set forth herein.

11.     On April 27, 2021, Charles Vinson was reported missing, and five days later, he was found deceased from gunshot wounds on the 2900 block of Julia Law Street in Savannah, Georgia.

12.     Savannah Police Department Detective Ashley Wood was assigned as lead detective on the case.

13.     On May 7, 2021, Marquis Parrish was arrested and charged with the murder of Charles Vinson. From the beginning, Mr. Parrish maintained his innocence.

14.     According to court documents, Detective Ashley Wood obtained 34 search warrants related to the murder of Charles Vinson.

15.     A key element to Detective Wood obtaining these search warrants was her claim that Mr. Parrish was seen on surveillance video buying cleaning supplies at Walmart with three other people accused of Vinson's murder.

16.     This claim along with information provided by Detective Wood to state prosecutors led to the July 8, 2021 indictment of Marquis Parrish.

17.     Detective Wood was the only witness before the grand jury and every count of the indictment was based solely on her testimony. A copy of the Indictment is attached hereto as Exhibit "B".

18.     It was discovered that much of the information Detective Wood provided to state prosecutors was contradicted by events that were recorded on her body-worn camera.

19.     Mr. Parrish began raising questions about the warrants related to the security footage over a year ago.

20.     In March 2023, Mr. Parrish was able to obtain new counsel.

21.     Mr. Parrish's new defense team reviewed the 67 hours of the subject surveillance video and they were unable to locate him on the video.

22.     In early April, state prosecutors reviewed the footage and confirmed that Marquis Parrish was not at Walmart as claimed by Detective Wood.

23.     These findings led the Savannah Police Department to open an internal investigation of Detective Wood which is currently ongoing.

24.     On April 24, 2023, Chatham County District Attorney Shalena Cook Jones asked the presiding judge for a continuance of the scheduled jury trial stating that there was an issue that calls into question the credibility of the lead detective assigned to the case.

25.     District Attorney Jones also stated that the State was still waiting on DNA and ballistic evidence from the Georgia Bureau of Investigation.

26.     Detective Wood had that evidence since 2021 but failed to send it off for testing.

27.     Mr. Parrish's defense counsel objected to the continuance based on the length of time the State had the evidence and how long Mr. Parrish had been in jail but their objection was overruled.

28.     On April 25, 2023, Mr. Parrish's attorney filed a Motion to Suppress the search warrants.

29.     Three days later, the judge granted Mr. Parrish's bond.

30.     According to court documents, after Mr. Parrish was released on bond, he was interviewed by prosecutors, and they believed that Mr. Parrish was truthful.

31.     The filing further stated that Mr. Parrish's interview aided prosecutors' determination of the facts of the case.

32.     On June 16, 2023, the State dropped all charges against Mr. Parrish, however, by that time, Mr. Parrish, an innocent man, had already served nearly two years in jail. A copy of the Motion and Order Nolle Prosequi is attached hereto as Exhibit "C".

33.     At the time of Mr. Parrish's arrest, Plaintiff Parrish and Plaintiff Love were married. Plaintiffs continue to be married.

34.     As a result of Plaintiff Parrish's arrest and incarceration, Plaintiff Love and their five children were forced into homelessness.

35.     The Parrish/Love family was forced into hiding because of the dangers of the false allegations against Plaintiff Parrish.

36.     As a result of Plaintiff Parrish's arrest and incarceration, Plaintiff Love suffered a loss of consortium.

37.     After the charges against Plaintiff Parrish were dropped, national and local news outlets began reporting on his unlawful incarceration.

38.     In response to these stories, Defendant the City of Savannah began an investigation into Defendant Wood, Defendant Khaalis, and the facts surrounding Plaintiff Parrish's prosecution. *See* Savannah Civil Service Board Response to FOIA Request, attached hereto as Exhibit "D."

39.     Defendant the City of Savannah investigators uncovered an understood and widespread internal policy of evidence suppression.

40.     Defendant the City of Savannah terminated Defendant Wood and found Defendant Khaalis, among other things, in violation of at least two ministerial duties related to her supervision of Defendant Wood.

