

# UPDATE: The Civil Service Board Meeting location has been changed and will now be held at the Floyd Adams Complex.

## PUBLIC NOTICE

### Civil Service Board Meeting

Notice is hereby given that there will be a meeting of the Civil Service Board on Friday November 3, 2023, from 10AM-1PM. The location will be at the Floyd Adams Complex.

20 Interchange Ct. Savannah, GA 31419

Room 202 (2C)



**Ashley Wood**
**Civil Service Board Hearing**
**Thursday, September 21, 2023**
**11:00 a.m. – 5:00 p.m.**


<u>**Agenda: Order of Proceedings**</u>

1. **STATEMENTS – ASHLEY WOOD**
   - Opening statement (10 minutes)
   - Discussion of evidence
   - Testimony of witnesses
   - Questions of evidence & witnesses
2. **STATEMENTS – CITY OF SAVANNAH**
   - Opening statement (10 minutes)
   - Discussion of evidence
   - Testimony of witnesses
   - Questions of evidence & witnesses
3. **CLOSING ARGUMENT**
   - City of Savannah (15 minutes)
   - Ashley Wood (15 minutes)
4. **CLOSING STATEMENT BY CHAIR**



**Ashley Wood**
**Civil Service Board Hearing**
**Friday, November 3, 2023**
 **9:30AM**

<u>**Agenda: Order of Proceedings**</u>


1. **STATEMENTS – ASHLEY WOOD**
   - Opening statement (10 minutes)
   - Discussion of evidence
   - Testimony of witnesses
   - Questions of evidence & witnesses
2. **STATEMENTS – CITY OF SAVANNAH**
   - Opening statement (10 minutes)
   - Discussion of evidence
   - Testimony of witnesses
   - Questions of evidence & witnesses
3. **CLOSING ARGUMENT**
   - City of Savannah (15 minutes)
   - Ashley Wood (15 minutes)
4. **CLOSING STATEMENT BY CHAIR**

**Civil Service Board Hearing – Ashley Wood**

**This is an administrative hearing with procedures, guidelines and rules governed by the City of Savannah Civil Service Board. The Board will hear from the parties involved in the employment action taken against Ashley Wood. It is not a court proceeding.**

**Ashley Wood**
**Thursday, September 21ˢᵗ, 2023 *(Back-Up Date: Friday, Sept. 22ⁿᵈ, 2023)***
***Hearing Duration:* Starting at 11:00 a.m. – 5:00 p.m.**

**Order of Hearing**
1. **Purpose of hearing**
2. **Introduction of attendees**
3. **Swearing in of attendees**
4. **Explanation of hearing rules and procedures**

## Hearing Rules and Procedures

**Each party shall have the following rights:**

1. To call on witnesses on any matter relevant to the issues.
2. To introduce documentary and physical evidence;
3. To rebut evidence against him or her;

**During the hearing, the Chair shall have authority to:**

1. Determine the order of presentation of the evidence;
2. Administer oaths and affirmations;
3. Rules on procedural matters;
4. Rule on offers of proof;
5. Ask questions of witnesses, regardless of which party called the witnesses, to develop any facts deemed necessary to fairly and adequately decide the appeal;
6. Call additional witnesses and request additional exhibits deemed necessary to complete the record and receive such evidence subject to full opportunity for cross-examination and rebuttal by all parties;
7. Take any appropriate action necessary to maintain order during the hearing;
8. Permit or require oral argument or briefs and determine the time limits for submission thereof;
9. Waive any requirement of these rules and procedures unless a party shows that it would be prejudiced by such a waiver.

**Conduct of Persons at Hearing:**

It will be improper for any person at this hearing to:

1. Insult, intimidate or behave discourteously to the Chair/board members, any party, any witness or any other person attending the hearing;
2. Display boisterous conduct or commit any kind of disturbance;

3. Bring signs, posters, or large objects into the hearing room without the prior approval of the Chair;
4. Participate in any demonstration tending to disrupt the orderly conduct of the hearing; or
5. Commit any other interference with the orderly course of a hearing.

## Order of Proceedings

**5. STATEMENTS – ASHLEY WOOD**
- Opening statement (10 minutes)
- Discussion of evidence
- Testimony of witnesses – board
- Questions of evidence & witnesses

**6. STATEMENTS – CITY OF SAVANNAH**
- Opening statement (10 minutes)
- Discussion of evidence
- Testimony of witnesses
- Questions of evidence & witnesses

**7. CLOSING ARGUMENT**
- City of Savannah (15 minutes)
- Ashley Wood (15 minutes)

**8. CLOSING STATEMENT BY CHAIR**



SAVANNAH   savannahga.gov

## APPEAL OF SUSPENSION PRIOR TO DISMISSAL

Instructions:

- Employee has 24 hours from receipt of *Notice of Suspension Prior to Dismissal* to appeal
- Submit appeal form within 24 hours of receipt to superior of supervisor who initiated action
- City Manager or designee will review department head actions
- City Manager or designee's decision is final

I, _Ashley Wood_, want to appeal my Suspension Prior to Dismissal. The reason for my appeal is
as (print employee's name)
follows: ~~correctly documented~~ Disagree with dicasion of the termination.

Employee's Signature: _____
Date: _6/15/23_

-----------------------------------------------------------------------
*Department Head should schedule meeting with employee within 24 hours of receipt of appeal.*

I have met with _Ashley Wood_ concerning the appeal of Suspension Prior
to Dismissal. Following is my decision: Based on the facts and details presented
during the appeal, I sustain all the outlined policy violations
except AOM-018 Searches & Seizures. As a result, I uphold
the recommendation of termination. Of note, A. Wood's actions are
not indicative of the men & women of SPD dedication to integrity &
community trust.
Department Head Signature: _____   Date: _06/27/23_

I wish to appeal the Department Head's decision to the City Manager or designee.

Employee's Signature: _____   Date: _6/28/23_

-----------------------------------------------------------------------
*City Manager or designee should schedule hearing with the employee within 24 hours or as soon as possible.*

I have met with_____concerning the appeal of Suspension Prior to
Dismissal. Following is my decision:

City Manager's Signature:_____   Date:_____

Rev. 11/01/2020



# APPEAL OF SUSPENSION PRIOR TO DISMISSAL

Instructions:

- Employee has 24 hours from receipt of *Notice of Suspension Prior to Dismissal* to appeal
- Submit appeal form within 24 hours of receipt to superior of supervisor who initiated action
- City Manager or designee will review department head actions
- City Manager or designee's decision is final

I, _Ashley Wood_____, want to appeal my Suspension Prior to Dismissal. The reason for my appeal is
as (print employee's name)
follows: ~~correct fuly~~ ~~documented~~ Disagree with dicesion of the termination.

Employee's Signature: _____
Date: _6/15/23_

----------------------------------------------------------------------

*Department Head should schedule meeting with employee within 24 hours of receipt of appeal.*

I have met with _ASHley Wood_____ concerning the appeal of Suspension Prior
to Dismissal. Following is my decision: BASED ON THE facts AND details PRESENTED
DURING THE APPEAL, I SUSTAIN ALL THE outlined policy Violations
Except AOM-018 Searches & Seizures. As A Result I uphold
the Recommendation of termination. Of Note, A. Woods Actions Are
NOT INDICATIVE of the MEN & WOMEN of SPD DeDication to integrity &
Community Trust.
Department Head Signature
Signature: _____    Date: _06/27/23_

I wish to appeal the Department Head's decision to the City Manager or designee.

Employee's
Signature: _____    Date: _6/28/23_

----------------------------------------------------------------------

*City Manager or designee should schedule hearing with the employee within 24 hours or as soon as possible.*

I have met with_ Ashley Wood _____concerning the appeal of Suspension Prior to
Dismissal. Following is my decision: See attached

City Manager's Signature:_____    Date: July 13, 2023

Rev. 11/01/2020

Following is my decision:

Appeal denied

e-Filed in Office
Tammie Mosley
Clerk of Superior Court
Chatham County
Date: 7/13/2023 9:45 PM
Reviewer: CH

SUPERIOR COURT OF CHATHAM COUNTY
EASTERN JUDICIAL CIRCUIT OF GEORGIA

| | |
|---|---|
| THE STATE OF GEORGIA | ) **CASE NO.: SPCR21-02140** |
| | ) |
| V. | ) |
| | ) |
| MARQUIS RAQUEL PARRISH | ) |
| | ) |
| THE STATE OF GEORGIA | ) **CASE NO.: SPCR20-01827** |
| | ) |
| V. | ) **CASE NO.: SPCR21-03130** |
| | ) |
| JAVARIS JEVON ROUNDTREE | ) **CASE NO.: SPCR23-01264** |
| | ) |
| THE STATE OF GEORGIA | ) **CASE NO.: SPCR21-03131** |
| | **)** |
| V. | ) |
| | ) |
| AALYIAH NYCOLE JAHNIQUE DUNCAN) | |

Transcript of proceedings heard during the **MOTION HEARING** in the above-styled case at the Chatham County Courthouse, Savannah, Georgia, on the 13th of June 2023, before the Honorable John E. Morse, Jr., Judge, Superior Court, Eastern Judicial Circuit of Georgia.

Appearances:

|   |   |
|---|---|
| For The State: | SEAN O'BRIEN, ESQ.<br>Assistant District Attorney<br>Savannah, Georgia |
| For Parrish Defense: | KATHERINE MARIE KELLY, ESQ.<br>Assistant Public Defender<br>Savannah, Georgia |
| For Roundtree Defense: | SKYE ELLEN MUSSON, ESQ.<br>Attorney at Law<br>Savannah, Georgia |
| For Duncan Defense: | CHRISTOPHER KENYETTA MIDDLETON, ESQ.<br>Attorney at Law<br>Savannah, Georgia |

1                          **I N D E X**

2   Preliminary matters ......................................... 4

3   Roundtree arraigned.  Not transcribed ...................... 7

4   Parrish's Defense Motion to Suppress ....................... 8

5   Response by the State ...................................... 22

6   Court taking Motion to Suppress under advisement ........... 23

7   Certificate of Court Reporter ............................. 26

8                      **INDEX TO EXHIBITS**

9   **DEFENSE:**

10

11  1    Nine search warrants
            Identified/Tendered/Admitted ..................... 11
12
    2    Defendant's 5/6/21 return on his apartment
13          Identified ....................................... 18

14  3    Defendant's 5/10/21 return on his truck
            Tendered/Admitted ................................ 18
15
    4    Facebook search warrant for Marquis.Yountefparrish
16          Identified/Tendered/Admitted ..................... 20

17  5    Facebook search warrant for Marquis.Parrish.501
            Identified/Tendered/Admitted ..................... 20
18
    6    T-Mobile tower dump
19          Identified/Tendered/Admitted ..................... 20

20  7    Verizon tower dump
            Identified/Tendered/Admitted ..................... 20
21
    8    Sprint tower dump
22          Identified/Tendered/Admitted ..................... 20

23  9    AT&T tower dump
            Identified/Tendered/Admitted ..................... 20
24
    10   police investigative report
25          Tendered/Admitted ................................ 11

```
1              (NOTE:  Notations in this transcript of "(inaudible)"
2        indicate individuals speaking over each other and/or
3        background noise obscuring the spoken words, and
4        "(indiscernible)" indicates that an individual is either
5        speaking too rapidly or too softly so as to not be
6        discernible.)
7              (The above-captioned proceeding commenced at 2:43
8        p.m. on the aforementioned date.)
9              THE COURT:  I have the State of Georgia versus
10       Aalyiah Duncan, Marquis Parrish, and Javaris Roundtree.
11             MS. KELLY:  Mr. Parrish is here.
12             THE COURT:  Mr. Middleton represents Duncan.
13             MR. MIDDLETON:  That's correct, Your Honor.
14             THE COURT:  All right.  Ms. Kelly represents Parrish.
15             MS. KELLY:  Yes, Your Honor.
16             THE COURT:  Ms. Musson represents Roundtree?
17             MS. MUSSON:  Yes, Your Honor.
18             THE COURT:  Okay.  If I'm not mistaken, I do not have
19       any motions to hear for Duncan?
20             MR. MIDDLETON:  That's correct.
21             THE COURT:  Okay.  And I don't think I have anything
22       for Roundtree either, other than there's a new case that
23       needs an arraignment.
24             MS. MUSSON:  And, Your Honor, I believe that I -- I
25       thought I had joined in on the motion filed by
```

```
1          Mr. Parrish's counsel with the Motion to --
2              THE COURT:  I would love if y'all would file motions
3      and stop trying to join.
4              MS. MUSSON:  Understood, Your Honor.
5              MR. O'BRIEN:  Your Honor, if the State could address
6      that.  The motions filed for Mr. Parrish are
7      particularized towards warrants involving his case.
8      Submit that Defense in the Roundtree case doesn't have
9      standing to argue these motions today.  Perhaps applying
10     particularized motions --
11             THE COURT:  I probably agree with you, Mr. O'Brien.
12     That's why I'm trying to make the point to file motions
13     instead of trying to join some, so I don't slam you with
14     (indiscernible) particularized.  And it doesn't apply to
15     your client.
16             MR. O'BRIEN:  Yes, sir.
17             THE COURT:  All right.  So we have 23-12-64.
18     Ms. Small, is that one that needs to be arraigned?
19             COURT ADMIN:  Yes, sir.
20             THE COURT:  Okay.  And if I'm not mistaken,
21     Ms. Musson, we have CR20-1827, which is actually a
22     probation matter that we're just keeping on the docket to
23     keep it with everything?
24             MS. MUSSON:  Yes, Your Honor.
25             THE COURT:  All right.  All right.  So as I had
```

```
 1          pointed out with respect to trying to join in with
 2          something that you have no standing on --
 3               MS. MUSSON:  Understood, Your Honor.
 4               THE COURT:  -- you want to file something so I can
 5          hear it?
 6               MS. MUSSON:  Yes, Your Honor, I will file a
 7          particularized motion.
 8               THE COURT:  All right, then.
 9               Ms. Kelly, what do I have to hear for you on
10          Mr. Parrish?
11               MS. KELLY:  Your Honor, the only thing before the
12          Court today for Mr. Parrish is a Motion to Suppress.  It
13          will not require any -- basically, it will just be brief
14          argument.
15               THE COURT:  No evidence is needed, you're trying to
16          say?
17               MS. KELLY:  That is correct, Your Honor.
18               THE COURT:  All right.
19               MS. KELLY:  Yes.
20               THE COURT:  Okay.  All right.  For the Duncan,
21          Parrish, Roundtree matter, Ms. Smalls, we have them on a
22          subsequent calendar coming up?
23               COURT ADMIN:  Yes, sir.  We have them August 7th.
24               THE COURT:  August 7th.  That is for what?
25               COURT ADMIN:  State's jury trial.
```

```
 1                    THE COURT:  Okay.  Jury trial.  So I definitely need
 2          to get the motion dealt with today.  All right.
 3                    All right.  Okay.  That is already on the jury trial
 4          calendar.  I don't need to set anything?
 5                    COURT ADMIN:  No, sir.
 6                    THE COURT:  Okay.  So Mr. Middleton and Ms. Musson,
 7          you have a jury trial date.  There's no motions I need to
 8          hear from you, so is there anything else you all need?
 9                    MS. MUSSON:  If you want to arraign my client, Your
10          Honor, while we're here.
11                    THE COURT:  I'm willing to do it.  Yes.
12                    Mr. Middleton?
13                    MR. MIDDLETON:  Nothing for Ms. Duncan, Your Honor.
14                    THE COURT:  All right, sir.  I'll imagine it's ten
15          o'clock on the 7th, most likely?
16                    COURT ADMIN:  Yes, sir.
17                    THE COURT:  Okay.  And Mr. Roundtree, when he
18          arrives, Ms. --
19                    THE DEPUTY:  He's up, Judge.
20                    THE COURT:  He's up?
21                    THE DEPUTY:  Yes, sir.
22                    THE COURT:  All right.  Let's go ahead and get him
23          arraigned.
24                    (NOTE:  Roundtree arraigned.  Not transcribed.)
25                    THE COURT:  All right.  We have the State of Georgia
```

```
 1        versus Marquis Parrish.  Madam Court Reporter, have to
 2        SPCR21-02140-J4 State of Georgia versus Marquis R. Parrish
 3        represented by Ms. Katherine Kelly.  State's represented
 4        by Mr. Sean O'Brien.  The matters before the Court with
 5        respect to motions of the Defendant.
 6             Ms. Kelly, what do I need to entertain for you,
 7        ma'am?
 8             MS. KELLY:  Thank you, Your Honor.  On March 2nd,
 9        2023, Defense filed a Motion to Suppress Search Warrants.
10        Then I supplemented that on April 26th, 2023, when --
11        after I received more discovery, in total between the two,
12        and I, basically, re-summarized it, my argument on the
13        April 26th, 2023, motion.
14             Your Honor, there have been, as it pertains to my
15        client, nine search warrants in this case that were for
16        his DNA, a search of his apartment, a search of his truck,
17        two Facebook accounts.  And then there were multiple what
18        they refer to as tower dumps to T-Mobile, Verizon;
19        basically, all of the local carriers, where they are --
20        it's general and vague as well, but where they are
21        requesting -- "they" meaning Ashley Wood, the lead
22        Detective in this case -- requested all activity in that
23        area.
24             In my motion, Your Honor, we are requesting that all
25        evidence seized as a result of these motions be suppressed
```

1       based on the fact that it is the Defense position that the

2       detective, Ashley Wood, in this case has lied as it

3       pertains to the evidence against Marquis Parrish.

4       Specifically, I -- and I do have these certified copies

5       that the State did receive certified copies of these

6       search warrants.  And I would ask to tender them as

7       Defense Exhibit 1 collectively.

8              THE COURT:  Defendant's Exhibit Number 1.

9              MR. O'BRIEN:  Your Honor, that's without objection.

10      State did pull each certified copy.  They're actually

11      marked with tabs one through nine, and they correspond

12      with the attached exhibits from Defense's motion.

13             MS. KELLY:  That is correct.  And then there is also

14      Exhibit 10 from my motion, which is Ashley Wood's -- one

15      of her investigative summaries.

16             MR. O'BRIEN:  And, Your Honor, that is actually the

17      copy that was provided to the State in Defense's filing.

18      There are a couple of pen marks on there from when I was

19      reading through it, but there's no objection to that being

20      entered as well.

21             THE COURT:  Would you happen to have an extra copy of

22      that?

23             MS. KELLY:  I have my copy.

24             THE COURT:  Well, I'm sure it's all good and marked

25      up.

 1              MS. KELLY:  That is really marked up.

 2              THE COURT:  Yeah.  Yeah.

 3              MS. KELLY:  The two -- I can -- They are just two

 4       small pen marks on it.

 5              THE COURT:  I think, to be honest with you, I had it,

 6       but I don't have it indexed the way you-all have done,

 7       which is --

 8              MR. O'BRIEN:  Looks like, Your Honor, it's just on

 9       the border kind of.  It's a blue pen mark.  I'm happy to

10       have someone else print off a clean copy.

11              MS. KELLY:  That is accurate.

12              THE COURT:  Do you have it indexed to your exhibit,

13       ma'am, is what I'm asking?

14              MS. KELLY:  Yes, Your Honor.  It indicates Exhibit 10

15       on it, which is what I referred to it as in my motion.  Is

16       that what you're asking?  No.

17              THE COURT:  All right.  Hold onto that.  Let me go

18       get what I've got in the office and see if we can match

19       it.

20              MS. KELLY:  Okay.

21              (NOTE:  Pause in proceedings.  After which, the

22       following transpired:)

23              THE COURT:  All right.  Ms. Kelly, looking at your

24       addendum on April 26th, 2023, I think they pretty much --

25       and starting on page two, page three you match up your

                                                              10

1       arguments with a particular exhibit that you're making the

2       argument about.  So that's the trend that you want me to

3       follow?

4               MS. KELLY:  Yes, please, Your Honor.

5               And, therefore, to answer your earlier question, yes,

6       the police report is marked Exhibit 10.  And that is how I

7       refer to it in my addendum, in my -- the addendum filed on

8       April 26th.

9               THE COURT:  All right.  Defendant's Exhibits Number 1

10      containing nine search warrants, Exhibits 1 through 9;

11      police report Exhibit Number 10, admitted without

12      objection.

13              MS. KELLY:  Thank you.

14              (Whereupon, Defense's Exhibits 1 and 10 were tendered

15      and admitted into evidence.)

16              THE COURT:  All right.

17              MS. KELLY:  Thank you, Your Honor.  In those

18      exhibits, in the search warrants, as I indicated earlier,

19      the search warrant for the DNA, and so forth -- the

20      apartment, the truck, Facebook, and T-Mobile -- in every

21      warrant in the affidavit --

22              THE COURT:  So it would help me if you indicate what

23      exhibit you're talking about.