41.     Defendant Khaalis current violations are in addition to her numerous prior violations including a January 2020 allegation of "associating with criminals."

## COUNT I: – 42 U.S.C. § 1983
## Suppression and Alteration of Material Exculpatory Evidence
### (Against Defendant Wood)

42.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 41 above as fully set forth herein.

43.     At all times relevant to this Complaint, Defendant Wood acted under color of state law as a law enforcement officer with the Savannah Police Department.

44.     Plaintiff Parrish had a clearly established constitutional right to receive unaltered material exculpatory evidence under the Fifth Amendment to the United States Constitution.

45.     Defendant Wood illegally, wrongfully and unconstitutionally suppressed material exculpatory evidence.

46.     Specifically, Defendant Wood withheld the Walmart video which did not show Plaintiff Parrish participating in the purchase of cleaning supplies used in connection with the murder of Mr. Vinson. Suppression of said video dramatically mischaracterized Ms. Wood's account of events and concealed the fact that there was no evidence linking Plaintiff Parrish to Mr. Vinson's murder.

47.     Defendant Wood intentionally fabricated testimony to multiple judges regarding the Walmart video in order to obtain search warrant affidavits.

48.     Additionally, Defendant Wood received but withheld DNA and ballistic evidence from being tested which could have exonerated Plaintiff Parrish.

49.     Defendant Wood's suppression of evidence and fabricated testimony led to Plaintiff Parrish being wrongly incarcerated for nearly two years.

50.     A reasonable law enforcement official would have understood that substantially suppressing material exculpatory evidence violated the Fifth Amendment Due Process Clause. Defendant Wood's conduct lies so obviously at the very core of what the Due Process Clause prohibits that the unlawfulness of her conduct was readily apparent to her.

51.     Defendant Wood's suppression of material exculpatory evidence deprived Plaintiff Parrish of his Fifth Amendment right to receive material exculpatory evidence.

52.     Furthermore, Defendant Wood instituted, or caused to be instituted, a criminal proceeding against Plaintiff Parrish by intentionally providing false information which caused the arrest and incarceration of Plaintiff Parrish for which there was no probable cause.

53.     Plaintiff Parrish was subsequently interviewed by prosecutors wherein he provided information which aided prosecutors in the determination of the facts of the case.

54.     The ensuing detention and incarceration of Plaintiff Parrish depended on the fraudulent and false testimony of Defendant Wood, as evidenced by the fact that, upon the Prosecution's subsequent interview with Plaintiff Parrish and investigation of the case, the State dropped all charges against Plaintiff Parrish.

55.     There was no intervening prosecutorial decision between Plaintiff Parrish's indictment and the dismissal of the charges against him which was made free from the fraudulent and false testimony by Defendant Wood.

56.     By instituting, or knowingly causing the institution of, the criminal proceeding against Plaintiff Parrish without probable cause, Defendant Wood acted with malice or under such circumstances that the law will imply malice.

57.     The judicial proceeding against Plaintiff Parrish was terminated in Plaintiff Parrish's favor.

58.     As a result of Defendant Wood's conduct, Plaintiff Parrish was wrongfully detained and incarcerated in violation of his rights under the Fourth and Fourteenth Amendments.

59.     The aforesaid conduct by Defendant Wood proximately caused damage to Plaintiff Parrish in that it caused him to experience loss of money, loss of income, pain, suffering, embarrassment, humiliation, extreme mental anguish and severe emotional distress.

### COUNT II: – 42 U.S.C. § 1983
### Malicious Prosecution
### (Against Defendant Wood)

60.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 41 above as fully set forth herein.

61.     At all times relevant to this Complaint, Defendant Wood acted under color of state law as a law enforcement officer with the Savannah Police Department.

62.     Plaintiff Parrish was seized and detained against his will in connection with his prosecution, said prosecution having been instituted with malice and without probable cause.

63.     The prosecution terminated in Plaintiff Parrish's favor on or about June 16, 2023.

64.     Under the facts and circumstances alleged herein, objectively reasonable law enforcement officers would have known that instituting and maintaining a criminal prosecution of a citizen under the circumstances described herein violated the Fourth Amendment of the United States Constitution.