24              MS. KELLY:  Okay.  In Exhibit 1.

25              THE COURT:  Okay.

11

1          MS. KELLY:  And Ms. Wood is the affiant in all of the
2     exhibits.

3          THE COURT:  Okay.

4          MS. KELLY:  And in all of the exhibits, she
5     indicates, in her sworn affidavit, that the only -- and
6     I'm stating, the only evidence in these sworn affidavits
7     that pertain to Marquis that could potentially incriminate
8     him in this case are two statements.  One statement is
9     that the morning of April 26th, 2021, at about 0630 a.m.
10    Marquis was messaging Antwain (phonetic) Snipe asking her
11    to extend the rental of the 2016 Toyota Camry and told her
12    he didn't want another car and specifically asked to
13    extend the 2016 Toyota Camry.

14         That statement is included in all of these sworn
15    affidavits, Your Honor.  That statement is false -- is
16    false.  That statement is factually incorrect.  I -- I
17    would submit to the Court that it's a lie.  The State will
18    probably argue that it's sloppy police work.  Regardless,
19    it -- it is incorrect.  And the State, I believe, came to
20    that conclusion as well.

21         That statement that Ms. Snipe made was recorded,
22    reviewed by me and the State.  And, obviously, the State
23    can speak for themselves -- for himself.  And it was not
24    Marquis that Ms. Snipe indicated had sent a -- a message
25    requesting that the rental car be extended.  In her

1        statement, that was provided in discovery, she indicates

2        that it was Carlos who sent her that message.

3             Further in her statement, she -- it was also very

4        clear from Ms. Snipe's statement that she didn't know

5        Marquis.   In that statement she didn't even know Marquis's

6        name -- she meaning Ms. Snipe -- didn't even know

7        Marquis's name.

8             And, therefore, when reviewing the standard of

9        whether she knowingly lied in her sworn affidavit or she

10       was just reckless for the truth, I think that either one

11       could be true.   Even if she did not blatantly lie to try

12       to get evidence against Marquis, she was the one who

13       conducted the interview, that it was abundantly clear in

14       that interview, and throughout this entire case, that

15       Ms. Snipe didn't even know Marquis.   And, therefore, it

16       was reckless disregard, at the very minimum, for the

17       truth, reckless disregard in a sworn affidavit for a

18       murder case, Your Honor.

19            The -- In every one of one through nine affidavit she

20       also indicates:   Carlos Roundtree said at 8:00 a.m. Monday

21       morning, August -- I'm sorry -- April 26th, 2021, he took

22       Javaris, Aalyiah, and Marquis, who followed them in his

23       vehicle, to Walmart across from the Savannah Mall.   Carlos

24       Roundtree stated, Jarvis and Aalyiah purchased cleaning

25       supplies -- towels, rags, clothes, and trash bags -- from

                                                               13

1      Walmart.  Carlos Roundtree stated it was so they could
2      clean their house.

3          Now, I don't have it marked of which affidavits also
4      state, but some of the affidavits also state, your
5      affiant, who is Detective Wood, has seen the video footage
6      captured by Walmart's security cameras.  Now, that may be
7      factual, that she watched the video.  And one should hope
8      that in a murder trial when she's relying on a
9      codefendant's statement about who was there, that she
10     would have watched the video, but she does -- she doesn't
11     state in any of these affidavits the fact that Mr. Parrish
12     was not on any of that footage.

13         Sixty-seven hours of video surveillance footage from
14     Walmart for that period of time was provided in discovery.
15     In those 67 hours, it is literally every angle of every
16     security camera that that Walmart had.

17         The other three codefendants are captured on that.
18     Nowhere from the outside to inside is Mr. Parrish captured
19     on that footage.  And the State has indicated to me, and I
20     believe on record the last time we were here, Your Honor,
21     to this Court, that they had the same conclusion, that
22     Mr. Parrish is not captured anywhere on any of that
23     footage.

24         Again, is this blatant lie or is it reckless
25     disregard for the truth?  At the end of the day, I

1        don't -- I think either way it is, at least, at the very
2        minimum, either this officer's a liar or she's really
3        sloppy and doesn't care about people's lives, including
4        Mr. Vincent's life in this case, Your Honor.

5            I am asking for all of -- anything that was a result
6        of these search warrants to be suppressed.  Report number
7        ten -- I'm sorry.  The report, which is Exhibit Number 10,
8        was provided to Your Honor so that you, Your Honor, can
9        see on throughout that as well that Ms. Wood indicated
10       those lies in her police report as well, as well as other
11       lies is what I'm being advised.

12           It is also my understanding, which actually rose to
13       the level of an internal investigation against Ms. Wood,
14       when I brought this information, this misinformation to --
15       to the State, to Mr. DeBlasiis, I had only had the
16       discovery for three days, and, therefore, I hadn't gone
17       through all of it; however, once he became aware of this
18       information, he went through that information -- went
19       through discovery more thoroughly and found also a lie,
20       that Tyesha (phonetic) Love, who is my client's wife, and
21       happens to be in the courtroom, was being interviewed as a
22       result of an Aggravated Assault, allegedly, that Javaris
23       Roundtree shot her.  And the Detective Wood indicated that
24       Ms. Love properly identified Javaris when her entire
25       conversation with Ms. Love was captured by a body-worn

1    camera.  And that was another lie, Your Honor.

2        Therefore, I think that that is clear, through the

3    reading of this affidavit, and that through these

4    affidavits that are sworn affidavits, which I might

5    just -- on a side note, if a citizen lied to the police to

6    the degree that this person has lied on sworn affidavits

7    under oath and has supervisors signing off on this, I

8    believe criminal charges would be filed.  But that's just

9    an aside, Judge.

10        As it pertains to this, Your Honor, this detective

11   has lied.  Or she is -- just has blatant disregard,

12   reckless disregard for the truth in this matter.  As a

13   result of that, Your Honor, I'm asking that that

14   information be taken out of the four corners of the search

15   warrants.  And we submit to the Court that without those

16   lies, there is not probable cause for the search of

17   these -- of the DNA, the apartment, the truck, the

18   Facebook, and, as it pertains to my client, any cell phone

19   dumps.

20        They did not do a search warrant on his cell phone

21   and, therefore, if in the future they did intend to do a

22   search warrant, I would ask to preserve this issue for

23   that search warrant as well, Your Honor.

24        The returns on the apartment, and to specifically put

25   on the record of what we're the Court to suppress, his

1      DNA.  At the apartment, I'm asking the Court to suppress

2      the --

3              THE COURT:  Whoa.  Whoa.  Whoa.  Which -- which

4      warrant are you talking about?

5              MS. KELLY:  I'm sorry.  In Warrant Number One I'm

6      asking the Court to suppress his DNA, that any testing

7      that would result in that -- the State receiving that DNA.

8      No testing, to my knowledge, at this time had they done

9      that.  It's my understanding that all of the testing was

10     sent to GBI after our last motion hearing, Your Honor, so

11     I don't believe anything has been returned.

12             On Search Warrant Two, the apartment, Your Honor, the

13     return, which I did not have at the time of this filing,

14     that I do have now, is a white T-shirt.  And I can provide

15     this to Your Honor, if you would like it, rather than me

16     state it to the -- actually, that's what I'll do.  If I

17     could mark these two returns as Defense Exhibit 2 and 3.

18             THE COURT:  Defendant's 2, Defendant 3.  Were they

19     returned on the same day?

20             MS. KELLY:  Looks like 5/6/21 is for Defense Exhibit

21     2.  And that's the return for my client's --

22             THE COURT:  5/6/21?

23             MS. KELLY:  That's what that looks like to me.

24             And that was the return on the Defendant's apartment,

25     which is Warrant Number Two in my motion.

1          THE COURT:  All right.  And Defendant's 3 is return

2     for what day?

3          MS. KELLY:  For my client's truck, which I referred

4     to as Exhibit 3 in my motion.  And that was returned on

5     May 10th, 2021.

6          THE COURT:  And 10/21 return for truck.  That's

7     Exhibit -- Exhibit 3?

8          MS. KELLY:  Yes, please.

9          THE COURT:  Okay.  All right.

10         MS. KELLY:  Move to tender those into evidence, Your

11    Honor.

12         MR. O'BRIEN:  Without objection.

13         THE COURT:  Defendant's Exhibits 2 and 3 admitted

14    without objection.

15         MS. KELLY:  Thank you, Your Honor.

16         (Whereupon, Defense's Exhibits 2 and 3 were tendered

17    and admitted into evidence.)

18         MS. KELLY:  Your Honor, the Facebook returns are

19    electronic on the Facebook Warrant Number Four in my

20    motion and Facebook Warrant Number Five in my motion, as

21    are all of the cell phone tower dumps.  And that would be

22    T-Mobile is Warrant Number Six.

23         THE COURT:  Let's go back to four and five.  I got

24    to -- pretend like you were yesterday when you couldn't

25    talk and slow down just a little bit, okay?

```
1              MS. KELLY:  Okay.  Yes, Judge.

2              THE COURT:  That way, I might be able to write

3         something while you're -- all right.  So Exhibit Number 4

4         is?

5              MS. KELLY:  It's a Facebook, the warrant for

6         Facebook.  And I'm going to spell out which Facebook it

7         is.

8              THE COURT:  Exhibit 4, Facebook.

9              MS. KELLY:  And that is for the account Marquis --

10        M-A-R-Q-U-I-S, then period, Young T-E-F-P-A-R-R-I-S-H.

11             THE COURT:  T-E-F?

12             MS. KELLY:  T-E-F-P-A-R-R-I-S-H.

13             THE COURT:  That's Exhibit 4, am I right?

14             MS. KELLY:  Yes, Judge.

15             Exhibit 5 is also a Facebook search warrant

16        application and affidavit, and that is for Marquis,

17        period, Parrish, P-A-R-R-I-S-H, period, 501.

18             THE COURT:  Marquis Parrish 501, okay.

19             MS. KELLY:  And then the exhibit, the Exhibit 6

20        through 9 are all for tower dumps search warrants.

21             THE COURT:  Six through nine.

22             MS. KELLY:  Number six is for T-Mobile.

23             THE COURT:  Now you're bringing (indiscernible).

24        Okay.  Six is T-Mobile.

25             MS. KELLY:  Yes, sir.  Number Seven is Verizon.
```

1           THE COURT:  Seven, Verizon.

2           Exhibit 8?

3           MS. KELLY:  Is Sprint.

4           THE COURT:  Sprint.

5           Exhibit 9?

6           MS. KELLY:  AT&T.

7           THE COURT:  AT&T.

8           MS. KELLY:  And Exhibit 10 is the investigative

9    report by Ms. Wood.

10          THE COURT:  All right, ma'am.

11          (Whereupon, Defense's Exhibits 9 were marked for

12   identification and tendered and admitted.)

13          MS. KELLY:  In conclusion, Your Honor, we are

14   requesting that this -- the Court suppress anything as

15   discovered as a result of these search warrants.

16          As I have stated throughout my argument, at the very

17   most, Detective Wood is a liar.  At the very least, she

18   has a reckless disregard for the truth when it comes to

19   investigating what the State contends is a murder,

20   investigating a homicide.  And there's just no room for

21   any type of disregard for the truth, let alone reckless

22   disregard, and certainly not lies, Your Honor.

23          I believe that when -- I submit to the Court that

24   when you to take out the false statements as it pertains

25   to my client, that no probable cause remains, and that all

1          matters should be suppressed, Your Honor.

2              And I will just mention, as another aside, who knows

3          what else is not true in this?  It just could be that we

4          haven't discovered it yet.  But I do believe that

5          Detective Wood lacks the credibility to rely on her

6          statements, quite frankly, any of her statements for

7          probable cause.  And as a result, the evidence should be

8          suppressed, Your Honor.  Thank you.

9              THE COURT:  All right.  I'll make sure that I'm

10         clear.  Pretermitting the fact that you're probably going

11         to be having a field day on cross-examination --

12             MS. KELLY:  Yes, Judge.

13             THE COURT:  -- I'll be hearing the word "lie" all

14         during the course of the day.

15             MS. KELLY:  Yes.

16             THE COURT:  Is it the contention that the affidavits

17         as a result of these two areas that you have mentioned --

18         and I think I've got them dealing with your client.  There

19         we go.  All right.  That those two particular areas you've

20         made mention of, that they are removed from the

21         affidavits, that there is no probable cause with respect

22         to Exhibits 1 through 9.

23             MS. KELLY:  That is correct, Your Honor.

24             THE COURT:  All right, then.  All right.  All right.

25         Is there any response from the State?

21

1          MR. O'BRIEN:  Briefly, Your Honor.

2          THE COURT:  Yes, sir.

3          MR. O'BRIEN:  So, Your Honor, the State would concede

4     that the text that was referenced, that Marquis was

5     alleged to have sent, that that is factually incorrect.

6          Additionally, in reviewing the video surveillance

7     footage, the State concedes again that Mr. Parrish was not

8     seen on any of that video surveillance footage.

9          And just briefly, Your Honor, this is, essentially, a

10    Franks versus Delaware hearing where the preponderance of

11    the evidence is on Defense to show both, that the

12    statement was -- that the Affiant, in gaining a search

13    warrant, or getting a search warrant signed, knowingly and

14    intentionally made a false statement.  And I would submit

15    that something -- that something that is a false statement

16    doesn't mean that each fact needs to be incorrect.

17         What I'm saying is that if something is truthful or

18    the affiant believe for it to be true at the time and they

19    were acting in good faith, truthful means it doesn't

20    necessarily mean that each fact is necessarily correct.

21    An affiant can believe that a statement made by another

22    person is truthful and then testify that that is

23    truthfully correct.  That's not knowingly and

24    intentionally a false statement, even if that fact that

25    they testified to in the affidavit turns out to not be

```
 1         correct.  It, essentially, has to show that they're acting
 2         in bad faith or with a reckless disregard for the truth,
 3         and I think the similar some argument goes there.
 4              But even if Your Honor was to find that either one of
 5         those prongs were met, then, again, you take those false
 6         statements and set aside and have to find that the
 7         remaining content was insufficient to establish probable
 8         cause and thus voiding a search warrant.
 9              The State would submit that Defense has not met their
10         burden in this case.  We ask Your Honor to look at the
11         plain text and entirety of the four corners of the
12         warrants and then make your decision.
13              THE COURT:  All right.  Ms. Kelly, I'm going to take
14         your motion under advisement.  I've only gone through
15         three of the nine affidavits prior to this hearing date,
16         so I have to take some time to study the rest of them, and
17         I'll have to go over the other three again in light of
18         what your particular point is.
19              I think the practical aspect, from a legal
20         standpoint, though everyone is just arguing here today, no
21         one cited any authority on anything, even though it's in
22         your briefs, to some extent.  Question is whether or not
23         there is a segreants of the -- of the affidavit.  And
24         y'all have to look at it from that standpoint.
25              All right.  The Motion to Suppress is going to be
```

1          taken under advisement.

2              Ms. Kelly, is there anything else that the Court has

3          to entertain, ma'am?

4              MS. KELLY:  I have nothing further, Your Honor.

5              THE COURT:  Did we have a -- or did I rule on it?

6          Did we have a Motion to Sever?

7              MS. KELLY:  You have ruled on that and it was denied,

8          Your Honor.

9              THE COURT:  Okay.  All right.

10             Okay.  Anything that the Court needs to entertain for

11         the State?

12             MR. O'BRIEN:  No, Your Honor.

13             THE COURT:  Okay.  All right.  And this one is

14         scheduled earlier than the last one, so I got to get

15         crackin' (indiscernible).

16             Ms. Kelly, on your Motion to Sever, did I issue a

17         written order on that?

18             MS. KELLY:  Your Honor, I withdrew my Motion to Sever

19         because prior to me being appointed on this case, you

20         ruled on it and so I filed the motion and then reviewed

21         transcripts and saw that you ruled on it when Mr. Solomon

22         was on the case.

23             THE COURT:  All right.

24             MS. KELLY:  I'm not certain if it was a

25         written motion -- a written order, but I reviewed the

```
 1          transcripts from the -- I believe it was in November
 2     motion.
 3               THE COURT:  Got it.  Okay.
 4               As long as the record reflect that it has been ruled
 5     on.
 6               MS. KELLY:  Yes, Your Honor.
 7               THE COURT:  Ruled on and denied.  Okay.
 8               MS. KELLY:  Yes, Your Honor.
 9               THE COURT:  All right.
10               MS. KELLY:  Mr. Parrish free to go, Your Honor?
11               THE COURT:  If we have nothing else, I think we are
12     done, other than trial is scheduled for when trial is
13     scheduled.  We'll get this order out as quick as I can
14     once I look over these affidavits.
15               MS. KELLY:  Thank you, Your Honor.
16               (The proceedings adjourned at 3:20 p.m.)
17
18
19
20
21
22
23
24
25
```

## C E R T I F I C A T E

This is to certify that the foregoing 25 pages of typewritten material were taken down by me and transcribed under my supervision, and that the same contain a true and accurate transcript of the proceedings as stated in the caption.

I further certify that I am not kin nor counsel to any of the parties hereto, nor am I an interested party to these proceedings.

This 13th day of July 2023.


Natalie Willis, CCR
Certificate Number 2739
Room 511, 133 Montgomery Street
Savannah, Georgia 31401

26

### IN THE SUPERIOR COURT OF CHATHAM COUNTY

### STATE OF GEORGIA

**STATE OF GEORGIA,**

**v.**                                    **Case No. SPCR19-03253-J3**

**VICTOR MCMILLAR,**

       **Defendant.**

### ENTRY OF APPEARANCE

COMES NOW, W. Keith Barber, Attorney at Law, and respectfully makes and files this his entry

of appearance on behalf of Officer Ashley Wood in the above styled case. W. Keith Barber

represents Officer Ashley Wood for any and all purposes relating to this case. All

correspondence, communications, notices, and any other information concerning this case should

be directed to W. Keith Barber at the email, phone number or address below.

This 6th day of July, 2023.

_____

W. Keith Barber

W. Keith Barber, P.C.
Ga. Bar No. 037110
Attorney for the Defendant

keithbarber@statesborolawyer.com
18 South Main Street
Statesboro, Ga. 30458
(912) 764-2623

## IN THE SUPERIOR COURT OF CHATHAM COUNTY

## STATE OF GEORGIA

**STATE OF GEORGIA,**

**v.**                                    **Case No. SPCR19-03253-J1**

**VICTOR MCMILLAR,**

      **Defendant.**

### CERTIFICATE OF SERVICE

I, W. Keith Barber, counsel of record for Officer Ashley Wood, do hereby certify that I have served a true and correct copy of the foregoing ENTRY OF APPEARANCE upon the following Counsel in this matter by causing the same to be sent to their email address and also by electronically serving them:

1) District Attorney Hon. Shalena Cook-Jones, scjones@chathamcounty.org; and

2) Attorney Gregory N. Crawford, crawfordlaw@comcast.net

This 6th day of July, 2023.

_____
W. Keith Barber

W. Keith Barber, P.C.
Ga. Bar No. 037110
Attorney for the Defendant

keithbarber@statesborolawyer.com
18 South Main Street
Statesboro, Ga. 30458
(912) 764-2623

## Details - Case # SPCR19-03253-J1 - Envelope # 12611500

### Envelope

Envelope ID
████████

Username
keithbarber@statesborolawyer.com

Submitted by
Keith Barber

### Case Information

Court Location
Chatham County - Superior - Criminal - J1

Case Type
Major Crimes Division

Case Category
Criminal

Judge
J, 1

### Parties

| Party Type | Party Name | Lead Attorney |
|---|---|---|
| Defendant | Victor Rashaad McMillar | Gregory Noel Crawford |
| Plaintiff | State of Georgia | ADA Pending |

### Filings

| Filing Code | Filing Type | Filing Description | Client Ref # | |
|---|---|---|---|---|
| Criminal Filing | | | | ˅ |

### Service Contacts

| Service Contacts | | 👤 7 | ˅ |
|---|---|---|---|

### Fees

Payment account
████████

Filing attorney

Order ID

Transaction Amount
$0.00

Party responsible
████████████

Transaction Response

Transaction ID
████████

| Total | $0.00 |
|---|---|

| **Grand Total** | **$0.00** |
|---|---|

IN THE SUPERIOR COURT OF CHATHAM COUNTY

STATE OF GEORGIA

STATE OF GEORGIA,

v.                                    Case No. SPCR21-03130-J4

JAVARIUS ROUNDTREE,

       Defendant.

## ENTRY OF APPEARANCE

COMES NOW, W. Keith Barber, Attorney at Law, and respectfully makes and files this his entry

of appearance on behalf of Officer Ashley Wood in the above styled case. W. Keith Barber

represents Officer Ashley Wood for any and all purposes relating to this case. All

correspondence, communications, notices, and any other information concerning this case should

be directed to W. Keith Barber at the email, phone number or address below.