65.     At all times relevant to this action, the law was established with obvious clarity that instituting and maintaining a criminal prosecution of a citizen under the circumstances described herein violated the Fourth Amendment of the United States Constitution.

66.     As a direct and proximate cause of Defendant Wood's unlawful actions, Plaintiff Parrish has and will continue to incur economic damages includes lost wages, loss economic opportunity, as well as other economic damages in an exact amount to be proven at trial.

67. As a direct and proximate cause of Defendant Wood's unlawful actions, Plaintiff Parrish has experienced pain, suffering, emotional distress, anxiety, humiliation, outrage and loss of reputation entitling him to an award of compensatory damages in an amount to be determined by the enlightened conscience of the jury.

68. The actions described herein were willful, deliberate, and malicious, thereby entitled Plaintiffs to an award of punitive damages against Defendant Wood, in an amount to be determined by the enlightened conscience of the jury.

### COUNT III: – 42 U.S.C. § 1983
### Policy, Practice, Procedure, or Custom - *Monell* Liability
### (Against Defendant City of Savannah)

69. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 41 above as fully set forth herein.

70. The Savannah Police Department ("SPD") is the law enforcement department of Defendant City of Savannah, which was authorized to and did operate and manage the SPD.

71. At all times relevant to this Complaint, SPD had a policy, practice, procedure and/or custom which permitted employees to alter material exculpatory evidence and/or suppress it from being turned over to criminal defendants and their counsel. Without the benefit of discovery, the following civil matters are examples involving Savannah Police Department employees, including Defendant Wood, alleged of practicing this accepted policy, practice, and custom:

   a) *Bradley Fehrle v. The Mayor and Aldermen of the City, Chatham County, and Robie Walp*, Civil Action No. 4:22-cv-00232-RSB-CLR (S.D.Ga.);

   b) *Trever Chase Cannon v. Robert J. Robinson, in his individual capacity and in his official capacity as an employee of the Savannah Police Department, and the Mayor and Aldermen of the City of Savannah*, Civil Action No. 4:18-cv-00176-RSB-BKE (S.D.Ga.);

c)   *Derek Gallop, Jr. v. Ashley Wood, et al.*, Civil Action No. 4:21-cv-00082-RSB-CLR (S.D. Ga.).

72.   In this specific matter, Defendants Wood and the City of Savannah maintained and suppressed additional evidence on SPD issued computers and cellular phones. *See* Savannah Morning Article, attached hereto as Exhibit "E." Also *See* Article excerpt below.

> "Detective Hildebrand testified here that part of the policy at that point was not to make returns with search warrants, because he didn't want defense lawyers having early access to that material," said Schneider. "Assistant Chief Adams disagreed with that. And it's our contention that Chief Gunther from conversations that Miss Wood was privy to during the process of this review would in fact agree with Detective Hildebrand regarding that."
>
> Gunther did not attend the civil service hearing.
> "That part does concern me," said Schneider. Another point that concerned Schneider: That other SPD officers who have been deemed "untruthful" have kept their jobs.
> The Savannah Morning News has sent questions to Savannah Police to clarify its search warrant policy and made an open records request for the policy.

73.   In this specific matter, Defendants Wood and the City of Savannah maintained and suppressed evidence obtained from at least 34 search warrants. *See* Savannah Morning News Article, attached hereto as Exhibit "E."

74.   Defendant the City of Savannah police officers stated that it is their department's general policy and procedure not to turn over evidence obtained through search warrants to prevent defendants and their counsel from obtaining it. *See* Savannah Morning News Article, attached hereto as Exhibit "E."

75.   Moreover, Defendant the City of Savannah police officers performed their own internal investigation of Plaintiffs' wrongful prosecution. This investigation conclusively confirmed this understood and widespread policy of evidence suppression at the time of Mr. Parrish's prosecution. *See* Savannah Civil Service Board Response to FOIA Request, attached hereto as Exhibit "D."