This 14th day of July, 2023.

W. Keith Barber

W. Keith Barber, P.C.
Ga. Bar No. 037110
Attorney for the Defendant

keithbarber@statesborolawyer.com
18 South Main Street
Statesboro, Ga. 30458
(912) 764-2623

IN THE SUPERIOR COURT OF CHATHAM COUNTY

STATE OF GEORGIA

STATE OF GEORGIA,

v.                                          Case Nos. SPCR21-03130-J4

JAVARIUS ROUNDTREE,

Defendant.

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the ENTRY OF APPEARANCE in this case

by sending an email to:

1) Shalena Jones, DA
   Scjones@chathamcounty.org

2) Skye Musson, Esq.
   Skye@mussonlawoffices.com

notifying them of the same.

This 14th day of July, 2023.

W. Keith Barber
Ga. Bar No. 037110

18 South Main Street
Statesboro, Georgia 30458
(912) 764-2623

SAVANNAH

## SEPARATION - NOTICE OF SUSPENSION PRIOR TO DISMISSAL

**Employee's Name:** Ashley Wood

6/28/2023
Date

4266-3722-008
Position Control Number

62333
Employee No.

**Mailing Address:** ███████████████

**Suspended with pay Prior to Dismissal for 2 days beginning**
**through** 6/30/2023 1700

06/28/2023 1700
date/time

...may respond with a written statement (Appeal of Suspension Prior to
...ction. Your response must be directed to the Office of Human
...ppeal will be scheduled with the City Manager or designee. You
...of this notice. If no written appeal is received, dismissal will

...(check one):

6/28/23
Date

...s appeal rights as noted above.

_6/28/23_
Date Received

**CITY OF SAVANNAH**
**SEPARATION RECORD**

Employee Name: Ashley Wood                                      Date: 06/27/2023

Employee #: 62333          Position Control #: 4266-3722-008        Dept. #: 4266

Mailing Address: ▮▮▮▮▮▮▮▮▮▮▮        (Street)
                (City)                    (State)        (Zip code)

Effective Date of Separation: 07/17/2023        FLSA Status: ✔ Exempt ___ Non-Exempt
                                                             (Select one)

Resignation in good standing:
___ Other employment (ROB)
___ Further education/return to school (RED)          ___ Family related (RFAM)
___ Other (ROTH) reason:                              ___ Relocation/move out of town (RREL)

___ [REDACTED]                    Other reason: _____ ?

___ [REDACTED] (____TD)   ___ Non-Occupational Disability (RTND)

___ [REDACTED] (____OB) reason: ADM-004, ADM-018, ADM-002, OPS-001, 033
_____
_____

[REDACTED] k or call in for 2 consecutive days.

[REDACTED] e Exempt comp time)
_____
_____

[REDACTED] non-probationary regular status Civil Service
[REDACTED] Civil Service Board by notifying the Human

                                                    H R →

                              07/17/2023
                                 Date

                                 Date

                                                    6/09/10 Rev.

State of Georgia
Department of Labor

## SEPARATION NOTICE

1. Employee's Name  Ashley Wood                                    2. SSN

   a. State any other name(s) under which employee worked.

3. Period of Last Employment:  From  02/03/2017                    To  07/17/2023

4. REASON FOR SEPARATION:

   a. LACK OF WORK  ☐

   b. If for other than lack of work, state fully and clearly the circumstances of the separation. Violation of SPD Policy

   _____ Separation Pay, Wages-in-Lieu of Notice, bonus, profit sharing, etc.)

   _____  for period from _____ to _____

   _____ pay and what percentage of contributions were paid by the employer.
   ___ % of contributions paid by employer

   _____ YES ☐   NO ☐   If NO, how much? $ _____

                                                     Average Weekly Wage $ _____

   GA D. O. L. Account Number  140-306-02

   I CERTIFY that the above worker has been separated from work
   and the information furnished hereon is true and correct. This
   report has been handed to or mailed to the worker.

   _____
   Signature of Official, Employee of the Employer
   or authorized agent for the employer

   Lieutenant Richard Wiggins
   _____
   Title of Person Signing

   7/17/23
   _____
   Date Completed and Released to Employee

NOTICE TO EMPLOYEE
... ...TY LAW REQUIRES THAT YOU TAKE
... ...IELD SERVICE OFFICE IF YOU FILE A

DOL-800 (R-7/21)



SAVANNAH
savannahga.gov

## DISCIPLINARY ACTION RECORD

EMPLOYEE'S NAME: Ashley Wood                          EMPLOYEE NO: 62333

DEPT. NAME: SPD                    SUPERVISOR'S NAME: Lt. Wiggins          DATE: 8/27/2023

**Type of Action: (select one)**

- [ ] Written Reprimand
- [ ] Suspended without pay for      days beginning        through
- [ ] Demotion
- [x] Termination

**Type of Infraction (select one)**

- [ ] Attendance    [ ] Performance    [ ] Safety    [x] Violation of City Policy

Supervisor's description of infraction. Include specific details (date, time, location, names of other employees involved, etc.). Attach additional sheet if needed.

ADM-001 Code of Office, Ethics, and Conduct (Knowledge of Laws and Rules, Truthfulness/Honesty), OPS-__ ... Investigations, Case File Management), OPS-033 Court ... Demeanor and Rules, Superior Court), ADM-002 ... ility)

... to employee including counseling sessions within the past three (3)

... ). Include specific time frames, if applicable.

... meet the acceptable standards of performance or behavior. Failure to ... action which may result in eventual dismissal and may negatively

|  | Name | Date |
|---|---|---|
|  |  | 6/28/23 |
|  |  | 6/28/2023 |
|  |  |  |

... this action is unjust, you may complete an Appeal of ... it to your supervisor. Distribution: Original to

## IN THE SUPERIOR COURT OF CHATHAM COUNTY

## STATE OF GEORGIA

**STATE OF GEORGIA,**

**v.**                                    **Case No. SPCR21-02140-J4**

**MARQUIS RAQUEL PARRISH,**

      **Defendant.**

## ENTRY OF APPEARANCE

COMES NOW, W. Keith Barber, Attorney at Law, and respectfully makes and files this his entry

of appearance on behalf of Officer Ashley Wood in the above styled case. W. Keith Barber

represents Officer Ashley Wood for any and all purposes relating to this case. All

correspondence, communications, notices, and any other information concerning this case should

be directed to W. Keith Barber at the email, phone number or address below.

This 6th day of July, 2023.

_____

W. Keith Barber

W. Keith Barber, P.C.
Ga. Bar No. 037110
Attorney for the Defendant

keithbarber@statesborolawyer.com
18 South Main Street
Statesboro, Ga. 30458
(912) 764-2623

## IN THE SUPERIOR COURT OF CHATHAM COUNTY

## STATE OF GEORGIA

STATE OF GEORGIA,

v.                                    Case No. SPCR21-02140-J4

MARQUIS RAQUEL PARRISH,

       Defendant.

## CERTIFICATE OF SERVICE

I, W. Keith Barber, counsel of record for Officer Ashley Wood, do hereby certify that I have served a true and correct copy of the foregoing ENTRY OF APPEARANCE upon the following Counsel in this matter by causing the same to be sent to their email address and also by electronically serving them:

1) District Attorney Hon. Shalena Cook-Jones, scjones@chathamcounty.org;

2) Attorney Katherine M. Kelly, kmkelly@chathamcounty.org; and

3) Attorney Kelly L. Turner, kturneresq@msn.com.

This 6th day of July, 2023.

W. Keith Barber

W. Keith Barber, P.C.
Ga. Bar No. 037110
Attorney for the Defendant

keithbarber@statesborolawyer.com
18 South Main Street
Statesboro, Ga. 30458
(912) 764-2623

## Details - Case # SPCR21-02140-J4 - Envelope # 12611771

### Envelope

Envelope ID

▮▮▮▮▮▮

Username
keithbarber@statesborolawyer.com

Submitted by
Keith Barber

### Case Information

Court Location
Chatham County - Superior - Criminal - J4

Case Type
Major Crimes Division

Case Category
Criminal

Judge
J, 4

### Parties

| Party Type | Party Name | Lead Attorney |
|---|---|---|
| Defendant | Marquis Raquel Parrish | Attorney Pending |
| Plaintiff | State of Georgia | Shalena Cook Jones |

### Filings

| Filing Code | Filing Type | Filing Description | Client Ref # | |
|---|---|---|---|---|
| Criminal Filing | | | | ⌄ |

### Service Contacts

| Service Contacts | | |
|---|---|---|
| | 👤 14 | ⌄ |

### Fees

Payment account
▮▮▮▮

Filing attorney

Order ID

Transaction Amount
$0.00

Party responsible
Marquis Raquel Parrish

Transaction Response

Transaction ID
▮▮▮▮▮

| Total | $0.00 |
|---|---|
| **Grand Total** | **$0.00** |



PERSONAL AND CONFIDENTIAL MEDICAL INFORMATION



**SAVANNAH POLICE**

*To Serve, Protect and Build Trust*

*SavannahPD.org*

| ADMINISTRATIVE INVESTIGATION |
| :---: |
| **Incident Report** |

| OPS NUMBER: | 23-0041 |
| :--- | :--- |
| **EMPLOYEE:** | Corporal Ashley Wood |
| **DATE:** | December 23rd, 2022 |
| **INVESTIGATOR:** | Sergeant Kaishawn Samuell |

The purpose of this investigative narrative is to document an investigation into CPL Wood's (PR # 62333) investigation of an Aggravated Assault and a Homicide in which reports and BWC footage were conflicting.

**Friday, March 31st, 2023:**

I met with Assistant District Attorney DeBlasiis and Investigator Sammons, who is also with the District Attorney's Office. During the meeting, I was shown a homicide report submitted by Detective Wood (CRN 210502037). On page 5 of the report, Detective Wood documents an interview that she had with Ms. Tyesha Love in reference to an aggravated assault that she was the victim of (CRN 210501027), which was related to the homicide.

Detective Wood documented the following in her ARS narrative: *Tyesha Love explained to me that Friday night, Marquis and Javaris got into a verbal argument and asked Javaris to leave. Tyesha Love stated that Javaris grabbed his gun and left the apartment. She said that on Saturday morning she was in her bedroom cleaning up and was by the window when suddenly, she heard gun shots hitting her second-floor apartment.* ***She glanced out the 2nd floor window and saw Javaris Roundtree shooting towards her apartment.*** *She then stated, a bullet came through her window striking her in the arm.*

I then reviewed the BWC footage of CPL Wood and Detective Hilderbrand interviewing Ms. Love. During the interview Detective Hilderbrand asks Ms. Love if she knows who shot her (11:35). Ms. Love gives a sigh and is led away from bystanders by Detective Wood and Detective Hilderbrand. Detective Wood tells Ms. Love that all she needs to do is give her a nickname. Ms. Love appears to be hesitant when she is asked the question. Detective Wood then asks Ms. Love if "Scooter" (Javaris Roundtree) shot her, and Ms. Love gives a slight head nod.

Detective Wood then walks Ms. Love further away from bystanders and Detective Hilderbrand is not present. Ms. Love stated that the day she got shot, she was in her room near the window and heard gunshots (16:34). She stated that when she got shot, she hit the ground. Detective Wood asked Ms. Love if she looked out the window when she got shot, to which she replied that she

1



SavannahPD.org

just hit the ground after she was shot. Detective Wood then asked Ms. Love if she saw anybody walking up before the gunshots. Ms. Love replied no again.

Investigator Sammons then explained how Detective Wood had not yet submitted crucial evidence to the GBI in reference to the homicide. He also stated that Detective Wood had not completed search warrant returns in reference to the homicide investigation.

Investigator Sammons also mentioned that CPL Wood did not go to court after being subpoenaed on March 22nd, 2023. He stated that he was told that CPL Wood advised that she would not be attending court due to a "work related operation".

There is no mention of search warrants, search warrant returns, or evidence submission in Detective Wood's investigative reports in reference to the aggravated assault or the homicide in ARS.

Corporal Wood was placed on administrative leave on this date as well. CPL Wood was advised of the investigation. She was advised that she needed to communicate with Investigator Sammons and to see what the District Attorney's office needed for the upcoming trial for this case.

In the 2 weeks following being placed on administrative leave, Corporal Wood submitted evidence for this case to the GBI and got appointments with Superior Court Judges to get search warrant returns for this case completed.

## Thursday, April 13th, 2023 at approximately 1330 hours:

Corporal Wood came to the IA Office and a formal interview was conducted. Prior to the interview, Corporal Wood was given a copy of her report for CRN 210502037. She was also allowed to watch BWC footage of her interview with Tyesha Love. Corporal Wood was then read Garrity and the notification of general order # OPS-016. She signed both forms and stated she understood them. The interview was audio recorded and added to the case file for this investigation. The following is a summary of the interview. Corporal Wood was advised that the purpose of the investigation was to figure out why there were discrepancies in her report when compared with the BWC footage. Corporal Wood confirmed that she read the report she placed in ARS under CRN 210502037, specifically where it says that Ms. Love identified Javaris Roundtree as the person who shot her because she saw him shooting at her. She was then asked why the ARS reports says that Ms. Love saw who shot her, but in the BWC footage, Ms. Love states to Corporal Wood that when the shooting started, she got down on the floor and did not see who was shooting. Corporal Wood is then shown again, the footage from the BWC where Ms. Love stated she did not see who shot her.

Corporal Wood was asked why there was a discrepancy in the report and the BWC footage. She responded by saying that when she asked Ms. Love if "Scooter" shot her, Ms. Love's body language told her that "Scooter" did shoot her. She stated that she believed Ms. Love did not

2



verbalize that "Scooter" shot her because "Scooter's" baby mama was 10 feet away. Corporal Wood stated that Ms. Love's body language indicated to her that Ms. Love saw "Scooter" shoot her. Corporal Wood then stated that later in the interview, Ms. Love changed her story. She stated that when she typed her Detective supplemental report, she typed it from memory without watching the BWC footage. When asked how long after the incident did she swear out warrants on Javaris Roundtree, she stated that she did not remember. When asked if she swore the warrants out via Cloud Gavel or if she went to see a Judge in person, she replied by saying she did not remember. When asked who her supervisors were at the time of this incident, Corporal Wood stated that Sergeant Khaalis and Lieutenant Burdette were the supervisors of the unit at that time. When asked why a case file was not submitted for the homicide and aggravated assault investigations, Corporal Wood responded by saying that she had been transferred to the Gang Unit and forgot to submit the case file.

*(This incident occurred in May of 2021 and Corporal Wood was transferred to the gang unit in October of 2021)*

Corporal Wood was then asked why search warrant returns were just getting done if the incident happened 2 years ago. She replied by saying that she was trained to hold off on doing search warrant returns until the case was about to go to trial and just before the defense attorney filed for discovery. She stated that was standard practice for the homicide unit at that time. She then stated that the District Attorney's Office had a copy of the case file for this incident.

### Friday, April 14th, 2023, at approximately 1000 hours:

Corporal Hilderbrand came to the IA Office and a formal interview was conducted. Corporal Hilderbrand was then read Garrity. He signed the form and stated he understood it. The interview was audio recorded and added to the case file for this investigation. The following is a summary of the interview. When asked if he recalled the incident at 10714 Abercorn Street in 2021, Corporal Hilderbrand stated that he did not remember details about the case off the top of his head. He was then shown BWC footage of his and Corporal Wood's interview with Ms. Love. After reviewing the BWC footage, Corporal Hilderbrand was asked if he was present during any time that Ms. Love verbalized who shot her. He responded by saying that he did not recall and requested to view the entire BWC footage from the interview with Ms. Love. He was then asked about when he first started in the homicide unit, if he was trained not to turn in search warrants and evidence until right before discovery from the defense. He replied by saying that the standing practice for the unit when he started there was not to turn in search warrant returns to the courts until right before discovery, so that the defense could not have access to them before the District Attorney's office wanted the defense to have them. Corporal Hilderbrand stated that the practice of doing this was initiated when former SPD Sergeant Santoro was supervising the unit. Corporal Hilderbrand stated that it was never standard practice to not submit evidence immediately to be tested by GBI.

Corporal Hilderbrand then was allowed the entire BWC footage for this incident. He confirmed that in the beginning of the interview, when Ms. Love was asked if "Scooter" was the person

3



who shot her, she put her head down and nodded to indicate yes. Corporal Hilderbrand stated that when he asked Ms. Love it nodding her head meant yes, she nodding her head again. Corporal Hilderbrand also confirmed that Corporal Wood walked away with Ms. Love to complete the interview and he did not know what was said during that portion because he was standing by with "Scooter's" baby mama.

## Monday, April 17th, 2023 at approximately 1118 hours:

Sergeant Khaalis came to the IA Office and a formal interview was conducted. Prior to the interview, Sergeant Khaalis was given a copy of Corporal Wood's report for CRN 210502037. She was also allowed to watch BWC footage of the interview of Tyesha Love, conducted by Corporal Wood and Corporal Hilderbrand. Sergeant Khaalis was then read Garrity and the notification of general order # OPS-016. She signed both forms and stated she understood them. The interview was audio recorded and added to the case file for this investigation. The following is a summary of the interview. Sergeant Khaalis confirmed that she and Lt. Burdette were supervisors of the homicide unit during this incident. When asked how often she received updates on homicide cases that are being actively worked, she replied by saying that it depends, and it is case by case. When asked how long after an arrest is made should a case file be turned in for supervisor review, she stated 60 days, but the DA's office wants them within 90 days. She stated that things like search warrant returns and results from evidence submissions probably would not be in the case file within the 60-90 day period, but they would be added later when the detective got results. When asked if she remembered supervisor approving Corporal Wood's report, she confirmed that she remembered approving it. When asked if she watched the BWC footage of the interview Corporal Wood and Corporal Hilderbrand conducted with Ms. Love, she stated that she did not review the footage. Sergeant Khaalis agreed that there were discrepancies in Corporal Wood's report after viewing the BWC footage of the interview for the first time. She stated that Javaris Roundtree should not have been arrested based off what she saw on the BWC footage.

When asked about evidence submission and how the supervisors are updated on the detective's cases, Sergeant Khaalis stated that yes, things like DNA swabs and shell casings should have been turned in to GBI immediately. She stated that in 2021, the DA assigned to the homicide case would usually send an email, with a list of things that still needed to be done for the case. She stated that she never got an email or was advised on any further actions needing to be taken by Corporal Wood.

When asked about search warrant returns not being turned in until right before trial for discovery by the defense, Sergeant Khaalis replied by saying that former SPD Sergeant Santoro initiated that practice before she went to the unit. She stated that her chain of command did not seem to have a problem with it, so she didn't think it was a problem. She stated that currently, the homicide unit turns the search warrant returns in as soon as the requested items are provided to the detective.

4



When asked if there was a process for if case files were turned in, Sergeant Khaalis stated that it is tracked on a excel spreadsheet on the OneDrive. When asked if she has communicated with Corporal Wood about getting the case file for this investigation turned in over the last 2 years, she stated that she had, but could not remember if it was via email or phone call.

SGT Khaalis provided me with emails showing a mid-year work plan for CPL Wood, which addressed expectations for her updates for CRN 210501027 and CRN 210502037. The email indicated that reports needed to be uploaded to ARS and a casefile needed to be submitted for both investigations. SGT Khaalis also provided an email correspondence with CPL Wood from September 1st 2021, reminding CPL Wood that she still had not submitted her report for the homicide in ARS.

## Thursday, April, 20th, 2023, at approximately 1003 hours:

Lieutenant Burdette came to the IA Office and a formal interview was conducted. Lieutenant Burdette read the report Corporal Wood submitted in reference to this incident (CRN 210502037). He then watched the BWC footage of the interview of Tyesha Love, conducted by Corporal Wood and Corporal Hilderbrand. Lieutenant Burdette then read Garrity. He signed the form and stated he understood it. The interview was audio recorded and added to the case file for this investigation. The following is a summary of the interview. Lieutenant Burdette confirmed that he was Sergeant assigned as a supervisor in the homicide unit in May of 2021. When asked if it was common practice for supervisors to review BWC footage along with detective supplemental reports, Lieutenant Burdette stated that it was not. He stated that supervisors just read the detectives reports. He stated that when arrests were made in these cases, detectives would let him and/or Sergeant Khaalis know, so the news could be passed along through the chain of command. When asked if there would have been anything done differently if Lieutenant Burdette would have viewed the BWC footage after viewing the ARS report in 2021, Lieutenant Burdette stated that there was no probable cause for an arrest if he would have viewed the BWC footage in 2021. Lieutenant Burdette stated that he got promoted to Lieutenant in July of 2021 and had no further involvement with the homicide unit until he was recently transferred back as the unit commander.