76.   Specific examples of this understood and widespread policy of evidence suppression are as follows:

a)

Corporal Wood was then asked why search warrant returns were just getting done if the incident happened 2 years ago. She replied by saying that she was trained to hold off on doing search warrant returns until the case was about to go to trial and just before the defense attorney filed for discovery. She stated that was standard practice for the homicide unit at that time. She then stated that the District Attorney's Office had a copy of the case file for this incident.

*See* Exhibit "D," pg. 51.

b)

After reviewing the BWC footage, Corporal Hilderbrand was asked if he was present during any time that Ms. Love verbalized who shot her. He responded by saying that he did not recall and requested to view the entire BWC footage from the interview with Ms. Love. He was then asked about when he first started in the homicide unit, if he was trained not to turn in search warrants and evidence until right before discovery from the defense. He replied by saying that the standing practice for the unit when he started there was not to turn in search warrant returns to the courts until right before discovery, so that the defense could not have access to them before the District Attorney's office wanted the defense to have them. Corporal Hilderbrand stated that the practice of doing this was initiated when former SPD Sergeant Santoro was supervising the unit. Corporal Hilderbrand stated that it was never standard practice to not submit evidence immediately to be tested by GBI.

See Exhibit "D," pg. 51.

When asked about search warrant returns not being turned in until right before trial for discovery by the defense, Sergeant Khaalis replied by saying that former SPD Sergeant Santoro initiated that practice before she went to the unit. She stated that her chain of command did not seem to have a problem with it, so she didn't think it was a problem. She stated that currently, the homicide unit turns the search warrant returns in as soon as the requested items are provided to the detective.

See Exhibit "D," pg. 52.

77. Defendant the City of Savannah police officers are also well-aware of many other police officers who were untruthful, likewise suppressed evidence, but were allowed to keep their job. *See* Savannah Morning News Article, attached hereto as Exhibit "E."

78.     This policy, practice, procedure or custom of Defendant City of Savannah caused a violation of Plaintiff Parrish's constitutional rights under the Fourth, Fifth and Fourteenth Amendments, as described above.

79.     Specifically, the SPD placed into effect a program that it either knew or should have known would amount to exculpatory evidence being withheld from criminal defendants and/or being materially altered and false information being provided in a criminal investigation.

80.     This unofficial policy by the SPD amounts to a department-wide exhibition of deliberate indifference to the constitutional rights of suspects, citizens, and defendants, such as Plaintiff Parrish.

81.     The SPD implemented and controlled this unofficial policy, practice, procedure and/or custom and encouraged and/or allowed its officers, including Defendant Wood, to alter material exculpatory evidence and/or withhold it from criminal defendants and their counsel.

82.     The SPD implemented and controlled this unofficial policy, practice, procedure and/or custom and encouraged and/or allowed its officers, including Defendant Wood, to provide false information and/or testimony against a criminal defendant.

83.     The SPD had direct and actual, or at least constructive, knowledge of the constitutional violations that were taking place under this policy.

84.     The moving force behind Plaintiff Parrish's unlawful detention was the SPD's deliberate indifference to Plaintiff Parrish's constitutional rights. Upon information and belief, the SPD has repeatedly disregarded the constitutional rights of suspects and criminal defendants in a similar manner.

85.     Plaintiff Parrish's wrongful incarceration was the obvious consequence of, and directly linked to, this unofficial practice of the SPD and the actions of Defendant Wood.

86.     As a direct and proximate result of the Defendant City of Savannah's actions, Plaintiff Parrish is entitled to damages, including loss of money, loss of income, pain, suffering, embarrassment, humiliation, extreme mental anguish and severe emotional distress. *See*, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

**COUNT IV – 42 U.S.C. § 1983**
**Failure to Train – *Monell* Liability**
**(Against Defendant City of Savannah)**

87.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 41 above as fully set forth herein.

88.     At all times relevant to this Complaint, Defendant City of Savannah was authorized to and did operate and manage the Savannah Police Department.

89.     Defendant City of Savannah is and was at all times required to operate and manage its police practices and activities in a manner that is not deliberately indifferent to the rights of their citizens, including Plaintiff, who come into contact with its police officers.