## 1305 hours:

Corporal Wood came to the Internal Affairs office to be re-interviewed. Corporal Wood confirmed that she remembered Garrity and was told it was still in effect. The following is a summary of the interview. When asked how long after the interview with Ms. Love did she type her report, Corporal Wood stated it was maybe a month later. When asked what her probable cause was for the aggravated assault arrest on Javaris Roundtree, she stated that Ms. Love's body language during the interview told her that Javaris Roundtree shot her, even though she did not see him shoot her. Corporal Wood stated that when she wrote the report for this incident, she

5



wrote it from memory and did not review the BWC footage of the incident. When asked what she testified to when getting the warrant sworn out the next day to the Judge, she stated that she did not remember. When asked if Corporal Wood told ADA DeBlasiis that MS. Love told her that Javaris Roundtree shot her, Corporal Wood stated that she told ADA DeBlasiis she did not remember. When asked specific questions pertaining to her probable cause and overall investigation of the homicide (CRN 210502037) Corporal Wood stated that she did not remember. When asked about submitting evidence (specifically shell casings, guns and DNA) to the GBI to be processed, Corporal Wood said that she just forgot to do it.  When asked about why she did not interview 2 of the subjects she had warrants out on for the homicide, she stated that she did not feel the need to interview them at that point. She then stated that she was on her back porch, screening her porch in and drinking a beer when the arrests were made. When asked about supplemental reports that should have been typed after she got information obtained via search warrants (i.e., phone records and tower dump records), Corporal Wood replied that she didn't know why she didn't type the supplemental reports.

## Friday, April 28th, 2023

I received information that a press released was aired and posted on news outlets. The article alleged that CPL Wood used false information to obtain warrants in the homicide investigation she conducted in 2021 (CRN 210502037). The article stated that CPL Wood obtained 34 search warrants, all of which stated that Marquise Parrish was with co-defendants purchasing cleaning supplies at Walmart, and that CPL Wood viewed security footage confirming that. The article alleges that Mr. Parrish's attorneys viewed 67 hours of Walmart security footage and never saw Mr. Parrish anywhere in the footage.

## Monday, May 8th, 2023, at approximately 1400 hours:

CPL Wood came to the Internal affairs office to be interviewed, in reference to the allegations from the press release. CPL Wood was reminded of the Garrity warning that she signed and advised that it was still in effect. The interview was audio recorded and added to this case file. The following is a summary of the interview.

CPL Wood confirmed that she knew about the press release, but stated she did not read it. CPL Wood was told that the press release alleged that she obtained arrest and search warrants under false pretenses. She was asked if she saw Marquis Parrish on the surveillance footage at the Walmart across from Savannah Mall, along with the other 3 co-defendants for the homicide case she investigated (CRN 210502037). She stated that she did not remember, because it had been so long ago. She was then provided a copy of her police report, focusing on page 8 where she reports the following:

*"I also know that on 4/26/2021 Carlos Roundtree, Aaliyah Duncan and Marquis Parrish went to the Walmart Super Center located at 14030 SR-204 E to purchase cleaning supplies, towels, wash rags, trash bags and clothes. I saw the video footage captured by Walmart security camera's."*

6



CPL Wood was asked how she knew Marquis Parrish was at Walmart on the date in question. She stated that she did not remember, but it could have been someone that she interviewed that told her that Marquis was there. She stated that she remembers seeing Aaliyah Duncan on the surveillance footage, but may have placed the other individuals, to include Marquis Parrish, at the Walmart through interviewing co-defendants.

## Facts and Findings

- On March 31st, 2023, I met with Assistant District Attorney DeBlasiis and Investigator Sammons, who is also with the District Attorney's Office. During the meeting, I was shown a homicide report submitted by Detective Wood (CRN 210502037).

- On page 5 of the report, Detective Wood documents an interview that she had with Ms. Tyesha Love in reference to an aggravated assault that she was the victim of (CRN 210501027), which was related to a homicide. Detective Wood indicated in her report that Ms. Love saw Javaris Roundtree shooting at her apartment.

- Upon review of the BWC interview between Ms. Love and Detective Wood, Ms. Love states that she did not see who was shooting at her apartment, because she fell to the ground when she heard the shooting happening.

- Detective Wood still had evidence that was not submitted to GBI to be processed in reference to this incident.

- Defense Attorneys alleged that Detective Wood obtained search warrants and arrests warrants based on statements given to the courts that were not true.

- Detective Wood did not go to court after being subpoenaed on March 22nd, 2023. She advised the DA's office that that she would not be attending court due to a "work related operation".

- Detective Wood did not complete tasks in reference to the homicide and the aggravated assault investigations that were given to her by her supervisor at the time (Sergeant Khaalis).

- Upon completion of my investigation, CPL Wood was cited with the following:

    o ADM-004, Oath of Office, Ethics, and Conduct
        ▪ Knowledge of rules and laws
        ▪ Truthfulness/honesty

7

**SAVANNAH POLICE**

*To Serve, Protect and Build Trust*

*SavannahPD.org*

- o   ADM-018, Search and Seizure
  - • Requirements for a search warrant return

- o   OPS-001, Criminal Investigations
  - • Follow-up Investigations
  - • Case file management

- o   OPS-033, Court Protocol
  - • Superior Court / Electric Notification/Subpoena
  - • Preparation for Court
  - • Courtroom Demeanor and Rules

- o   OPS-002, Organization and Direction
  - • Employee Responsibility

## ADM-004 , OATH OF OFFICE, ETHICS, AND CONDUCT

**Truthfulness/Honesty**
**Knowledge of rules and Laws**

- Corporal Wood swore out arrests warrants on Javaris Roundtree for aggravated assault even though he was not properly identified by the victim.

- Corporal Wood swore out arrest warrants and search warrants on Marquis Parrish testifying that she knew he was seen on security footage at Walmart with co-defendants, when he was actually not seen on security footage.

## ADM-018, SEARCH AND SEIZURE

**Searches with a warrant**

-Corporal Wood did not turn in search warrant returns within 5 days of receiving items listed in search warrants submitted.

## OPS-001, CRIMINAL INVESTIGATIONS

**Follow-up Investigations**
**Case file management**

**SAVANNAH POLICE**

*SavannahPD.org*

-Corporal Wood did not submit evidence to be processed at the GBI until April 2023

-No supplemental reports were written and loaded in ARS in reference to what was received from the execution of search warrants, submitting of evidence to GBI

-Corporal Wood did not review supplemental reports and had no knowledge of a suspect vehicle or a potential additional witness in the aggravated assault case.

-No case file was turned into SPD case file management until April 2023.


## OPS-033, COURT PROTOCOL

### Electric Notification/Subpoena
### Superior Court

- Corporal Wood did not go to court after being subpoenaed on March 22nd, 2023, for a motion hearing. Corporal Wood advised that she would not be attending court due to a "work related operation".

### Preparation for Court

-Corporal Wood did not submit evidence to be processed with the GBI. She also did not review supplemental reports in reference to either case.

-Corporal did not have a completed case file nor did she have lab results due to her failure to submit evidence collected for testing at the GBI.

### Courtroom Demeanor and Rules

-Corporal gave inaccurate testimony when applying for arrest warrants and search warrants


## OPS-002, ORGANIZATION AND DIRECTION

### Employee Responsibility

-Corporal Wood did not complete tasks in reference to the homicide and the aggravated assault investigations that were given to her by her supervisor at the time (Sergeant Khaalis).

-Sergeant Khaalis was cited with the following:

# SAVANNAH POLICE

To Serve, Protect and Build Trust

*SavannahPD.org*

    o   OPS-002, Organization and Direction
           •  Supervisor Responsibility

    o   OPS-001, Criminal Investigations
           •  Case file management

## OPS-002, ORGANIZATION AND DIRECTION

**Supervisor Responsibility**

-Sergeant Khaalis did not ensure that Corporal Wood submitted a complete case file and accurate report for this investigation.

## OPS-001, CRIMINAL INVESTIGATIONS

**Case file management**

-Sergeant Khaalis did not review Corporal Wood's case file for accuracy every 10 days.



SavannahPD.org

`1

# SAVANNAH POLICE
To Serve, Protect and Build Trust

*SavannahPD.org*

## LETTER OF TRANSMITTAL

**TO:**      **Lenny B. Gunther, Chief of Police**

**THRU:**    **Devonn Adams, Assistant Chief of Police**
             **Ben Herron, Police Major**
             **Alexander Tobar, Police Captain**

**FROM:**    **Zachary Burdette, Police Lieutenant**

**DATE:**    **May 24, 2023**

**SUBJ:**    **Letter of Transmittal for Administrative Investigation 23-0041**

---

## COMPLAINT:

An administrative investigation was initiated by the Savannah Police Departments Internal Affairs Unit in March 2023 in reference to a homicide and aggravated assault investigation which lead to a subsequent arrest by Corporal Ashley Wood (PR 62333).

This complaint stemmed from conflicting information in Corporal Wood's investigation and what was captured on her Body Worn Camera (BWC) and interview room cameras.

This complaint involves the following Savannah Police Department Policies:

GO # ADM-004 Oath of Office, Ethics, and Conduct
GO # ADM-002 Organization and Direction
GO # ADM-018 Search and Seizure
GO # OPS-001 Criminal Investigations
GO # OPS-033 Court Protocol

## ALLEGATION(S):

### Corporal Ashley Wood

### Savannah Police Department Policy GO # ADM-004 Oath of Office, Ethics and Conduct

**I.      General Standards of Conduct**

**4. Truthfulness/Honesty**: Employees shall not willfully, intentionally, or knowingly depart from the truth OR in any way be deceptive, provide misrepresentations, falsification, deliberately or intentionally

Page **1** of **14**

1190W Jan 2011

omit or misrepresent material facts when giving testimony, providing information (orally or in writing), or reporting in connection with any official duties. This includes the submission of fictitious or inaccurate reports or the falsification or misrepresentation of any facts or circumstances in official agency records. Upon the order of a superior, employees shall truthfully answer all questions specifically directed and narrowly related to the scope of employment and operations of the agency

III.   Professional Life Standards

C. **Knowledge of Laws and Rules** - SPD employees are required to establish and maintain a working knowledge of laws and ordinances enforced within the City of Savannah, the rules and policies of the SPD and the City of Savannah, and the orders of the SPD and Divisions thereof. In the event of improper action or breach of discipline, it will be presumed that the employee was familiar with the law, rule, or policy in question.

**Savannah Police Department Policy GO # ADM-002 Organization and Direction**

V. Employee Responsibility
A. To be managed effectively, personnel should understand their duties and responsibilities. Those duties are detailed in Job Descriptions located on the City of Savannah network. Each employee will be held accountable for their duties and responsibilities.
B. It shall be the responsibility of each employee to obey all lawful orders directed to them from a supervisor. This will include any order relayed from a supervisor by an employee of the same or lesser rank. [CALEA 12.1.3]

**Savannah Police Department Policy GO # ADM- 018 Search and Seizures**

I.   Searches with a Warrant

3. Requirements for a Search Warrant Return

a. Must list everything seized.

b. Must be made in a timely manner. (No legal limit SPD policy time

limit of 5 days)

c. Must be sworn before a Judge of the same Court that issued the Warrant.

d. Must be made available the subject of warrant upon request.

**Savannah Police Department Policy GO # OPS-001 Criminal Investigations**

## II. FOLLOW UP INVESTIGATIONS

B. When a case is assigned to an investigator for a follow-up, they will review the preliminary investigation report to determine if any leads or suspects exist. [CALEA 42.2.3a]. If so, the investigator will:

1. Read and become thoroughly familiar with the incident report.

4. Determine if there is any additional information via the originating officer or uniformed officers, informants, witnesses, and/or neighborhood interviews. [CALEA 42.2.3c]

10. Conduct the proper collection, preservation, and submission of evidence.

11. Examine physical evidence, review all statements and make a determination if there is sufficient evidence to charge a person with the crime.

14. Review all results from lab exams. [CALEA 42.2.3a]

20. Conduct background investigations on suspect(s) via criminal records checks, criminal history files, and other established sources. [CALEA 42.2.3g]

23. If necessary, use a search warrant, or in approved instances, the consent to search form to legally recover items of evidentiary value or stolen property. [CALEA 42.2.3d]

24. Indicate the disposition and status of any property or evidence in SPD custody in a supplemental report.

28. Organize, in an orderly fashion, all notes, evidence, photographs, supplements, and lab findings for court presentation, and make the prosecutor aware of all pertinent facts of the case and of the criminal history background of the defendant. [CALEA 42.2.3h]

29. Complete a detailed investigative report documenting all activities including a timeline of activities associated with the case.

IV.   ADMINISTRATION

**C. Case File Management**

5. When a case is cleared, a case file must be submitted by the lead investigator within ten days of clearance.

a. All pending evidence (e.g. GBI Lab exams, pending software extractions) will be documented in the investigator's report.

b. Upon receipt of such evidence, a supplemental report will be completed and added to the case file.


**Savannah Police Department Policy GO # OPS-033 Court Protocol**

II. ELECTRONIC NOTIFICATION/SUBPOENA

A. All employees shall honor all subpoenas or electronic notifications issued by courts requiring their appearance and production of records.

IV. PREPARATION FOR COURT

A. Officers shall contact the Assistant District Attorney by email immediately to confirm receipt of subpoenas.

B. Officers attending court will ensure that their case is properly prepared for presentation by possessing case files, reports, drug testing results, notes, and other evidentiary documentation. Investigators will sign out felony case files, including Habitual Violators Packets from the Department's case manager.

D. The primary officer or case investigator will be responsible for obtaining evidence from and returning it to the SPD property room.

V.     COURTROOM DEMEANOR AND RULES

H. Employees shall testify with accuracy and confine testimony to the case.


**Sergeant Nicole Khaalis**


**Savannah Police Department Policy GO # ADM-002 Organization and Direction**

IV. SUPERVISORY RESPONSIBILITY

A The responsibility of a supervisor is to account for employees under their supervision and to ensure that tasks are performed correctly and efficiently. A supervisor will be held responsible for issuing proper orders. To accomplish this responsibility, these orders must not be unlawful or in violation of Department rules and regulations or policies and procedures.


**Savannah Police Department Policy GO # OPS-001 Criminal Investigations**

IV.     ADMINISTRATION

## C. Case File Management

4. Case files for active cases shall be maintained by the lead investigator and reviewed every ten days by the investigator's supervisor, and will be accessible to other investigators and supervisors. [CALEA 42.1.3d]

## RECOMMENDATIONS:

**Allegation against Corporal Ashley Wood: Sustained**

**Allegation against Sergeant Nicole Khaalis: Sustained**

## Rationale:

On March 31, 2023, Sergeant Kaishawn Samuell from Savannah Police Department's Internal Affairs Unit met with members of the Chatham County District Attorney's Office in reference to concerns that they had regarding an investigation completed by Corporal Ashley Wood while she was assigned to the Homicide Unit of the Savannah Police Department. The concerns were in relation to the homicide investigation of Charles Vinson. During the course of the investigation completed by Corporal Ashley Wood under Savannah Police Department Case Number, 210502037 she also investigated an Aggravated Assault which she believed to be associated with the homicide which was investigated under Savannah Police Department Case Number 210501027.

During Sergeant Samuell's meeting, he learned that in the narrative of Corporal Wood's investigative report, she made note of an interview with Tyesha Love making statements to incriminate Javaris Roundtree in the associated aggravated assault investigation. The concern with this written statement is that it contradicts what is captured on the Body Worn Camera of Corporal Ashley Wood in her interaction with Tyesha Love.

There were several other concerns brought up to Sergeant Samuell which included search warrant returns not being completed, crucial evidence not being submitted to the GBI for examination. Corporal Ashley Wood not showing up for a court appearance in which she was properly subpoenaed and there is no mention of critical items in her investigative report.

Sergeant Samuell was able to review the Body Worn Camera interview that was being questioned. Sgt. Samuell noted that the narrative written by Corporal Wood had discrepancies from the video recording of her interview.

Corporal Ashley Wood was placed on Administrative Leave on March 31, 2023. When Corporal Wood was advised of the investigation, she was advised that she needed to have constant contact with members of the District Attorney's Office to correct several of the wrong/missing items. For the 2 following weeks, Corporal Wood submitted evidence to the GBI for review as well as made appointments with Superior Court Judges to have search warrant returns completed.

**Corporal Ashley Wood Interviews**

**Interview 1- Thursday, April 13, 2023, at approximately 1330 hours**
When Corporal Wood was brought into Internal Affairs for her first interview about this investigation she was shown a copy of her police report and was also allowed to watch her Body Worn Camera from her interview with Tyesha Love on May 2, 2021. During this interview, Corporal Wood stated that when she asked Love about the shooting and if "Scooter" shot her, Love's body language indicated to her that she saw "Scooter". Corporal Wood stated that later in the interview with Love she changed her story. Corporal Wood advised that she typed her investigative supplemental from memory without watching her Body Worn Camera. Corporal Wood was asked about swearing out warrants for Javaris Rountree and the timeline for when that occurred and she advised that she could not remember. When asked about not submitting a case file for the homicide of Charles Vinson she advised that she was transferred to the gang unit and forgot to submit a file. When asked about why search warrant returns had not been completed, Corporal Wood advised that it was common practice to not do a search warrant returns until it was almost time for discovery in the criminal proceeding. Corporal Wood advised that the Chatham County District Attorney's Office had a copy of the case file.

**Interview 2- Thursday, April 20, 2023, at approximately 1305 hours**

Corporal Ashley Wood was re-interviewed at the Internal Affairs Office. During this interview, Corporal Wood stated that it was approximately 1 month after the interview with Tyesha Love that she completed her report. Corporal Wood also stated that the probable cause for arresting Javaris Roundtree for the Aggravated Assault on Love was her body language telling her that Roundtree shot her, even though she did not see the person who shot her. Corporal Wood advised that when she wrote her report. She wrote it from memory and never reviewed her Body Worn Camera. Corporal Wood stated that she could not remember what she testified to while swearing out warrants to the superior court judge. Corporal Wood was asked if she told ADA Brian Deblasiis that Love told her Javaris Roundtree shot her. Corporal Wood could not remember. Corporal Wood also stated that she could not remember specifics about her probable cause for making the arrest in her investigation. When asked why she did not submit evidence to the GBI for examination or write supplemental reports with updated investigation results, Corporal Wood advised that she just forgot to do it. Corporal Wood was asked why she didn't try to interview 2 subjects whom she had arrest warrants for when they were picked up and she stated that she didn't think it was necessary and also because she was in the process of doing work on her back porch.

**Interview 3- Monday, May 8 20, 2023 at approximately 1400 hours**

Corporal Ashley Wood was interviewed for a 3rd time at the Internal Affairs Office. In this interview, the focus was on information that was brought to light during a news article claiming that Corporal Wood falsified warrants. Corporal Wood was asked about information that she documented in her report from surveillance footage from Wal-Mart. Corporal Wood stated that she did not remember if she saw the defendants on the surveillance footage because she observed it so long ago. After being shown her report where she documented that she observed the footage and knew the defendants were at Walmart, Corporal Wood stated that she could not remember and someone she interviewed could have told her. Corporal

Wood stated that she remembered seeing Aaliyah Duncan on the video and must have placed the other defendants there through interviews.

## Corporal Jacob Hilderbrand Interview- Friday, April 14, 2023, at approximately 1400 hours

Corporal Jacob Hilderbrand was brought into Internal Affairs where he was interviewed about this investigation. During his interview, Detective Hilderbrand stated that it was standard practice for search warrant returns not to be completed until it was time for discovery and that this was something that former SPD Sergeant Robert Santoro taught him so that defense attorneys would not have access to the warrants prior to the District Attorney's Office wanting them to have the information. Detective Hilderbrand said that it was never common practice to not submit evidence to the GBI. Detective Hilderbrand was allowed to watch the Body Worn Camera footage of Corporal Wood's interview with Tyesha Love and he was asked about that interview. Detective Hilderbrand stated that at the beginning of the interview, Love indicated that "Scooter" shot her by nodding her head up and down and that she was asked a second time to clarify and she nodded her head again. Detective Hilderbrand advised that Corporal Wood walked off prior to concluding the interview and he was not aware of anything else communicated.