90.     Defendant City of Savannah police officers routinely have to interact with suspects, witnesses and evidence and should be trained to do so.

91.     Defendant City of Savannah acted with deliberate indifference to Plaintiff Parrish's rights by failing to train its police officers in at least the following ways:

a)     Failing to adequately train and supervise its police officers on the importance of not altering material evidence in criminal investigations and the severe consequences that may result otherwise;

b)     Failing to adequately train and supervise its police officers on how to receive, process and respond to requests from prosecutors for evidence, including exculpatory evidence, in criminal cases;

c)     Failing to train and supervise its officers on the proper way to secure search

warrants without the necessity of falsifying information.

d) Failing to train and supervise police officers to submit timely and accurate

e) reports and case files;

f) Failing to train and supervise police officers to turn in search warrant returns

g) within 5 days of receiving items;

h) Failing to train and supervise police officers to submit evidence to be processed at the GBI;

i) Failing to review police officers case files for accuracy every 10 days.

92. Defendant City of Savannah experienced a vacancy of over 100 officials at or about the time of Plaintiff Parrish's arrest.

93. Defendant City of Savannah experienced a crisis of leadership and training with a vacancy of over 15 sergeants at or about the time of Plaintiff Parrish's arrest.

94. Defendant Wood admitted that her department was understaffed and she was overworked.

95. In fact, Defendant Wood was never even trained as a homicide detective but continually required to investigate murder cases at Defendant the City of Savannah's direction. Defendant City of Savannah acted with deliberate indifference to the rights of Plaintiff Parrish in its failure to properly train its police officers regarding the appropriate handling of witness statements and exculpatory evidence. *See* Savannah Morning News Article, attached hereto as Exhibit "E." (Also *See* the Article excerpt below).

"It could be rectified by proper training," argued Schneider. "That was what Ms. Jones said. And we all know from [a prior civil service hearing] that Detective Wood has never even been trained as a homicide detective. She's out there making cases with no training. And the training she had gets canceled so she can go make another case on homicide."

Cooper added, "If training was really an issue and of some deep concern for Detective Wood, then why was she taking promotion after promotion? Obviously, she felt okay to move to the next steps.

96.     In fact, Defendant the City of Savannah cited Defendant Wood's immediate supervisor, Sergeant Khalis, with the following violations following its investigation of Plaintiff Parrish's wrongful and malicious prosecution:

a)

## OPS-002, ORGANIZATION AND DIRECTION

### Supervisor Responsibility

-Sergeant Khaalis did not ensure that Corporal Wood submitted a complete case file and accurate report for this investigation.

*See* Exhibit "D," pg. 58.

b)

## OPS-001, CRIMINAL INVESTIGATIONS

### Case file management

-Sergeant Khaalis did not review Corporal Wood's case file for accuracy every 10 days.

*See* Exhibit "D," pg. 58.

97.     Defendant City of Savannah's deliberate indifference to the rights of Plaintiff Parrish through its failures to train and supervise were failures of policy, widespread practice and/or custom.

98.     Defendant City of Savannah's systemic training and supervision failures proximately caused Plaintiff Parrish's improper indictment and incarceration in that they proximately, directly and foreseeably caused Plaintiff Parrish to be accused and incarcerated for a crime of which he was innocent.

99.     As a direct and proximate result of Defendant City of Savannah's systemic, unconstitutional training and supervision practices or policies, Plaintiff Parrish is entitled to damages, including loss of money, loss of income, pain and suffering, embarrassment, humiliation, extreme mental anguish and severe emotional distress. *See*, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

### COUNT V – 42 U.S.C. § 1983
### Supervisory Liability
### (Against Defendant Nicole Khaalis)

100.    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 41 above as fully set forth herein.

101.    At all times relevant to this Complaint, Defendant Nicole Khaalis acted under color of state law as a law enforcement officer with the Savannah Police Department and the supervisor of Defendant Wood.

102.    Defendant Nicole Khaalis is and was required to manage and supervise police officers, such as Defendant Wood, in a manner that is not deliberately indifferent to the constitutional rights of citizens, including Plaintiff Parrish, who encounter police officers.