## Sergeant Nicole Khaalis Interview- Monday, April 17, 2023, at approximately 1118 hours

Sergeant Nicole Khaalis was interviewed at Internal Affairs in reference to this investigation. Sgt. Khaalis advised that she was updated on active homicides on a case-by-case basis. When asked about when a case file should be submitted for review, Sgt. Khaalis advised that a case file should be turned in within 60 days of an arrest and that the District Attorney's Office wanted them in 90 days. Sgt. Khaalis stated that search warrant returns and crime lab results would typically not be in the case file because they would not be ready within 60-90 days, however, they would be added later. Sgt. Khaalis confirmed that she supervisor approved Corporal Wood's report. Sgt. Khaalis stated that she did not review the Body Worn Camera from the Tyesha Love interview prior to approving Corporal Wood's report and that based on what she saw after reviewing it, Javaris Roundtree should not have been charged. Sgt. Khaalis stated that evidence should have been submitted to the GBI (DNA Swabs and shell casings) and that in 2021, the Assistant District Attorney assigned to a homicide would typically send a list via e-mail in reference to items that an investigator would need to complete for the case. Sgt. Khaalis stated that search warrant returns not being turned in was something initiated by former SPD Sergeant Robert Santoro. Sgt. Khaalis stated that her chain of command didn't seem to have a problem with it so she didn't think it was a problem. Sgt. Khaalis stated that currently the search warrant returns are completed as soon as the requested information/items are provided to the detective. Sgt. Khaalis stated that there is an Excel spreadsheet on Onedirve that is used to track case file submissions and that she had communicated with Corporal Wood over the last 2 years about the case file for this incident, however, she could not remember if it was via e-mail or phone. Sgt. Khaalis then provided e-mail communications showing a mid-year work plan for Corporal Wood where she addressed expectations for the cases related to this incident.

## Lieutenant Zachary Burdette Interview- Thursday, April 20, 2023, at approximately 1003 hours

I went to Internal Affairs and was interviewed in reference to this investigation. During the interview, I advised that unit supervisors would not review Body Worn Camera footage of the investigation and that they would just read an investigative report. I then stated that after reviewing the Body Worn Camera

footage as compared to the investigative report written by Corporal Wood there was no probable cause for her to arrest Javaris Roundtree for the aggravated assault.

## **Additional Concerns Discovered**

On Friday, May 19, 2023, I was made aware by Sergeant Samuell of another issue brought to his attention from members of the district attorney's office regarding discrepancies in an interview and what Corporal Ashley Wood documented in her investigative supplemental. In this communicated concern, Corporal Wood was interviewing Antwane Snipe in reference to the homicide of Charles Vinson. Corporal Wood documented in her report that Snipe stated that Carlos Rountree, "Scooter" (Jarvis Roundtree), and Marquis Parrish all had firearms in their possession while in a vehicle together. However, in the recorded interview with Snipe, she informed Corporal Wood that Carlos Rountree and "Scooter" (Jarvis Roundtree) had firearms while in the vehicle. Snipe even described the firearms to Corporal Wood as a revolver was what Carlos had and a semi-automatic is what Jarvis had. Corporal Wood confirmed that information and Marquis Parrish was never mentioned as having a firearm in his possession. Another point of contention in this interview was that Corporal Wood documented in her report that Marquis Parrish contacted Snipe about extending a rental vehicle (The believed crime scene for the homicide). However, in the interview with Snipe, she states that Carlos Rountree is the person whom she had communicated with about the extension of the rental vehicle. The last point of contention in this portion of the complaint is that Corporal Wood documented in her report that Snipe stated that "Roundtree pushed her aside", however in the actual interview Snipe stated that she was told to "move out of the way" and there was no mention of any physical contact.

On Tuesday, May 23, 2023, I was notified via e-mail that there were more concerns found by members of the District Attorney's Office. The focus of this concern is discrepancies with Corporal Wood's report as it relates to an interview that was conducted with Marquis Parrish. In Corporal Wood's report she indicates that Marquis Parrish denied ever being in a rental vehicle (Crime Scene), however, in his recorded interview with investigators Marquis Parrish tells them that he rode in a red four-door car with "Scooter's brother". Marquis Parrish also stated that he drove "Scooter's Brother" to the airport where they picked up the red car which he describes as a rental car.

It should be noted that the concerns that were brought to the Savannah Police Department by members of the Chatham County District Attorney's Office impact this criminal case in many aspects. Not only are there discrepancies in Corporal Ashley Wood's report versus what is seen on video recordings of interviews, Corporal Wood swore out multiple search warrants in front of Recorder's Court and Superior Court Judges with untruthful information which progressed this investigation into arrest warrant being secured and 4 individuals arrested for the murder of Charles Vinson

In regards to Sergeant Nicole Khaalis, she was able to provide documentation that she initially requested for Corporal Ashley Wood to complete her report and submit a case file, there was never any additional follow-up to make sure these task were completed.

## **CORRECTIVE MEASURES:**

In reference to the administrative investigation above, I find Corporal Ashley Wood did violate the following Savannah Police Department Policies:

GO # ADM-004 Oath of Office, Ethics, and Conduct
GO # ADM-002 Organization and Direction
GO # ADM-018 Search and Seizure
GO # OPS-001 Criminal Investigations
GO # OPS-033 Court Protocol

Based on the gross violations of the policies outlined in this investigation I recommend termination for Corporal Ashley Wood. Due to her violations of the listed policies, Corporal Wood violated the trust of the Savannah Poilce Department, the Chatham County District Attorney's Office, and more than anything public trust.

I find that Sergeant Nicole Khaalis did violate the following Savannah Police Department Policies:

GO # ADM-002 Organization and Direction
GO # OPS-001 Criminal Investigations

Based on the violations outlined above I recommend a written reprimand for Sergeant Khaalis.

## ADMINISTRATIVE INSIGHT:
**Training Issues - None**
**Workplace Issues – None**
**Work / Complaint History – Corporal Ashley Wood- None**
**Sgt. Nicole Khaalis- February 2007- Missed Court, March 2007- Use of Force Reporting, July 2008- Missed Court, July 2015- AWOL, January 2020- Associating with Criminals**
**Demotion / Downgrade Considerations – N/A**
**Relief from Duty Considerations – N/A**

### Douglas Factors

1) __ZB__   The nature and seriousness of the offense, and its relation to the employee's duties, position and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated;
**Corporal Ashley Wood's actions were repeated several times throughout this investigation in terms of not reporting accurate information based on what was learned during recorded interviews. Corporal Wood claims that the offenses were inadvertent, however, it appears that they were intentional and committed for gain with the result being an arrest and case closure.**

   **Sergeant Nicole Khaalis' actions were technical and inadvertent.**

2) __ZB__   The employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public, and prominence of the position;

Corporal Ashley Wood has been employed with the Savannah Police Department since February 2017. Corporal Ashley Wood is currently assigned to the United States Bureau of Alcohol, Tobacco, and Firearms (ATF) as a Task Force Officer (TFO).

Sergeant Nicole Khaalis has been employed with the Savannah Police Department since April 2005. Sergeant Khaalis is currently assigned to the Criminal Investigation Division as a Unit Supervisor in Homicide.

3) ___ZB___ The employee's past disciplinary record;
Corporal Ashley Wood has no prior disciplinary record with the Savannah Police Department.

Sergeant Nicole Khaalis has the following disciplinary record with the Savannah Police Department:
1/14/20 –Associating with Criminals – Written Reprimand
7/17/15 – AWOL – Written Reprimand
7/8/08 – Missed Court – Written Reprimand
3/7/07 – Use of Force Reporting – Oral Reprimand
2/22/07 – Missed Court – Oral Reprimand

4) ___ZB___ The employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability
Corporal Ashley Wood has been employed by the Savannah Police Department for 6 years This incident will affect her ability to perform her duties with the department long term. This incident has brought forth trust concerns on many levels with other member of the police department and outside partners.

Sergeant Nicole Khaalis has been employed by the Savannah Police Department for 18 years. This incident is not going to affect her ability to perform her duties or her dependability.

5) ___ZB___ The effect of the offense on the employee's ability to perform at a satisfactory level and its effect on the supervisor's confidence in the employee's ability to perform assigned duties
This offense will cause Corporal Ashley Wood to not be able to perform at a satisfactory level and will also negatively impact her chain of command confidence in her ability to perform.

This offense will not hinder Sergeant Nicole Khaalis' ability to perform her assigned duties.

6) _ZB__ Consistency of the penalty with those imposed upon other employees for the same or similar offenses
The penalty for a sustained truthfulness allegation is termination. An employee who has a sustained truthfulness allegation becomes ineligible to testify in court amongst other tasks related to being employed as a police officer with the Savannah Police Department.

7) __ZB___ Consistency of the penalty with any applicable agency table of penalties;
The Savannah Police Department does not have a table of penalties.

8) __ZB__ The notoriety of the offense or its impact upon the reputation of the agency;
**This incident has already made local media outlets in regards to Corporal Ashley Wood's untruthfulness. Corporal Ashley Wood's actions are going to negatively impact the reputation of the Savannah Police Department as a whole.**

**Sergeant Nicole Khaalis' involvement will not impact the Savannah Police Department.**

9) __ZB__ The clarity with which the employee was on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question
**Corporal Ashley Wood should have been familiar with Savannah Police Department Policies on truthfulness and the way to conduct herself. Savannah Police Department Policies are always available for review by members of the department. Savannah Police Department makes it clear to all employees that violation of policy could result in discipline up to termination.**

**Sergeant Nicole Khaalis was not on notice or had been warned about her conduct of hers in question.**

10) __ZB__ Potential for the employee's rehabilitation;
**Corporal Ashley Wood's gross violations of multiple Savannah Police Department Policies have severely impacted her ability to perform her duties as she has violated the trust of her co-workers, members of the Chatham County District Attorney's Office, Judges in both the Chatham County Recorder's Court and Superior Court, and most of all public trust.**

**Sergeant Nicole Khaalis needs to continue to build new processes to maintain and hold members of the Savannah Police Department whom she directly supervises accountable for their work.**

11) __ZB__ Mitigating circumstances surrounding the offense such as unusual job tension, personality problems, mental impairment, harassment, or bad faith, malice, or provocation on the part of others involved in the matter;
**Although the work in the homicide unit is stressful and tough, Corporal Ashley Wood committed the violations of these policies alone as other members of the unit are always willing to lend a helping hand to make sure that cases are investigated properly and without any conflict.**

**There were no mitigating circumstances in this incident with Sergeant Nicole Khaalis.**

12) __ZB__ The adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others
**Complete understanding of Savannah Policy Department Policy. Almost every action that is completed by a member of the Savannah Police Department could negatively impact the agency. All members of the Savannah Police Department should be mindful of what we say, do in our actions and type our words to make sure that it is accurate and shows a positive side of the agency as a whole.**

I hereby certify that I have considered the twelve (12) Douglas Factors as indicated above (with my initial next to each factor) for possible mitigation of the penalty.

Page **11** of **14**

NAME _Zachary Burdette_____    DATE__5/24/2023_____

## CAPTAIN'S COMMENTS:

From Facts and Finding page- On page 5 of the report, Detective Wood documents an interview that she had with Ms. Tyesha Love in reference to an aggravated assault that Ms. Love was the victim of (CRN 210501027). This case was related to a homicide. Detective Wood indicated in her report that Ms. Love saw Javaris Roundtree shooting at her apartment.

Upon review of the BWC interview between Ms. Love and Detective Wood, "Ms. Love states **that she did not see who was shooting at her apartment, because she fell to the ground when she heard the shooting happening."**

Tyesha Love Interview, paragraph from the 3rd line in Detective Wood's homicide report states, *"She said that on Saturday morning she was in her bedroom cleaning up and was by the window when suddenly, she heard gunshots hitting her second floor- apartment. She glanced out of the second-floor window and saw Javaris Roundtree shooting towards her apartment. She then stated that a bullet came through her window striking her in the arm."*

Based on this false statement and the facts known at the time, there would not have been Probable Cause established to obtain an arrest warrant for Javaris Roundtree.

Additionally, Corporal Wood would have used this untruthful and inaccurate statement to obtain search warrants and give testimony to both Recorders Court and Superior Court Judges that ultimately led to the arrest of Javaris Roundtree for Murder.

These facts also establish that what Detective Wood wrote in her report is not true and cannot be explained.

In the report, Detective Wood does not articulate any observations she had regarding Tyesha Love and her body language.

I am unaware of any judge that would sign an arrest warrant based on body language alone.

In reference to Detective Wood's Supplemental Report, DA's Investigator Sammons and a Defense Attorney both observed inaccurate statements that are reflected in the report and can be contradicted by the interview recording.

*Antwane Snipe interview at 201 Habersham Street Savannah Police Headquarters' Savannah GA*

**Noted in Detective Wood's Report, "She said she noticed that Carlos had a gun on his lap as well as Javaris and Marquis both had guns in their laps as well."**

From DA's Investigator Sammon's email: In Wood's report, supplemental 19, page 5, Wood reflects this statement as 'She said she noticed Carlos had a gun on his lap as well as Javaris and Marquis both had guns in their laps as well.' This typed statement/narrative is inconsistent with Snipe's audio/video statement. Furthermore, this same typed narrative is also in most if not all search warrants completed by Wood in this case."

Another discrepancy that was noted in the report was, "The morning of April 26th, 2021, at about 0630 AM, Marquis was messaging Antwane Snipe asking her to extend the rental on the 2016 Toyota Camry and told her he didn't want another car and specifically asked to extend the 2016 Toyota Camry."

From DA's Investigator Sammons' email: "After listening to this interview, I agree with Mrs. Kelly that on 6 May 2021, Antwane Snipe does not say Marquis (Parrish) asked her in any way to extend the rental agreement. Snipe identifies Carlos Roundtree making this request. At this time, I do not know where Det Wood came up with the information identifying Marquis Parrish as making the statement, but it appears to be inaccurate. This statement, like the one about marquis Parrish being n possession of a firearm, is also reflected in most if not all the search warrants completed by Wood in this case."

Allegations for Corporal Ashley Wood Savannah Police Department Policies:
GO # OPS-033 Court Protocol (Superior Court) – **SUSTAINED**

**SIGNATURE**___Capt. Alex Tobar_____
**DATE**_____6/1/23_____

**MAJOR'S COMMENTS:**

**SIGNATURE**_____
**DATE**_____

**ASSISTANT CHIEF'S COMMENTS:**

**SIGNATURE**_____

**DATE** _____

**CHIEF'S COMMENTS:**

[ empty box ]

**SIGNATURE**_____
**DATE** _____



# LETTER OF TRANSMITTAL

**TO:**      **Lenny B. Gunther, Chief of Police**

**THRU:**   **Devonn Adams, Assistant Chief of Police**
             **Ben Herron, Police Major**
             **Alexander Tobar, Police Captain**

**FROM:**   **Zachary Burdette, Police Lieutenant**

**DATE:**   **May 24, 2023**

**SUBJ:**   **Letter of Transmittal for Administrative Investigation 23-0041**

---

## COMPLAINT:

An administrative investigation was initiated by the Savannah Police Departments Internal Affairs Unit in March 2023 in reference to a homicide and aggravated assault investigation which lead to a subsequent arrest by Corporal Ashley Wood (PR 62333).

This complaint stemmed from conflicting information in Corporal Wood's investigation and what was captured on her Body Worn Camera (BWC) and interview room cameras.

This complaint involves the following Savannah Police Department Policies:

GO # ADM-004 Oath of Office, Ethics, and Conduct
GO # ADM-002 Organization and Direction
GO # ADM-018 Search and Seizure
GO # OPS-001 Criminal Investigations
GO # OPS-033 Court Protocol

## ALLEGATION(S):

**Corporal Ashley Wood**

**Savannah Police Department Policy GO # ADM-004 Oath of Office, Ethics and Conduct**

**I.      General Standards of Conduct**

4. **Truthfulness/Honesty**: Employees shall not willfully, intentionally, or knowingly depart from the truth OR in any way be deceptive, provide misrepresentations, falsification, deliberately or intentionally

omit or misrepresent material facts when giving testimony, providing information (orally or in writing), or reporting in connection with any official duties. This includes the submission of fictitious or inaccurate reports or the falsification or misrepresentation of any facts or circumstances in official agency records. Upon the order of a superior, employees shall truthfully answer all questions specifically directed and narrowly related to the scope of employment and operations of the agency

III.    Professional Life Standards

**C. Knowledge of Laws and Rules** - SPD employees are required to establish and maintain a working knowledge of laws and ordinances enforced within the City of Savannah, the rules and policies of the SPD and the City of Savannah, and the orders of the SPD and Divisions thereof. In the event of improper action or breach of discipline, it will be presumed that the employee was familiar with the law, rule, or policy in question.

**Savannah Police Department Policy GO # ADM-002 Organization and Direction**

V.  Employee Responsibility
A.  To be managed effectively, personnel should understand their duties and responsibilities. Those duties are detailed in Job Descriptions located on the City of Savannah network. Each employee will be held accountable for their duties and responsibilities.
B.  It shall be the responsibility of each employee to obey all lawful orders directed to them from a supervisor. This will include any order relayed from a supervisor by an employee of the same or lesser rank. [CALEA 12.1.3]

**Savannah Police Department Policy GO # ADM- 018 Search and Seizures**

I.       Searches with a Warrant

3. Requirements for a Search Warrant Return

a. Must list everything seized.

b. Must be made in a timely manner. (No legal limit SPD policy time

limit of 5 days)

c. Must be sworn before a Judge of the same Court that issued the Warrant.

d. Must be made available the subject of warrant upon request.

**Savannah Police Department Policy GO # OPS-001 Criminal Investigations**

II. FOLLOW UP INVESTIGATIONS

B. When a case is assigned to an investigator for a follow-up, they will review the preliminary investigation report to determine if any leads or suspects exist. [CALEA 42.2.3a]. If so, the investigator will:

1. Read and become thoroughly familiar with the incident report.

4. Determine if there is any additional information via the originating officer or uniformed officers, informants, witnesses, and/or neighborhood interviews. [CALEA 42.2.3c]

10. Conduct the proper collection, preservation, and submission of evidence.

11. Examine physical evidence, review all statements and make a determination if there is sufficient evidence to charge a person with the crime.

14. Review all results from lab exams. [CALEA 42.2.3a]

20. Conduct background investigations on suspect(s) via criminal records checks, criminal history files, and other established sources. [CALEA 42.2.3g]

23. If necessary, use a search warrant, or in approved instances, the consent to search form to legally recover items of evidentiary value or stolen property. [CALEA 42.2.3d]

24. Indicate the disposition and status of any property or evidence in SPD custody in a supplemental report.

28. Organize, in an orderly fashion, all notes, evidence, photographs, supplements, and lab findings for court presentation, and make the prosecutor aware of all pertinent facts of the case and of the criminal history background of the defendant. [CALEA 42.2.3h]

29. Complete a detailed investigative report documenting all activities including a timeline of activities associated with the case.

IV.    ADMINISTRATION

**C. Case File Management**

5. When a case is cleared, a case file must be submitted by the lead investigator within ten days of clearance.
a. All pending evidence (e.g. GBI Lab exams, pending software extractions) will be documented in the investigator's report.
b. Upon receipt of such evidence, a supplemental report will be completed and added to the case file.


**Savannah Police Department Policy GO # OPS-033 Court Protocol**

II. ELECTRONIC NOTIFICATION/SUBPOENA

A. All employees shall honor all subpoenas or electronic notifications issued by courts requiring their appearance and production of records.

IV. PREPARATION FOR COURT

A. Officers shall contact the Assistant District Attorney by email immediately to confirm receipt of subpoenas.

B. Officers attending court will ensure that their case is properly prepared for presentation by possessing case files, reports, drug testing results, notes, and other evidentiary documentation. Investigators will sign out felony case files, including Habitual Violators Packets from the Department's case manager.

D.  The primary officer or case investigator will be responsible for obtaining evidence from and returning it to the SPD property room.

V.      COURTROOM DEMEANOR AND RULES

H. Employees shall testify with accuracy and confine testimony to the case.


**Sergeant Nicole Khaalis**


**Savannah Police Department Policy GO # ADM-002 Organization and Direction**

IV.  SUPERVISORY RESPONSIBILITY

A The responsibility of a supervisor is to account for employees under their supervision and to ensure that tasks are performed correctly and efficiently. A supervisor will be held responsible for issuing proper orders. To accomplish this responsibility, these orders must not be unlawful or in violation of Department rules and regulations or policies and procedures.

**Savannah Police Department Policy GO # OPS-001 Criminal Investigations**

IV.    ADMINISTRATION

   **C. Case File Management**

4. Case files for active cases shall be maintained by the lead investigator and reviewed every ten days by the investigator's supervisor, and will be accessible to other investigators and supervisors. [CALEA 42.1.3d]

# RECOMMENDATIONS:

**Allegation against Corporal Ashley Wood: Sustained**

**Allegation against Sergeant Nicole Khaalis: Sustained**

# Rationale:

On March 31, 2023, Sergeant Kaishawn Samuell from Savannah Police Department's Internal Affairs Unit met with members of the Chatham County District Attorney's Office in reference to concerns that they had regarding an investigation completed by Corporal Ashley Wood while she was assigned to the Homicide Unit of the Savannah Police Department. The concerns were in relation to the homicide investigation of Charles Vinson. During the course of the investigation completed by Corporal Ashley Wood under Savannah Police Department Case Number, 210502037 she also investigated an Aggravated Assault which she believed to be associated with the homicide which was investigated under Savannah Police Department Case Number 210501027.