103.    Defendant Nicole Khaalis had a history of acting with deliberate indifference to citizen's rights and acted with deliberate indifference to Plaintiff Parrish's rights by failing to train and supervise Defendant Wood, and other police officers, in at least the following ways:

a)      Failing to adequately train and supervise police officers on the importance of not altering material evidence in criminal investigations and the severe consequences that may result otherwise;

b)      Failing to adequately train and supervise police officers on how to receive, process and respond to requests from prosecutors for evidence, including

exculpatory evidence, in criminal cases;

c) Failing to train and supervise police officers on the proper way to secure search warrants without the necessity of falsifying information;

d) Failing to train and supervise police officers to submit timely and accurate reports and case files;

e) Failing to train and supervise police officers to turn in search warrant returns within 5 days of receiving items;

f) Failing to train and supervise police officers to submit evidence to be processed at the GBI;

g) Failing to review police officers case files for accuracy every 10 days.

104. Defendant Nicole Khaalis's training and supervisory failures were done so in deliberate indifference to the constitutional rights of Plaintiff Parrish.

105. Defendant Nicole Khaalis's training and supervisory failures proximately caused Plaintiff Parrish's improper indictment and incarceration in that they proximately, directly and foreseeably caused Plaintiff Parrish to be accused and incarcerated for a crime of which he was innocent.

106. As a direct and proximate result of Defendant Nicole Khaalis's unconstitutional training and supervision, Plaintiff Parrish is entitled to damages, including loss of money, loss of income, pain and suffering, embarrassment, humiliation, extreme mental anguish and severe emotional distress.

## COUNT VI
## Negligent Training and Supervision
## (Against Defendant Nicole Khaalis)

107. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 41 above as fully set forth herein.

108. At all times relevant to this Complaint, Defendant Nicole Khaalis acted under color of state law as a law enforcement officer with the Savannah Police Department and the supervisor of Defendant Wood.

109. Although Defendant the City of Savannah practiced an internally understood and widespread unconstitutional policy of suppressing exculpatory evidence, Defendant Nicole Khaalis was aware that Defendant the City of Savannah publicly maintained a formal and written policy requiring the timely and truthful disclosure of all evidence obtained through search warrants.

110. Defendant Nicole Khaalis therefore breached her ministerial duty to train, supervise, and assure that Defendant Wood timely and truthfully disclosed all evidence obtained through search warrants.

111. Defendant the City of Savannah also had a formal and written policy requiring supervisors such as Defendant Nicole Khaalis to review their employee investigator's case files and reports every ten days for accuracy.

112. Defendant Nicole Khaalis therefore breached her ministerial duty in failing to supervise and review Defendant Nicole Khaalis's case file concerning Plaintiff Parrish.

113. As a direct and proximate cause of Defendant Nicole Khaalis's failure to adhere to and follow these ministerial duties, Plaintiff Parrish has and will continue to incur economic damages including lost wages, loss of economic opportunity, as well as other economic damages in an exact amount to be proven at trial.

114. As a direct and proximate cause of Defendant Nicole Khaalis's failure to adhere to and follow these ministerial duties, Plaintiff Parrish has experienced pain, suffered emotional

distress, anxiety, humiliation, outrage, and loss of reputation entitling him to an award of compensatory damages in an amount to be determined by the enlightened conscience of the jury.

**COUNT VII**
**Malicious Prosecution**
**(Against Defendant Wood)**

115.    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 41 above as fully set forth herein.

116.    At all times relevant to this Complaint, Defendant Nicole Khaalis acted under color of state law as a law enforcement officer with the Savannah Police Department.

117.    The acts and omissions of Defendant Wood complained of herein caused the illegal arrest, detention, and prosecution of Plaintiff Parrish with malice and without probable cause.

118.    The prosecution terminated in Plaintiff Parrish's favor on June 16, 2023.

119.    As a direct and proximate cause of Defendants' unlawful actions, Plaintiff Parrish has and will continue to incur economic damages including lost wages, loss of economic opportunity, as well as other economic damages in an exact amount to be proven at trial.