During Sergeant Samuell's meeting, he learned that in the narrative of Corporal Wood's investigative report, she made note of an interview with Tyesha Love making statements to incriminate Javaris Roundtree in the associated aggravated assault investigation. The concern with this written statement is that it contradicts what is captured on the Body Worn Camera of Corporal Ashley Wood in her interaction with Tyesha Love.

There were several other concerns brought up to Sergeant Samuell which included search warrant returns not being completed, crucial evidence not being submitted to the GBI for examination, Corporal Ashley Wood not showing up for a court appearance in which she was properly subpoenaed and there is no mention of critical items in her investigative report.

Sergeant Samuell was able to review the Body Worn Camera interview that was being questioned. Sgt. Samuell noted that the narrative written by Corporal Wood had discrepancies from the video recording of her interview.

Page **5** of **15**

Corporal Ashley Wood was placed on Administrative Leave on March 31, 2023. When Corporal Wood was advised of the investigation, she was advised that she needed to have constant contact with members of the District Attorney's Office to correct several of the wrong/missing items. For the 2 following weeks, Corporal Wood submitted evidence to the GBI for review as well as made appointments with Superior Court Judges to have search warrant returns completed.

## Corporal Ashley Wood Interviews

### Interview 1- Thursday, April 13, 2023, at approximately 1330 hours

When Corporal Wood was brought into Internal Affairs for her first interview about this investigation she was shown a copy of her police report and was also allowed to watch her Body Worn Camera from her interview with Tyesha Love on May 2, 2021. During this interview, Corporal Wood stated that when she asked Love about the shooting and if "Scooter" shot her, Love's body language indicated to her that she saw "Scooter". Corporal Wood stated that later in the interview with Love she changed her story. Corporal Wood advised that she typed her investigative supplemental from memory without watching her Body Worn Camera. Corporal Wood was asked about swearing out warrants for Javaris Rountree and the timeline for when that occurred and she advised that she could not remember. When asked about not submitting a case file for the homicide of Charles Vinson she advised that she was transferred to the gang unit and forgot to submit a file. When asked about why search warrant returns had not been completed, Corporal Wood advised that it was common practice to not do a search warrant returns until it was almost time for discovery in the criminal proceeding. Corporal Wood advised that the Chatham County District Attorney's Office had a copy of the case file.

### Interview 2- Thursday, April 20, 2023, at approximately 1305 hours

Corporal Ashley Wood was re-interviewed at the Internal Affairs Office. During this interview, Corporal Wood stated that it was approximately 1 month after the interview with Tyesha Love that she completed her report. Corporal Wood also stated that the probable cause for arresting Javaris Roundtree for the Aggravated Assault on Love was her body language telling her that Roundtree shot her, even though she did not see the person who shot her. Corporal Wood advised that when she wrote her report. She wrote it from memory and never reviewed her Body Worn Camera. Corporal Wood stated that she could not remember what she testified to while swearing out warrants to the superior court judge. Corporal Wood was asked if she told ADA Brian Deblasiis that Love told her Javaris Roundtree shot her. Corporal Wood could not remember. Corporal Wood also stated that she could not remember specifics about her probable cause for making the arrest in her investigation. When asked why she did not submit evidence to the GBI for examination or write supplemental reports with updated investigation results, Corporal Wood advised that she just forgot to do it. Corporal Wood was asked why she didn't try to interview 2 subjects whom she had arrest warrants for when they were picked up and she stated that she didn't think it was necessary and also because she was in the process of doing work on her back porch.

**Interview 3- Monday, May 8 20, 2023 at approximately 1400 hours**

Corporal Ashley Wood was interviewed for a 3rd time at the Internal Affairs Office. In this interview, the focus was on information that was brought to light during a news article claiming that Corporal Wood falsified warrants. Corporal Wood was asked about information that she documented in her report from surveillance footage from Wal-Mart. Corporal Wood stated that she did not remember if she saw the defendants on the surveillance footage because she observed it so long ago. After being shown her report where she documented that she observed the footage and knew the defendants were at Walmart, Corporal Wood stated that she could not remember and someone she interviewed could have told her. Corporal Wood stated that she remembered seeing Aaliyah Duncan on the video and must have placed the other defendants there through interviews.

**Corporal Jacob Hilderbrand Interview- Friday, April 14, 2023, at approximately 1400 hours**

Corporal Jacob Hilderbrand was brought into Internal Affairs where he was interviewed about this investigation. During his interview, Detective Hilderbrand stated that it was standard practice for search warrant returns not to be completed until it was time for discovery and that this was something that former SPD Sergeant Robert Santoro taught him so that defense attorneys would not have access to the warrants prior to the District Attorney's Office wanting them to have the information. Detective Hilderbrand said that it was never common practice to not submit evidence to the GBI. Detective Hilderbrand was allowed to watch the Body Worn Camera footage of Corporal Wood's interview with Tyesha Love and he was asked about that interview. Detective Hilderbrand stated that at the beginning of the interview, Love indicated that "Scooter" shot her by nodding her head up and down and that she was asked a second time to clarify and she nodded her head again. Detective Hilderbrand advised that Corporal Wood walked off prior to concluding the interview and he was not aware of anything else communicated.

**Sergeant Nicole Khaalis Interview- Monday, April 17, 2023, at approximately 1118 hours**

Sergeant Nicole Khaalis was interviewed at Internal Affairs in reference to this investigation. Sgt. Khaalis advised that she was updated on active homicides on a case-by-case basis. When asked about when a case file should be submitted for review, Sgt. Khaalis advised that a case file should be turned in within 60 days of an arrest and that the District Attorney's Office wanted them in 90 days. Sgt. Khaalis stated that search warrant returns and crime lab results would typically not be in the case file because they would not be ready within 60-90 days, however, they would be added later. Sgt. Khaalis confirmed that she supervisor approved Corporal Wood's report. Sgt. Khaalis stated that she did not review the Body Worn Camera from the Tyesha Love interview prior to approving Corporal Wood's report and that based on what she saw after reviewing it, Javaris Roundtree should not have been charged. Sgt. Khaalis stated that evidence should have been submitted to the GBI (DNA Swabs and shell casings) and that in 2021, the Assistant District Attorney assigned to a homicide would typically send a list via e-mail in reference to items that an investigator would need to complete for the case. Sgt. Khaalis stated that search warrant returns not being turned in was something initiated by former SPD Sergeant Robert Santoro. Sgt. Khaalis stated that her chain of command didn't seem to have a problem with it so she didn't think it was a problem. Sgt. Khaalis stated that currently the search warrant returns are completed as soon as the requested information/items are provided to the detective. Sgt. Khaalis stated that there is an Excel spreadsheet on Onedirve that is used to track case file submissions and that she had

communicated with Corporal Wood over the last 2 years about the case file for this incident, however, she could not remember if it was via e-mail or phone. Sgt. Khaalis then provided e-mail communications showing a mid-year work plan for Corporal Wood where she addressed expectations for the cases related to this incident.

**Lieutenant Zachary Burdette Interview- Thursday, April 20, 2023, at approximately 1003 hours**
I went to Internal Affairs and was interviewed in reference to this investigation. During the interview, I advised that unit supervisors would not review Body Worn Camera footage of the investigation and that they would just read an investigative report. I then stated that after reviewing the Body Worn Camera footage as compared to the investigative report written by Corporal Wood there was no probable cause for her to arrest Javaris Roundtree for the aggravated assault.

**Additional Concerns Discovered**

On Friday, May 19, 2023, I was made aware by Sergeant Samuell of another issue brought to his attention from members of the district attorney's office regarding discrepancies in an interview and what Corporal Ashley Wood documented in her investigative supplemental. In this communicated concern, Corporal Wood was interviewing Antwane Snipe in reference to the homicide of Charles Vinson. Corporal Wood documented in her report that Snipe stated that Carlos Rountree, "Scooter" (Jarvis Roundtree), and Marquis Parrish all had firearms in their possession while in a vehicle together. However, in the recorded interview with Snipe, she informed Corporal Wood that Carlos Rountree and "Scooter" (Jarvis Rountree) had firearms while in the vehicle. Snipe even described the firearms to Corporal Wood as a revolver was what Carlos had and a semi-automatic is what Jarvis had. Corporal Wood confirmed that information and Marquis Parrish was never mentioned as having a firearm in his possession. Another point of contention in this interview was that Corporal Wood documented in her report that Marquis Parrish contacted Snipe about extending a rental vehicle (The believed crime scene for the homicide). However, in the interview with Snipe, she states that Carlos Rountree is the person whom she had communicated with about the extension of the rental vehicle. The last point of contention in this portion of the complaint is that Corporal Wood documented in her report that Snipe stated that "Roundtree pushed her aside", however in the actual interview Snipe stated that she was told to "move out of the way" and there was no mention of any physical contact.

On Tuesday, May 23, 2023, I was notified via e-mail that there were more concerns found by members of the District Attorney's Office. The focus of this concern is discrepancies with Corporal Wood's report as it relates to an interview that was conducted with Marquis Parrish. In Corporal Wood's report she indicates that Marquis Parrish denied ever being in a rental vehicle (Crime Scene), however, in his recorded interview with investigators Marquis Parrish tells them that he rode in a red four-door car with "Scooter's brother". Marquis Parrish also stated that he drove "Scooter's Brother" to the airport where they picked up the red car which he describes as a rental car.

It should be noted that the concerns that were brought to the Savannah Police Department by members of the Chatham County District Attorney's Office impact this criminal case in many aspects. Not only are there discrepancies in Corporal Ashley Wood's report versus what is seen on video recordings of

interviews, Corporal Wood swore out multiple search warrants in front of Recorder's Court and Superior Court Judges with untruthful information which progressed this investigation into arrest warrant being secured and 4 individuals arrested for the murder of Charles Vinson

In regards to Sergeant Nicole Khaalis, she was able to provide documentation that she initially requested for Corporal Ashley Wood to complete her report and submit a case file, there was never any additional follow-up to make sure these task were completed.

## CORRECTIVE MEASURES:

In reference to the administrative investigation above, I find Corporal Ashley Wood did violate the following Savannah Police Department Policies:

GO # ADM-004 Oath of Office, Ethics, and Conduct
GO # ADM-002 Organization and Direction
GO # ADM-018 Search and Seizure
GO # OPS-001 Criminal Investigations
GO # OPS-033 Court Protocol

Based on the gross violations of the policies outlined in this investigation I recommend termination for Corporal Ashley Wood. Due to her violations of the listed policies, Corporal Wood violated the trust of the Savannah Poilce Department, the Chatham County District Attorney's Office, and more than anything public trust.

I find that Sergeant Nicole Khaalis did violate the following Savannah Police Department Policies:

GO # ADM-002 Organization and Direction
GO # OPS-001 Criminal Investigations

Based on the violations outlined above I recommend a written reprimand for Sergeant Khaalis.

## ADMINISTRATIVE INSIGHT:
**Training Issues - None**
**Workplace Issues – None**
**Work / Complaint History – Corporal Ashley Wood- None**
**Sgt. Nicole Khaalis- February 2007- Missed Court, March 2007- Use of Force Reporting, July 2008- Missed Court, July 2015- AWOL, January 2020- Associating with Criminals**
**Demotion / Downgrade Considerations – N/A**
**Relief from Duty Considerations – N/A**

## Douglas Factors

1)  __ZB__   The nature and seriousness of the offense, and its relation to the employee's duties, position and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated;
**Corporal Ashley Wood's actions were repeated several times throughout this investigation in terms of not reporting accurate information based on what was learned during recorded interviews. Corporal Wood claims that the offenses were inadvertent, however, it appears that they were intentional and committed for gain with the result being an arrest and case closure.**

**Sergeant Nicole Khaalis' actions were technical and inadvertent.**

2)  __ZB__   The employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public, and prominence of the position;
**Corporal Ashley Wood has been employed with the Savannah Police Department since February 2017. Corporal Ashley Wood is currently assigned to the United States Bureau of Alcohol, Tobacco, and Firearms (ATF) as a Task Force Officer (TFO).**

**Sergeant Nicole Khaalis has been employed with the Savannah Police Department since April 2005. Sergeant Khaalis is currently assigned to the Criminal Investigation Division as a Unit Supervisor in Homicide.**

3)  __ZB__   The employee's past disciplinary record;
**Corporal Ashley Wood has no prior disciplinary record with the Savannah Police Department.**

**Sergeant Nicole Khaalis has the following disciplinary record with the Savannah Police Department:**
**1/14/20 – Associating with Criminals – Written Reprimand**
**7/17/15 – AWOL – Written Reprimand**
**7/8/08 – Missed Court – Written Reprimand**
**3/7/07 – Use of Force Reporting – Oral Reprimand**
**2/22/07 – Missed Court – Oral Reprimand**

4)  __ZB__   The employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability
**Corporal Ashley Wood has been employed by the Savannah Police Department for 6 years This incident will affect her ability to perform her duties with the department long term. This incident has brought forth trust concerns on many levels with other member of the police department and outside partners.**

**Sergeant Nicole Khaalis has been employed by the Savannah Police Department for 18 years. This incident is not going to affect her ability to perform her duties or her dependability.**

5)  __ZB__   The effect of the offense on the employee's ability to perform at a satisfactory level and its effect on the supervisor's confidence in the employee's ability to perform assigned duties

**This offense will cause Corporal Ashley Wood to not be able to perform at a satisfactory level and will also negatively impact her chain of command confidence in her ability to perform.**

**This offense will not hinder Sergeant Nicole Khaalis' ability to perform her assigned duties.**

6) _ZB__ Consistency of the penalty with those imposed upon other employees for the same or similar offenses
**The penalty for a sustained truthfulness allegation is termination. An employee who has a sustained truthfulness allegation becomes ineligible to testify in court amongst other tasks related to being employed as a police officer with the Savannah Police Department.**

7) __ZB___ Consistency of the penalty with any applicable agency table of penalties;
**The Savannah Police Department does not have a table of penalties.**

8) __ZB___ The notoriety of the offense or its impact upon the reputation of the agency;
**This incident has already made local media outlets in regards to Corporal Ashley Wood's untruthfulness. Corporal Ashley Wood's actions are going to negatively impact the reputation of the Savannah Police Department as a whole.**

**Sergeant Nicole Khaalis' involvement will not impact the Savannah Police Department.**

9) __ZB___ The clarity with which the employee was on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question
**Corporal Ashley Wood should have been familiar with Savannah Police Department Policies on truthfulness and the way to conduct herself. Savannah Police Department Policies are always available for review by members of the department. Savannah Police Department makes it clear to all employees that violation of policy could result in discipline up to termination.**

**Sergeant Nicole Khaalis was not on notice or had been warned about her conduct of hers in question.**

10) _ZB____ Potential for the employee's rehabilitation;
**Corporal Ashley Wood's gross violations of multiple Savannah Police Department Policies have severely impacted her ability to perform her duties as she has violated the trust of her co-workers, members of the Chatham County District Attorney's Office, Judges in both the Chatham County Recorder's Court and Superior Court, and most of all public trust.**

**Sergeant Nicole Khaalis needs to continue to build new processes to maintain and hold members of the Savannah Police Department whom she directly supervises accountable for their work.**

11) _ZB____ Mitigating circumstances surrounding the offense such as unusual job tension, personality problems, mental impairment, harassment, or bad faith, malice, or provocation on the part of others involved in the matter;

**Although the work in the homicide unit is stressful and tough, Corporal Ashley Wood committed the violations of these policies alone as other members of the unit are always willing to lend a helping hand to make sure that cases are investigated properly and without any conflict.**

**There were no mitigating circumstances in this incident with Sergeant Nicole Khaalis.**

12) _ZB___    The adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others
**Complete understanding of Savannah Policy Department Policy. Almost every action that is completed by a member of the Savannah Police Department could negatively impact the agency. All members of the Savannah Police Department should be mindful of what we say, do in our actions and type our words to make sure that it is accurate and shows a positive side of the agency as a whole.**

I hereby certify that I have considered the twelve (12) Douglas Factors as indicated above (with my initial next to each factor) for possible mitigation of the penalty.

**NAME** _Zachary Burdette_____    **DATE__5/24/2023_____**

## CAPTAIN'S COMMENTS:

From Facts and Finding page- On page 5 of the report, Detective Wood documents an interview that she had with Ms. Tyesha Love in reference to an aggravated assault that Ms. Love was the victim of (CRN 210501027). This case was related to a homicide. Detective Wood indicated in her report that Ms. Love saw Javaris Roundtree shooting at her apartment.
Upon review of the BWC interview between Ms. Love and Detective Wood, "Ms. Love states **that she did not see who was shooting at her apartment, because she fell to the ground when she heard the shooting happening."**
Tyesha Love Interview, paragraph from the 3rd line in Detective Wood's homicide report states, ***"She said that on Saturday morning she was in her bedroom cleaning up and was by the window when suddenly, she heard gunshots hitting her second floor- apartment. She glanced out of the second-floor window and saw Javaris Roundtree shooting towards her apartment. She then stated that a bullet came through her window striking her in the arm."***
Based on this false statement and the facts known at the time, there would not have been Probable Cause established to obtain an arrest warrant for Javaris Roundtree.
Additionally, Corporal Wood would have used this untruthful and inaccurate statement to obtain search warrants and give testimony to both Recorders Court and Superior Court Judges that ultimately led to the arrest of Javaris Roundtree for Murder.
These facts also establish that what Detective Wood wrote in her report is not true and cannot be explained.
In the report, Detective Wood does not articulate any observations she had regarding Tyesha Love and her body language.
I am unaware of any judge that would sign an arrest warrant based on body language alone.
In reference to Detective Wood's Supplemental Report, DA's Investigator Sammons and a Defense Attorney both observed inaccurate statements that are reflected in the report and can be contradicted by the interview recording.
*Antwane Snipe interview at 201 Habersham Street Savannah Police Headquarters', Savannah GA.*

**Noted in Detective Wood's Report, "She said she noticed that Carlos had a gun on his lap as well as Javaris and Marquis both had guns in their laps as well."**
From DA's Investigator Sammon's email: In Wood's report, supplemental 19, page 5, Wood reflects this statement as 'She said she noticed Carlos had a gun on his lap as well as Javaris and Marquis both had guns in their laps as well.' This typed statement/narrative is inconsistent with Snipe's audio/video statement. Furthermore, this same typed narrative is also in most if not all search warrants completed by Wood in this case."

Another discrepancy that was noted in the report was, "The morning of April 26th, 2021, at about 0630 AM, Marquis was messaging Antwane Snipe asking her to extend the rental on the 2016 Toyota Camry and told her he didn't want another car and specifically asked to extend the 2016 Toyota Camry."

From DA's Investigator Sammons' email: "After listening to this interview, I agree with Mrs. Kelly that on 6 May 2021, Antwane Snipe does not say Marquis (Parrish) asked her in any way to extend the rental agreement. Snipe identifies Carlos Roundtree making this request. At this time, I do not know where Det Wood came up with the information identifying Marquis Parrish as making the statement, but it appears to be inaccurate. This statement, like the one about marquis Parrish being n possession of a firearm, is also reflected in most if not all the search warrants completed by Wood in this case."

Allegations for Corporal Ashley Wood Savannah Police Department Policies:
GO # OPS-033 Court Protocol (Superior Court) **– SUSTAINED**

OPS-033 Court Protocol (Courtroom Demeanor and Rules) - **SUSTAINED**

GO # ADM-004 Oath of Office, Ethics, and Conduct (Truthfulness/Honesty)- **SUSTAINED**
*(This allegation is sustained for both the Untruthfulness in the Tyesha Love Interview narrative as well as for the two untruthful/inaccurate statements written in the Antwane Snipe interview narrative).*

GO # ADM-002 Organization and Direction (Employee Responsibility)- **SUSTAINED**

ADM-004 Oath of Office, Ethics, and Conduct (Knowledge of Laws and Rules) - **SUSTAINED**

GO # OPS-001 Criminal Investigations (Case File Management)- **SUSTAINED**

GO # OPS-033 Court Protocol (Preparation for Court)- **SUSTAINED**

OPS-001 Criminal Investigations (Follow-Up Investigations)- **SUSTAINED**

I believe that Termination is appropriate for the Sustained violations of these Savannah Police Department Policies by Detective Wood.

Allegations for Sergeant Nicole Khaalis Savannah Police Department Policies:

GO # OPS-001 Criminal Investigations (Case File Management)- **SUSTAINED**

GO # ADM-002 Organization and Direction (Supervisor Responsibility)- **SUSTAINED**

I believe that a written reprimand is appropriate for the violations of these Savannah Police Department policies by Sergeant Khaalis.