120.    As a direct and proximate cause of Defendants' unlawful actions, Plaintiff Parrish has experienced pain, suffering, emotional distress, anxiety, humiliation, outrage and loss of reputation entitled him to an award of compensatory damages in an amount to be determined by the enlightened conscience of the jury.

121.    The actions described herein were willful, deliberate, and malicious, thereby entitling Plaintiff Parrish to an award of punitive damages against Defendant Wood, in an amount to be determined by the enlightened conscience of the jury.

### COUNT VIII
### Intentional Infliction of Emotional Distress
### (Against Defendant Wood)

122. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 41 above as fully set forth herein.

123. Defendant Wood's conduct towards Plaintiff Parrish was without probable cause of legitimate purpose.

124. Defendant Wood's conduct towards Plaintiff Parrish was extreme and outrageous.

125. Defendant Wood's conduct toward Plaintiff Parrish was specifically intended to and did in fact cause Plaintiff Parrish physical discomfort and suffering, terror, and great emotional distress.

126. At all times relevant to this Complaint, Defendant Nicole Khaalis acted under color of state law as a law enforcement officer with the Savannah Police Department.

127. Plaintiff Parrish has suffered substantial and continuing injuries as a direct and proximate result of Defendants' actions for which he is entitled to recover damages, as determined by the enlightened conscience of an impartial jury.

### COUNT IX
### Loss of Consortium
### (Against All Defendants)

128. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 40 above as fully set forth herein.

129. At all times relevant to this Complaint, Plaintiffs were husband and wife. The Plaintiffs are still married.

130. As a result of the arrest and incarceration of Plaintiff Parrish, Plaintiff Love suffered a grievous impairment and interference with her society, affection, services, companionship and consortium with her husband.

131.    After Plaintiff Parrish was arrested and incarcerated, Plaintiff Love, who was pregnant, gave birth without the benefit of having her spouse attend the birth.

132.    After Plaintiff Parrish was arrested and incarcerated, Plaintiff Love, along with their five children became homeless due to the loss of Plaintiff Parrish's income.

133.    As a result of the dangers associated with Plaintiff Parrish's arrest and incarceration, Plaintiff Love became afraid for the welfare of herself and her children and they were forced into hiding.

134.    As a direct and proximate result to Defendants' systemic, unconstitutional training practices or policies, Plaintiff Love is entitled to damages including loss of consortium, loss of money, pain and suffering, embarrassment, humiliation, extreme mental anguish and severe emotional distress.

WHEREFORE, Plaintiffs pray as follows:

a)   That summons and process be issued and served upon the Defendants;

b)   For a trial by jury comprised of twelve (12) persons;

c)   For an award of compensatory and consequential damages for the harm suffered by Plaintiffs;

d)   For an award of loss of consortium damages for the harm suffered by Plaintiff Love;

e)   For an award of costs of this action, including the fees and costs of experts, together with reasonable attorneys' fees;

f)   For an award of punitive damages against Defendants Wood and Khaalis in an amount sufficient to punish and deter such conduct;

g)   For such other and further different relief as this Court may deem just and proper.

Respectfully submitted this 6<u>th</u> day of February, 2024.

**MANLY SHIPLEY, LLP**

<u>/s/ James E. Shipley, Jr.      </u>
JOHN B. MANLY
Georgia Bar No. 194011
JAMES E. SHIPLEY, JR.
Georgia Bar No. 116508
*Attorneys for Plaintiffs*

Post Office Box 10840
Savannah, Georgia 31412
T: (912) 495-5360
F: (844) 362-4952
john@manlyshipley.com
jim@manlyshipley.com

## CERTIFICATE OF SERVICE

I hereby certify that on this day a copy of the foregoing Second Amended Complaint has

been served upon all parties via the Court's CM/ECF system.

This 6th day of February, 2024.

**MANLY SHIPLEY, LLP**

*/s/ James E. Shipley, Jr.*
JAMES E. SHIPLEY, JR.
Georgia Bar No. 116508
*Attorney for Plaintiffs*

Post Office Box 10840
Savannah, Georgia 31412
T: (912) 495-5360
F: (844) 362-4952
jim@manlyshipley.com