**SIGNATURE**   <u>Capt. Alex Tobar                                   </u>
**DATE**             <u>6/1/23                                          </u>

**MAJOR'S COMMENTS:**

I concur with the recommendations of the Captain and Lieutenant in the case. The findings, as it relates to Det. Woods, clearly shows a flaw in ethics and general performance. As for Sgt. Khaalis, she failed to stay on top of the administrative review of this case to ensure submissions and follow up reports were done in a timely manner. This case revealed some administrative practice that needed to be revisited on warrant returns and the review of BWC footage when reviewing reports.

**SIGNATURE** *Major Ben Herron*                 
**DATE**             <u>6/6/23                </u>

**ASSISTANT CHIEF'S COMMENTS:**

**SIGNATURE**<u>                                        </u>
**DATE**             <u>                                   </u>

**CHIEF'S COMMENTS:**

**SIGNATURE**<u>                                        </u>
**DATE**             <u>                                   </u>

# SAVANNAH POLICE

To Serve, Protect and Build Trust

SavannahPD.org 

**Memorandum**

| | |
|---|---|
| **TO:** | File Memorandum |
| **THRU:** | |
| **FROM:** | Devonn Adams, Assistant Chief of Police |
| **DATE:** | June 14th, 2023 |
| **SUBJECT:** | Notice of Final Discipline and Findings/ **OPS# 23-0041** |

On June 6th, 2023, an Internal Affairs Unit file was forwarded to me concerning an investigation of alleged misconduct by Corporal Ashley Wood. I reviewed this investigation and have determined that the following allegation(s) are **SUSTAINED**.

| | |
|---|---|
| ADM-004 | Truthfulness / Honesty |
| ADM-004 | Knowledge of Rules and Laws |
| ADM-018 | Searches with a Warrant |
| ADM-002 | Employee Responsibility |
| OPS-001 | Follow-up Investigations |
| OPS-001 | Case File Management |
| OPS-033 | Preparation for Court |
| OPS-033 | Courtroom Demeanor and Rules |
| OPS-033 | Superior Court |

## DISCIPLINARY ACTION

Based on my review of this investigation and recommendations from supervisors, I have concluded that **termination** is appropriate for this matter.



| | |
|---|---|
| **ADMINISTRATIVE INVESTIGATION** _Incident Report_ | |
| OPS NUMBER: | **23-0041** |
| EMPLOYEE: | **Corporal Ashley Wood** |
| DATE: | **December 23rd, 2022** |
| INVESTIGATOR: | **Sergeant Kaishawn Samuell** |

The purpose of this investigative narrative is to document an investigation into CPL Wood's (PR # 62333) investigation of an Aggravated Assault and a Homicide in which reports and BWC footage were conflicting.

**Friday, March 31st, 2023:**

I met with Assistant District Attorney DeBlasiis and Investigator Sammons, who is also with the District Attorney's Office. During the meeting, I was shown a homicide report submitted by Detective Wood (CRN 210502037). On page 5 of the report, Detective Wood documents an interview that she had with Ms. Tyesha Love in reference to an aggravated assault that she was the victim of (CRN 210501027), which was related to the homicide.

Detective Wood documented the following in her ARS narrative: _Tyesha Love explained to me that Friday night, Marquis and Javaris got into a verbal argument and asked Javaris to leave. Tyesha Love stated that Javaris grabbed his gun and left the apartment. She said that on Saturday morning she was in her bedroom cleaning up and was by the window when suddenly, she heard gun shots hitting her second-floor apartment._ **_She glanced out the 2nd floor window and saw Javaris Roundtree shooting towards her apartment._** _She then stated, a bullet came through her window striking her in the arm._

I then reviewed the BWC footage of CPL Wood and Detective Hilderbrand interviewing Ms. Love. During the interview Detective Hilderbrand asks Ms. Love if she knows who shot her (11:35). Ms. Love gives a sigh and is led away from bystanders by Detective Wood and Detective Hilderbrand. Detective Wood tells Ms. Love that all she needs to do is give her a nickname. Ms. Love appears to be hesitant when she is asked the question. Detective Wood then asks Ms. Love if "Scooter" (Javaris Roundtree) shot her, and Ms. Love gives a slight head nod.

Detective Wood then walks Ms. Love further away from bystanders and Detective Hilderbrand is not present. Ms. Love stated that the day she got shot, she was in her room near the window and heard gunshots (16:34). She stated that when she got shot, she hit the ground. Detective Wood



asked Ms. Love if she looked out the window when she got shot, to which she replied that she just hit the ground after she was shot. Detective Wood then asked Ms. Love if she saw anybody walking up before the gunshots. Ms. Love replied no again.

Investigator Sammons then explained how Detective Wood had not yet submitted crucial evidence to the GBI in reference to the homicide. He also stated that Detective Wood had not completed search warrant returns in reference to the homicide investigation.

Investigator Sammons also mentioned that CPL Wood did not go to court after being subpoenaed on March 22nd, 2023. He stated that he was told that CPL Wood advised that she would not be attending court due to a "work related operation".

There is no mention of search warrants, search warrant returns, or evidence submission in Detective Wood's investigative reports in reference to the aggravated assault or the homicide in ARS.

Corporal Wood was placed on administrative leave on this date as well. CPL Wood was advised of the investigation. She was advised that she needed to communicate with Investigator Sammons and to see what the District Attorney's office needed for the upcoming trial for this case.

In the 2 weeks following being placed on administrative leave, Corporal Wood submitted evidence for this case to the GBI and got appointments with Superior Court Judges to get search warrant returns for this case completed.

### Thursday, April 13th, 2023 at approximately 1330 hours:

Corporal Wood came to the IA Office and a formal interview was conducted. Prior to the interview, Corporal Wood was given a copy of her report for CRN 210502037. She was also allowed to watch BWC footage of her interview with Tyesha Love. Corporal Wood was then read Garrity and the notification of general order # OPS-016. She signed both forms and stated she understood them. The interview was audio recorded and added to the case file for this investigation. The following is a summary of the interview. Corporal Wood was advised that the purpose of the investigation was to figure out why there were discrepancies in her report when compared with the BWC footage. Corporal Wood confirmed that she read the report she placed in ARS under CRN 210502037, specifically where it says that Ms. Love identified Javaris Roundtree as the person who shot her because she saw him shooting at her. She was then asked why the ARS reports says that Ms. Love saw who shot her, but in the BWC footage, Ms. Love states to Corporal Wood that when the shooting started, she got down on the floor and did not see who was shooting. Corporal Wood is then shown again, the footage from the BWC where Ms. Love stated she did not see who shot her.



Corporal Wood was asked why there was a discrepancy in the report and the BWC footage. She responded by saying that when she asked Ms. Love if "Scooter" shot her, Ms. Love's body language told her that "Scooter" did shoot her. She stated that she believed Ms. Love did not verbalize that "Scooter" shot her because "Scooter's" baby mama was 10 feet away. Corporal Wood stated that Ms. Love's body language indicated to her that Ms. Love saw "Scooter" shoot her. Corporal Wood then stated that later in the interview, Ms. Love changed her story. She stated that when she typed her Detective supplemental report, she typed it from memory without watching the BWC footage. When asked how long after the incident did she swear out warrants on Javaris Roundtree, she stated that she did not remember. When asked if she swore the warrants out via Cloud Gavel or if she went to see a Judge in person, she replied by saying she did not remember. When asked who her supervisors were at the time of this incident, Corporal Wood stated that Sergeant Khaalis and Lieutenant Burdette were the supervisors of the unit at that time. When asked why a case file was not submitted for the homicide and aggravated assault investigations, Corporal Wood responded by saying that she had been transferred to the Gang Unit and forgot to submit the case file.

*(This incident occurred in May of 2021 and Corporal Wood was transferred to the gang unit in October of 2021)*

Corporal Wood was then asked why search warrant returns were just getting done if the incident happened 2 years ago. She replied by saying that she was trained to hold off on doing search warrant returns until the case was about to go to trial and just before the defense attorney filed for discovery. She stated that was standard practice for the homicide unit at that time. She then stated that the District Attorney's Office had a copy of the case file for this incident.

**Friday, April 14th, 2023, at approximately 1000 hours:**

Corporal Hilderbrand came to the IA Office and a formal interview was conducted. Corporal Hilderbrand was then read Garrity. He signed the form and stated he understood it. The interview was audio recorded and added to the case file for this investigation. The following is a summary of the interview. When asked if he recalled the incident at 10714 Abercorn Street in 2021, Corporal Hilderbrand stated that he did not remember details about the case off the top of his head. He was then shown BWC footage of his and Corporal Wood's interview with Ms. Love. After reviewing the BWC footage, Corporal Hilderbrand was asked if he was present during any time that Ms. Love verbalized who shot her. He responded by saying that he did not recall and requested to view the entire BWC footage from the interview with Ms. Love. He was then asked about when he first started in the homicide unit, if he was trained not to turn in search warrants and evidence until right before discovery from the defense. He replied by saying that the standing practice for the unit when he started there was not to turn in search warrant returns to the courts until right before discovery, so that the defense could not have access to them before the District Attorney's office wanted the defense to have them. Corporal Hilderbrand stated that the practice of doing this was initiated when former SPD Sergeant Santoro was supervising the

3



unit. Corporal Hilderbrand stated that it was never standard practice to not submit evidence immediately to be tested by GBI.

Corporal Hilderbrand then was allowed the entire BWC footage for this incident. He confirmed that in the beginning of the interview, when Ms. Love was asked if "Scooter" was the person who shot her, she put her head down and nodded to indicate yes. Corporal Hilderbrand stated that when he asked Ms. Love it nodding her head meant yes, she nodding her head again. Corporal Hilderbrand also confirmed that Corporal Wood walked away with Ms. Love to complete the interview and he did not know what was said during that portion because he was standing by with "Scooter's" baby mama.

**<u>Monday, April 17th, 2023 at approximately 1118 hours:</u>**

Sergeant Khaalis came to the IA Office and a formal interview was conducted. Prior to the interview, Sergeant Khaalis was given a copy of Corporal Wood's report for CRN 210502037. She was also allowed to watch BWC footage of the interview of Tyesha Love, conducted by Corporal Wood and Corporal Hilderbrand. Sergeant Khaalis was then read Garrity and the notification of general order # OPS-016. She signed both forms and stated she understood them. The interview was audio recorded and added to the case file for this investigation. The following is a summary of the interview. Sergeant Khaalis confirmed that she and Lt. Burdette were supervisors of the homicide unit during this incident. When asked how often she received updates on homicide cases that are being actively worked, she replied by saying that it depends, and it is case by case. When asked how long after an arrest is made should a case file be turned in for supervisor review, she stated 60 days, but the DA's office wants them within 90 days. She stated that things like search warrant returns and results from evidence submissions probably would not be in the case file within the 60-90 day period, but they would be added later when the detective got results. When asked if she remembered supervisor approving Corporal Wood's report, she confirmed that she remembered approving it. When asked if she watched the BWC footage of the interview Corporal Wood and Corporal Hilderbrand conducted with Ms. Love, she stated that she did not review the footage. Sergeant Khaalis agreed that there were discrepancies in Corporal Wood's report after viewing the BWC footage of the interview for the first time. She stated that Javaris Roundtree should not have been arrested based off what she saw on the BWC footage.

When asked about evidence submission and how the supervisors are updated on the detective's cases, Sergeant Khaalis stated that yes, things like DNA swabs and shell casings should have been turned in to GBI immediately. She stated that in 2021, the DA assigned to the homicide case would usually send an email, with a list of things that still needed to be done for the case. She stated that she never got an email or was advised on any further actions needing to be taken by Corporal Wood.

4



When asked about search warrant returns not being turned in until right before trial for discovery by the defense, Sergeant Khaalis replied by saying that former SPD Sergeant Santoro initiated that practice before she went to the unit. She stated that her chain of command did not seem to have a problem with it, so she didn't think it was a problem. She stated that currently, the homicide unit turns the search warrant returns in as soon as the requested items are provided to the detective.

When asked if there was a process for if case files were turned in, Sergeant Khaalis stated that it is tracked on a excel spreadsheet on the OneDrive. When asked if she has communicated with Corporal Wood about getting the case file for this investigation turned in over the last 2 years, she stated that she had, but could not remember if it was via email or phone call.

SGT Khaalis provided me with emails showing a mid-year work plan for CPL Wood, which addressed expectations for her updates for CRN 210501027 and CRN 210502037. The email indicated that reports needed to be uploaded to ARS and a casefile needed to be submitted for both investigations. SGT Khaalis also provided an email correspondence with CPL Wood from September 1st 2021, reminding CPL Wood that she still had not submitted her report for the homicide in ARS.

**Thursday, April, 20th, 2023, at approximately 1003 hours:**

Lieutenant Burdette came to the IA Office and a formal interview was conducted. Lieutenant Burdette read the report Corporal Wood submitted in reference to this incident (CRN 210502037). He then watched the BWC footage of the interview of Tyesha Love, conducted by Corporal Wood and Corporal Hilderbrand. Lieutenant Burdette then read Garrity. He signed the form and stated he understood it. The interview was audio recorded and added to the case file for this investigation. The following is a summary of the interview. Lieutenant Burdette confirmed that he was Sergeant assigned as a supervisor in the homicide unit in May of 2021. When asked if it was common practice for supervisors to review BWC footage along with detective supplemental reports, Lieutenant Burdette stated that it was not. He stated that supervisors just read the detectives reports. He stated that when arrests were made in these cases, detectives would let him and/or Sergeant Khaalis know, so the news could be passed along through the chain of command. When asked if there would have been anything done differently if Lieutenant Burdette would have viewed the BWC footage after viewing the ARS report in 2021, Lieutenant Burdette stated that there was no probable cause for an arrest if he would have viewed the BWC footage in 2021. Lieutenant Burdette stated that he got promoted to Lieutenant in July of 2021 and had no further involvement with the homicide unit until he was recently transferred back as the unit commander.



**1305 hours:**

Corporal Wood came to the Internal Affairs office to be re-interviewed. Corporal Wood confirmed that she remembered Garrity and was told it was still in effect. The following is a summary of the interview. When asked how long after the interview with Ms. Love did she type her report, Corporal Wood stated it was maybe a month later. When asked what her probable cause was for the aggravated assault arrest on Javaris Roundtree, she stated that Ms. Love's body language during the interview told her that Javaris Roundtree shot her, even though she did not see him shoot her. Corporal Wood stated that when she wrote the report for this incident, she wrote it from memory and did not review the BWC footage of the incident. When asked what she testified to when getting the warrant sworn out the next day to the Judge, she stated that she did not remember. When asked if Corporal Wood told ADA DeBlasiis that MS. Love told her that Javaris Roundtree shot her, Corporal Wood stated that she told ADA DeBlasiis she did not remember. When asked specific questions pertaining to her probable cause and overall investigation of the homicide (CRN 210502037) Corporal Wood stated that she did not remember. When asked about submitting evidence (specifically shell casings, guns and DNA) to the GBI to be processed, Corporal Wood said that she just forgot to do it. When asked about why she did not interview 2 of the subjects she had warrants out on for the homicide, she stated that she did not feel the need to interview them at that point. She then stated that she was on her back porch, screening her porch in and drinking a beer when the arrests were made. When asked about supplemental reports that should have been typed after she got information obtained via search warrants (i.e., phone records and tower dump records), Corporal Wood replied that she didn't know why she didn't type the supplemental reports.

**Friday, April 28th, 2023**

I received information that a press released was aired and posted on news outlets. The article alleged that CPL Wood used false information to obtain warrants in the homicide investigation she conducted in 2021 (CRN 210502037). The article stated that CPL Wood obtained 34 search warrants, all of which stated that Marquise Parrish was with co-defendants purchasing cleaning supplies at Walmart, and that CPL Wood viewed security footage confirming that. The article alleges that Mr. Parrish's attorneys viewed 67 hours of Walmart security footage and never saw Mr. Parrish anywhere in the footage.

**Monday, May 8th, 2023, at approximately 1400 hours:**

CPL Wood came to the Internal affairs office to be interviewed, in reference to the allegations from the press release. CPL Wood was reminded of the Garrity warning that she signed and advised that it was still in effect. The interview was audio recorded and added to this case file. The following is a summary of the interview.



CPL Wood confirmed that she knew about the press release, but stated she did not read it. CPL Wood was told that the press release alleged that she obtained arrest and search warrants under false pretenses. She was asked if she saw Marquis Parrish on the surveillance footage at the Walmart across from Savannah Mall, along with the other 3 co-defendants for the homicide case she investigated (CRN 210502037). She stated that she did not remember, because it had been so long ago. She was then provided a copy of her police report, focusing on page 8 where she reports the following:

*" I also know that on 4/26/2021 Carlos Roundtree, Aaliyah Duncan and Marquis Parrish went to the Walmart Super Center located at 14030 SR-204 E to purchase cleaning supplies, towels, wash rags, trash bags and clothes. I saw the video footage captured by Walmart security camera's."*

CPL Wood was asked how she knew Marquis Parrish was at Walmart on the date in question. She stated that she did not remember, but it could have been someone that she interviewed that told her that Marquis was there. She stated that she remembers seeing Aaliyah Duncan on the surveillance footage, but may have placed the other individuals, to include Marquis Parrish, at the Walmart through interviewing co-defendants.

**<u>Facts and Findings</u>**

- On March 31st, 2023, I met with Assistant District Attorney DeBlasiis and Investigator Sammons, who is also with the District Attorney's Office. During the meeting, I was shown a homicide report submitted by Detective Wood (CRN 210502037).

- On page 5 of the report, Detective Wood documents an interview that she had with Ms. Tyesha Love in reference to an aggravated assault that she was the victim of (CRN 210501027), which was related to a homicide. Detective Wood indicated in her report that Ms. Love saw Javaris Roundtree shooting at her apartment.

- Upon review of the BWC interview between Ms. Love and Detective Wood, Ms. Love states that she did not see who was shooting at her apartment, because she fell to the ground when she heard the shooting happening.

- Detective Wood still had evidence that was not submitted to GBI to be processed in reference to this incident.

- Defense Attorneys alleged that Detective Wood obtained search warrants and arrests warrants based on statements given to the courts that were not true.



- Detective Wood did not go to court after being subpoenaed on March 22nd, 2023. She advised the DA's office that that she would not be attending court due to a "work related operation".

- Detective Wood did not complete tasks in reference to the homicide and the aggravated assault investigations that were given to her by her supervisor at the time (Sergeant Khaalis).

- Upon completion of my investigation, CPL Wood was cited with the following:

    o ADM-004, Oath of Office, Ethics, and Conduct
        • Knowledge of rules and laws
        • Truthfulness/honesty

    o ADM-018, Search and Seizure
        • Requirements for a search warrant return

    o OPS-001, Criminal Investigations
        • Follow-up Investigations
        • Case file management

    o OPS-033, Court Protocol
        • Superior Court / Electric Notification/Subpoena
        • Preparation for Court
        • Courtroom Demeanor and Rules

    o OPS-002, Organization and Direction
        • Employee Responsibility

## ADM-004 , OATH OF OFFICE, ETHICS, AND CONDUCT

**Truthfulness/Honesty**
**Knowledge of rules and Laws**

- Corporal Wood swore out arrests warrants on Javaris Roundtree for aggravated assault even though he was not properly identified by the victim.

8



SavannahPD.org

- Corporal Wood swore out arrest warrants and search warrants on Marquis Parrish testifying that she knew he was seen on security footage at Walmart with co-defendants, when he was actually not seen on security footage.

## ADM-018, SEARCH AND SEIZURE

**Searches with a warrant**

-Corporal Wood did not turn in search warrant returns within 5 days of receiving items listed in search warrants submitted.

## OPS-001, CRIMINAL INVESTIGATIONS

**Follow-up Investigations**
**Case file management**

-Corporal Wood did not submit evidence to be processed at the GBI until April 2023

-No supplemental reports were written and loaded in ARS in reference to what was received from the execution of search warrants, submitting of evidence to GBI

-Corporal Wood did not review supplemental reports and had no knowledge of a suspect vehicle or a potential additional witness in the aggravated assault case.

-No case file was turned into SPD case file management until April 2023.

## OPS-033, COURT PROTOCOL

**Electric Notification/Subpoena**
**Superior Court**

- Corporal Wood did not go to court after being subpoenaed on March 22nd, 2023, for a motion hearing. Corporal Wood advised that she would not be attending court due to a "work related operation".

**Preparation for Court**

-Corporal Wood did not submit evidence to be processed with the GBI. She also did not review supplemental reports in reference to either case.



-Corporal did not have a completed case file nor did she have lab results due to her failure to submit evidence collected for testing at the GBI.

**Courtroom Demeanor and Rules**

-Corporal gave inaccurate testimony when applying for arrest warrants and search warrants

**OPS-002, ORGANIZATION AND DIRECTION**

**Employee Responsibility**

-Corporal Wood did not complete tasks in reference to the homicide and the aggravated assault investigations that were given to her by her supervisor at the time (Sergeant Khaalis).

-Sergeant Khaalis was cited with the following:

- o OPS-002, Organization and Direction
  - Supervisor Responsibility

- o OPS-001, Criminal Investigations
  - Case file management

**OPS-002, ORGANIZATION AND DIRECTION**

**Supervisor Responsibility**

-Sergeant Khaalis did not ensure that Corporal Wood submitted a complete case file and accurate report for this investigation.

**OPS-001, CRIMINAL INVESTIGATIONS**

**Case file management**

-Sergeant Khaalis did not review Corporal Wood's case file for accuracy every 10 days.





| ADMINISTRATIVE INVESTIGATION |
|---|
| **Incident Report** |

| OPS NUMBER: | 23-0041 |
|---|---|
| EMPLOYEE: | Corporal Ashley Wood |
| DATE: | May 23, 2023 |
| INVESTIGATOR: | Sergeant Kaishawn Samuell |

The purpose of this investigative narrative is to document an update on further inconsistencies found in CPL Wood's (PR # 62333) investigation of an Aggravated Assault and a Homicide in which reports and BWC / Interviews footage were conflicting.

**Friday, May 19th, 2023:**

I received an email from DA investigator Sammons, which advised on inconsistencies between interviews and CPL Wood's ARS report for her investigation (CRN 210502037). The following email was sent by Investigator Sammons. Investigator Sammons's findings were verified by me (Sergeant Samuell).

*To All,*

*This morning at approximately 0930hrs ADA's DeBlasiis, O' Brien and I had a conversation with Katherine Kelly, the defense attorney for Marquis Parrish who has been charged (along with Roundtree x2 and Duncan) with the murder of Charles Vinson. During this conversation Mrs. Kelly contradicted my memory of statements made by witness Antwane Snipe as reflected in Det Wood's report. Mrs. Kelly told me she had listened to Antwane Snipe's recorded interview. Taking note of this disparity between my recollection and Mrs. Kelly's, I sat down this afternoon and reviewed both the report and recorded interview.*

*The interview in question was recorded at SPD Headquarters and is dated 5/6/21 with the recording active at 0749hrs. At approximately 0807hrs in the recording, Antwane Snipe tells Det Wood she saw Carlos Roundtree and his brother, identified by the name Scooter (nickname of Javaris Roundtree) in possession of guns when she was riding in Marquis Parrish's white Yukon. Snipe attributed a revolver to Carlos and a semi-automatic pistol to Javaris Roundtree. Marquis Parrish (or the "cousin" as Snipe identifies him) is never mentioned possessing a firearm. At 0825hrs timestamp in the recording, Wood confirms once*

1



*again that Carlos Roundtree and Javaris Roundtree were seen in possession of firearms in the Yukon. Snipe affirmatively acknowledges this, and Marquis Parrish is never mentioned possessing firearms. In Wood's report, supplemental 19, page 5, Wood reflects this statement as 'She said she noticed Carlos had a gun on his lap as well as Javaris and Marquis both had guns in their laps as well.' This typed statement/narrative is inconsistent with Snipe's audio/video statement. Furthermore, this same typed narrative is also in most if not all search warrants completed by Wood in this case.*

*At approximately 0817hrs timestamp in the recorded interview, Antwane Snipe tells Det Wood that Carlos Roundtree contacts her in the morning hours (around 0815hrs, 26 April 2021) to tell her he was coming to pick her up to return the rental car (suspected crime scene). Wood asked Snipe if she received a message from Carlos Roundtree before 0800hrs. Snipe said she could not recall any contact prior to 0800hrs. At approximately timestamp 0842hrs in the recorded interview, Det Wood asks Snipe if she recalled a message early in the morning (26 April 2021) from "Carlos" asking to extend the rental. At this point Snipe did confirm the communication happened, she just did not recall the message. Nothing is mentioned about Marquis Parrish contacting Antwan Snipe requesting the rental be extended on the car (suspected crime scene). On page 6, supplemental 19, Det Wood typed, ' The morning of April 26th, 2021, at about 0630 AM, Marquis was messaging Antwane Snipe asking her to extend the rental on the 2016 Toyota Camry and told her he didn't want another car and specifically asked to extend the 2016 Toyota Camry.' This is the statement Mrs. Kelly and I disputed in our conversation.*

*After listening to this interview, I agree with Mrs. Kelly that on 6 May 2021, Antwane Snipe does not say Marquis (Parrish) asked her in any way to extend the rental agreement. Snipe identifies Carlos Roundtree making this request. At this time, I do not know where Det Wood came up with the information identifying Marquis Parrish as making the statement, but it appears to be inaccurate. This statement, like the one about marquis Parrish being n possession of a firearm, is also reflected in most if not all the search warrants completed by Wood in this case.*

*Of lesser note, as it is close in context, supplemental 19, page 6, Det Wood typed Snipe stated, 'Roundtree pushed her aside telling her "he had it"…..' In the recorded interview around the 0834hrs timestamp the cleaning of the rental car is discussed. I do not hear Snipe speak about being physically pushed aside and the only quote Snipe attributed to Carlos Roundtree was "move out the way." The report is contextually close but description of physically moving Snipe and the quotation are not accurate.*

*Today's discoveries further complicate matters in our efforts to investigate and potentially prosecute this case. I am asking for this interview to be reviewed independently to make sure I am correct. If I am, we seek clarification and explanation for the discrepancies identified above.*

2



*Thank You,*
*Alan*

*Investigator Alan Sammons*
*Major Case Supervisor*
*Eastern Judicial Circuit of Georgia*
*Chatham County District Attorney's Office*
**Office: 912-652-8062**
**Cell: 912-346-4618**
**Email:asammons@chathamcounty.org**
**<u>Monday, May 22nd, 2023:</u>**

I received an email from DA investigator Sammons, which advised on inconsistencies between other interviews and CPL Wood's ARS report for her investigation (CRN 210502037). The following email was sent by Investigator Sammons. Investigator Sammons's findings were verified by me (Sergeant Samuell) and Lt. Wiggins .

*Sirs,*

*I have been trying to flesh out a search warrant affidavit to pursue information not collected in the original investigation into Charles Vinson's murder. To do so I have been reviewing recorded statements.  This morning I found another statement in Det Wood's report and search warrants that is inconsistent/inaccurate with the recorded statement of the suspect, Marquis Parrish.*
*The report is supplemental 19 (CRN 210502037) page 4. The prior date listed in the report is 2 May 2021 and the recorded interview (multiple BWC's capture encounter) with Marquis Parrish reflects the same date. The report and search warrants in this case reflect the following: 'Marquis Parrish was also asked if he was ever in the rental vehicle, which he explained that he <mark>was never</mark> in the rental vehicle.'*

*The recording of note is named 'Interview_with_Marquis-2.mp4'. Beginning at the 11-minute mark (reflected as 20:23:13 in the BWC) Marquis responds to questioning about riding in a vehicle with any other persons. Marquis tells detectives he rode in a red four door car with "Scooter's brother." (Parrish never uses the name Carlos as reflected in the report) Marquis goes on to tell detectives that he drove "Scooter's brother" to pick up the red car from the airport and at the 13:23 minute mark Marquis identifies the car as a rental. At the 14:20 minute mark, Marquis was asked if he ever rode in the rental car without "Scooter's brother." The answer to that question is no.*



*As I see this, the report/search warrant asserts that Marquis Parrish unequivocally denies ever riding in the rental vehicle. This is not true based on the recorded statement. I can forward a copy of the interview if needed.*

*Thank You,*

*Investigator Alan Sammons*
*Major Case Supervisor*
*Eastern Judicial Circuit of Georgia*
*Chatham County District Attorney's Office*
*Office: 912-652-8062*
*Cell: 912-346-4618*
*Email:asammons@chathamcounty.org*

# Savannah Police Department
## Administrative Investigation Report

## Incident Details

| Date Received | Date of Occurrence | Time of Occurrence |
|---|---|---|
| 03/31/2023 | | |

| Record ID Number | CRN | OPS # |
|---|---|---|
| 10624 | 210502037 | 23-0041 |

| Date/Time Entered | Entered By | |
|---|---|---|
| 03/31/2023 08:18 | [IAPro entry - Sergeant Kaishawn Samuell] | |

| SPD BlueTeam LIVE Assigned Investigator | IAPro Assigned Investigator | |
|---|---|---|
| Assistant Chief Devonn Adams - 1440 | Sergeant Kaishawn Samuell | |

## Incident Summary

Corporal Wood falsified a Police report for an aggravated assault, where an arrest was made

## Incident Location

**Addresses** [None Entered]
- Location of Occurrence:

## Involved Employees

# Corporal Ashley Wood - 62333

**Assignment at time of incident:** Corporal Field Operations Division/Special Investigations Bureau/Task Force Officers/ATF Task Force/
**Role:** [None Entered]

**Policy Outcome:** Not yet entered

**Linked Allegations**
• ADM-004 Oath of Office, Ethics, and Conduct (Truthfulness/Honesty) -

• OPS-001 Criminal Investigations (Follow Up Investigations) -

• ADM-002 Organization and Direction (Employee Responsibility) -

• OPS-033 Court Protocol (Courtroom Demeanor and Rules) -

• OPS-001 Criminal Investigations (Case File Management) -

• ADM-018 Searches and Seizures (Searches with a Warrant) -

• OPS-033 Court Protocol (Preparation for Court) -

• ADM-004 Oath of Office, Ethics, and Conduct (Knowledge of Laws and Rules) -

• OPS-033 Court Protocol (Superior Court) -

# Sergeant Nicole Khaalis - 5182

**Assignment at time of incident:** Sergeant Investigations Division/Criminal Investigations Bureau/Homicide//
**Role:** [None Entered]
**Policy Outcome:** Not yet entered

**Linked Allegations**
• ADM-002 Organization and Direction (Supervisor Responsibility) -

• OPS-001 Criminal Investigations (Case File Management) -

# Tasks

No tasks to show

# Running Sheet Entries

No running sheet entries to show

# Attachments

| Date Attached | Attachment Description | Attachment Types |
|---|---|---|
| 03/31/2023 | Wood Notification of OPS | pdf |
| 04/17/2023 | SGT Khaalis Garrity | pdf |
| 04/20/2023 | Homocide assigned cases 2021 | pdf |
| 05/09/2023 | PR1 | PNG |
| 03/31/2023 | Det Hilderbrand Interview with Tyesha Love | |
| 04/14/2023 | CPL HIlderbrand Interview | m4a |
| 05/24/2023 | Wood and Khaalis LOT | docx |
| 05/11/2023 | ADM-004 Oath of Office Ethics and Conduct 04-23-18 | pdf |
| 05/23/2023 | Marquis Parrish Interview - Wood | |
| 03/31/2023 | Admin Leave Form OPS 22-0041 | pdf |
| 05/11/2023 | ADM-018 Search and Seizure | pdf |
| 04/20/2023 | workplan email | msg |
| 05/23/2023 | OPS 23-0041 Update | docx |
| 04/20/2023 | LT Burdette Garrity | pdf |
| 04/17/2023 | Hilderbrand Garrity | pdf |
| 05/09/2023 | PR3 | PNG |
| 05/11/2023 | Final Report OPS 23-0041 | docx |
| 05/11/2023 | ADM-002 Organization and Direction | pdf |
| 04/13/2023 | Certified Copy of Search Warrant Returns | pdf |
| 04/20/2023 | Work Plan Wood 07 21 | pdf |
| 05/23/2023 | Marquis Parrish Int - Wood Audit Trail | pdf |

| 05/11/2023 | OPS-033 Court Protocol | pdf |
| 04/14/2023 | CPL Wood Garrity | pdf |
| 05/09/2023 | PR2 | PNG |
| 05/22/2023 | antwane snipe_spd hq interview rm 307 (pinhole) | wav |
| 03/31/2023 | DA Letter_1000012e_1 | pdf |
| 04/13/2023 | 28 March 23(b) | pdf |
| 04/20/2023 | Lt_ Burdette interview | m4a |
| 03/31/2023 | 210502037report | pdf |
| 03/31/2023 | Det Wood Interview with Tyesha Love | |
| 06/06/2023 | Admin Forms-Wood and Khaalis - Major Herron LOT (3) | docx |
| 04/13/2023 | savannah pd_GBI | pdf |
| 04/13/2023 | Case file SPD 210502037 VOL II | pdf |
| 04/13/2023 | 28 March 23(c) | pdf |
| 04/20/2023 | CPL Wood interview 2 | m4a |
| 04/13/2023 | Case file SPD 210502037 VOL I | pdf |
| 05/23/2023 | Marquis Parrish Interview | |
| 06/01/2023 | Wood and Khaalis - Capt. Tobar LOT | docx |
| 05/08/2023 | CPL Wood interview 3 | m4a |
| 04/13/2023 | 27 March 23 | pdf |
| 04/13/2023 | Caution - External Email A_ Woodemail communication by DAO to Wood for Roundtree case_ | msg |
| 04/13/2023 | 28 March 23 (a) | pdf |
| 04/13/2023 | Det Wood Interview with Tyesha Love | mp4 |
| 05/18/2023 | Caution - External Email Det Ashely Wood SPD Case # 210502037 Defendants Roundtree (x2) Duncan Parrish | msg |
| 04/13/2023 | Det Hilderbrand Interview with Tyesha Love | mp4 |
| 05/11/2023 | OPS-001 Criminal Investigations | pdf |
| 05/23/2023 | Marquis Parrish Int - Hilderbrand Audit Trail | pdf |

| 04/13/2023 | 28 March 23(d) | pdf |
| 04/17/2023 | SGT Khaalis Interview | m4a |
| 04/20/2023 | Woods Work plan 2021 | pdf |
| 04/14/2023 | CPL Wood Interview 1 | m4a |
| 04/13/2023 | 22 March 23 | pdf |
| 04/13/2023 | 28 March 23 | pdf |
| 05/23/2023 | Caution - External Email RoundtreeParrishDuncan | msg |

# Assignment History

| Date/Time Sent | From | To | Activity |
|---|---|---|---|
| 05/11/2023 13:16 | Sergeant K Samuell | | Field status changed in IAPro from null to Field assigned |
| 05/11/2023 13:16 | Sergeant K Samuell | Lieutenant Zachary Burdette | IAPro assigned |
| 05/24/2023 14:02 | Lieutena R Wiggins | | Field assigned |
| 06/07/2023 14:43 | Corporal S Sueaquan | | Field assigned |
| 06/14/2023 12:22 | Sergeant M Nelson | | Field assigned |
| 06/14/2023 15:59 | Sergeant K Samuell | | Field status changed in IAPro from Completed - in holding bin to Released |
| 06/14/2023 16:00 | Sergeant K Samuell | | Field status changed in IAPro from Released to Field assigned |
| 06/14/2023 16:00 | Sergeant K Samuell | Police Chief Lenny Gunther | IAPro assigned |
| 06/14/2023 16:07 | Sergeant K Samuell | Assistant Chief Devonn Adams | IAPro assigned as part of IAPro re-route |

# Chain of Command History

**Routing Number: 1**

**From** Sergeant Kaishawn Samuell

**To** [Snapshot Title Unavailable] Zachary Burdette

**Cc:**

**Date/Time Sent** 05/11/2023 13:16

**Instructions From [ Sergeant Kaishawn Samuell ] To [ [Snapshot Title Unavailable] Zachary Burdette ]**

Please add LOT to include Douglas factors.

**Comments/Response From [ [Snapshot Title Unavailable] Zachary Burdette ]**

LOT Completed.

**Routing Number: 2**

**From** Lieutenant Zachary Burdette

**To** Captain Alexander Tobar

**Cc:**

**Date/Time Sent** 05/24/2023 11:07

**Instructions From [ Lieutenant Zachary Burdette ] To [ Captain Alexander Tobar ]**

Captain,

Admin investigation into Corporal Ashley Wood for your review, LOT is completed and attached.

**Comments/Response From [ Captain Alexander Tobar ]**

Incident routing was closed out by IAPro user Lieutenant Richard Wiggins and the incident was re-routed to Lieutenant Zachary G Burdette [11208]

**Routing Number: 3**

**From** Lieutenant Richard Wiggins

**To** [Snapshot Title Unavailable] Zachary Burdette

**Cc:**

**Date/Time Sent** 05/24/2023 14:02

**Instructions From [ Lieutenant Richard Wiggins ] To [ [Snapshot Title Unavailable] Zachary Burdette ]**

Corrections.  Victim's name is Charles Vinson.

**Comments/Response From [ [Snapshot Title Unavailable] Zachary Burdette ]**

Corrected Error of victims name in LOT.

---

**Routing Number: 4**

**From** Lieutenant Zachary Burdette

**To** Captain Alexander Tobar

**Cc:**

**Date/Time Sent** 05/24/2023 22:29

**Instructions From [ Lieutenant Zachary Burdette ] To [ Captain Alexander Tobar ]**

Captain,

Please see LOT in regards to the administrative investigation involving Coporal Ashley Wood. The LOT has been corrected to show the correct information on the victim.

**Comments/Response From [ Captain Alexander Tobar ]**

Completed LOT to be forwarded to Major Herron.

---

**Routing Number: 5**

**From** Captain Alexander Tobar

**To** Major Ben Herron

**Cc:**

**Date/Time Sent** 06/01/2023 13:42

**Instructions From [ Captain Alexander Tobar ] To [ Major Ben Herron ]**

Major,

Here is the LOT for the Detective Wood case.

-Capt. Tobar

**Comments/Response From [ Major Ben Herron ]**

[Forwarded by Major Ben Herron]

**Routing Number: 6**

**From** Major Ben Herron

**To** Assistant Chief Devonn Adams

**Cc:**

**Date/Time Sent** 06/06/2023 11:44

**Instructions From [ Major Ben Herron ] To [ Assistant Chief Devonn Adams ]**

For your review

**Comments/Response From [ Assistant Chief Devonn Adams ]**

Incident routing was closed out by IAPro user Corporal Sean Sueaquan and the incident was re-routed to Police Chief Lenny B Gunther [4578]

**Routing Number: 7**

**From** Corporal Sean Sueaquan

**To** [Snapshot Title Unavailable] Lenny Gunther

**Cc:**

**Date/Time Sent** 06/07/2023 14:43

**Instructions From [ Corporal Sean Sueaquan ] To [ [Snapshot Title Unavailable] Lenny Gunther ]**

For review

**Comments/Response From [ [Snapshot Title Unavailable] Lenny Gunther ]**

Incident routing was closed out by IAPro user Sergeant Megan Nelson and the incident was re-routed to Assistant Chief Devonn C Adams [1440]

**Routing Number: 8**

**From** Sergeant Megan Nelson

**To** Assistant Chief Devonn Adams

**Cc:**

**Date/Time Sent** 06/14/2023 12:22

**Instructions From [ Sergeant Megan Nelson ] To [ Assistant Chief Devonn Adams ]**

for review

**Comments/Response From [ Assistant Chief Devonn Adams ]**

Completion notes: In reference to this investigation I submit the following.  The actions of those involved in this investigation is not indicative of the culture of the Savannah Police Department. we strive for excellence in all our endeavors..  After reviewing the investigation I recommend that Corporal Ashley Woods be terminated from the Savannah Police Department for her sustained allegations. I also recommend that Sgt. Nicole Khaalis receive a five day suspension and be reassigned to the patrol division as a result of her sustained allegations..

**Routing Number: 9**

**From** Sergeant Kaishawn Samuell

**To** [Snapshot Title Unavailable] Lenny Gunther

**Cc:**

**Date/Time Sent** 06/14/2023 16:00

**Instructions From [ Sergeant Kaishawn Samuell ] To [ [Snapshot Title Unavailable] Lenny Gunther ]**

See AC Adams's comments for CPL Wood

**Comments/Response From [ [Snapshot Title Unavailable] Lenny Gunther ]**

Incident assignment and routing were closed out by IAPro user Sergeant Kaishawn Samuell and the incident was re-assigned and re-routed to Assistant Chief Devonn C Adams [1440]

**Routing Number: 10**

**From** Sergeant Kaishawn Samuell

**To** Assistant Chief Devonn Adams

**Cc:**

**Date/Time Sent** 06/14/2023 16:07

**Instructions From [ Sergeant Kaishawn Samuell ] To [ Assistant Chief Devonn Adams ]**

AC Adams, in your comments you put recommendations instead of findings.

**Comments/Response From [ Assistant Chief Devonn Adams ]**

Completion notes: In reference to this investigation I submit the following:
The actions of those involved in this investigation is not indicative of the culture within the Savannah Police Department. We strive for excellence in all our endeavors.   After reviewing this investigation my decision is that Corporal Ashley Woods be terminated from the Savannah Police Department for her sustained allegations.
In reference to Sgt. Nicole Khaalis , its my decision that Sgt. Khaalis receives five days suspension and

reassignment to the patrol division as a result of her previous disciplinary history and the sustained allegations against her.