```
        IN THE UNITED STATES DISTRICT COURT FOR THE
                SOUTHERN DISTRICT OF GEORGIA
                     SAVANNAH DIVISION
```

| | |
|---|---|
| MARQUIS RAQUEL PARRISH and TYESHA LOVE, | * * * |
| Plaintiffs, | * * |
| v. | * CV 423-261 * |
| ASHLEY WOOD; THE MAYOR AND ALDERMAN OF THE CITY OF SAVANNAH; and NICOLE KHAALIS, | * * * * |
| Defendants. | * |

**O R D E R**

Presently pending before the Court is Defendants Mayor and Alderman of the City of Savannah (the "City of Savannah") and Nicole Khaalis's (collectively, the "Moving Defendants") motion to dismiss Plaintiffs' Second Amended Complaint. (Doc. 41.) For the following reasons, the Moving Defendants' motion is **GRANTED IN PART AND DENIED IN PART**.

## I. BACKGROUND

Plaintiffs originally filed suit on September 14, 2023 (Doc. 1) and filed their first amended complaint on November 15, 2023 (Doc. 17). On February 6, 2024, they filed their second amended complaint (the "Complaint") which is the operative complaint. (Doc. 35.) Plaintiffs bring their Complaint under 42 U.S.C.

§§ 1983 and 1988 to enforce their rights under the Fourth, Fifth,[1] and Fourteenth Amendments to the United States Constitution and under Georgia law. (Id. at 1.)  Plaintiffs bring nine claims: (1) Count I - suppression and alteration of material exculpatory evidence under § 1983 against Wood; (2) Count II - malicious prosecution under § 1983 against Wood; (3) Count III - Monell liability policy, practice, procedure, or custom under § 1983 against the City of Savannah; (4) Count IV - Monell liability failure to train under § 1983 against the City of Savannah; (5) Count V - supervisor liability under § 1983 against Khaalis; (6) Count VI - negligent training and supervision under Georgia law against Khaalis; (7) Count VII - malicious prosecution under Georgia law against Wood; (8) Count VIII - intentional infliction of emotional distress under Georgia law against Wood; and (9) Count IX - loss of consortium under Georgia law against all Defendants. (Id. at 6-21.)  The relevant facts are as follows.

On April 27, 2021, Charles Vinson was reported missing, and five days later, he was found deceased from gunshot wounds in Savannah, Georgia. (Id. at 3.)  Ashley Wood, a detective with the Savannah Police Department ("SPD"), was assigned as lead detective. (Id.)  On May 7, 2021, Plaintiff Marquis Parrish was

---

[1] The Moving Defendants argue no claims are proper under the Fifth Amendment because they are not federal actors. (Doc. 41-1, at 5).  Plaintiffs concede this, so the Court disregards any mention of the Fifth Amendment in the Complaint.

2

arrested and charged with Vinson's murder. (Id.) From the beginning, Plaintiff Parrish maintained his innocence. (Id.) Wood obtained 34 search warrants related to Vinson's murder, and a key element in obtaining the search warrants was her claim that Parrish was seen on surveillance video buying cleaning supplies at Walmart with three other people accused of the murder. (Id.)

Wood provided information that led to the July 8, 2021 indictment of Parrish. (Id.) She was the only witness before the grand jury, and the indictment was based on her testimony. (Id.) It was later determined that the information Wood provided the State was contradicted by her body-camera footage. (Id.) In April 2023, state prosecutors reviewed the Walmart surveillance video and confirmed Parrish was not at Walmart as Wood claimed. (Id. at 4.) Based on these findings, the SPD opened an internal investigation into Wood, which was ongoing as of the filing of the Complaint. (Id.)

On April 24, 2023, the District Attorney asked to continue Parrish's trial because of the credibility of the lead detective on the case and because the State was waiting on ballistic and DNA evidence from the Georgia Bureau of Investigation ("GBI"). (Id.) Parrish's counsel objected to the continuance based on how long he had been in jail, and their objection was overruled, but Parrish was released on bond. (Id.) After his release, he was interviewed by prosecutors who believed he was truthful and aided prosecutors'

3

determination of the facts of the case. (Id. at 4-5.) On June 16, 2023, after Parrish spent almost two years in jail, the State dropped all charges against him. (Id.)

During all relevant times, Parrish and Love have been married. (Id.) Because of Parrish's arrest, incarceration, and the dangers of the false allegations against him, Love and their children were forced into homelessness and hiding. (Id.) After his charges were dropped, the City of Savannah investigated the prosecution, Wood, and Khaalis. (Id.) The City of Savannah "uncovered an understood and widespread internal policy of evidence suppression," terminated Wood, and found Khaalis in violation of duties related to supervising Wood. (Id.)

The Moving Defendants move to dismiss all claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 41; Doc. 41-1.) Plaintiffs responded in opposition (Doc. 43) and the Moving Defendants replied (Doc. 45). Thus, the motion has been fully briefed and is ripe for the Court's review.

## II. LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by* Davis v. Scherer, 468 U.S. 183 (1984). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and

4

plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of both the claim and the supporting grounds. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). The Court need not accept the pleading's legal conclusions as true, only its well-pleaded facts. Id. at 677-79. Furthermore, "the court may dismiss a complaint pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (citing Exec. 100, Inc. v. Martin Cnty., 922 F.2d 1536, 1539 (11th Cir. 1991)).

## III. DISCUSSION

The Moving Defendants move to dismiss Counts III and IV against the City of Savannah; Counts V and VI against Khaalis; and Count IX against the Moving Defendants. (Doc. 41.) The Court addresses the arguments in turn.

### A. Monell Claim Against the City of Savannah

The Monell doctrine holds that a municipality can be liable under 42 U.S.C. § 1983. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978)). "To impose Monell liability, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." Underwood v. City of Bessemer, 11 F.4th 1317, 1333 (11th Cir. 2021) (quotation marks omitted). "To state a claim for relief under Monell, a plaintiff must plead factual allegations which, if proven true, would be sufficient to establish that the municipality either had an official policy of permitting unconstitutional acts or was on notice of a need to implement a policy preventing unconstitutional acts." VanNewhouse v. Effingham Cnty. Bd. of Comm'rs, No. CV 4:24-006, 2024 WL 584447, at *3 (S.D. Ga. Feb. 13, 2024) (citing Grider v. Cook, 522 F. App'x 544, 547-48 (11th Cir. 2013); Williams v. Fulton Cnty. Sch. Dist., 181 F. Supp. 3d 1089, 1122 (N.D. Ga. 2016)).

The Moving Defendants argue Plaintiffs' Monell claim fails because they failed to allege a City of Savannah policy, practice, or custom of allowing SPD officers to alter material exculpatory evidence. (Doc. 41-1, at 6.) They argue Plaintiffs' claim appears to be based on a practice of waiting to file search warrant returns until right before discovery in the underlying criminal prosecutions, which is denied, but even if true, could not have caused Parrish's alleged constitutional violations. (Id. at 6-7.) Thus, the Moving Defendants argue there is no causal link. (Id. at 8.) They also argue there is no sufficient allegation of a pertinent and widespread practice of altering and/or suppressing exculpatory evidence, thus the claim fails. (Id. at 8-10.) In response, Plaintiffs argue their allegations are enough to survive a motion to dismiss. (Doc. 43, at 6-9.) They argue their allegations that the City of Savannah violated Parrish's constitutional rights by its policy, practice, procedure, or custom of allowing employees to alter and/or suppress material evidence and failing to train its officers is enough to state a claim. (Id. at 8-9.) The Court addresses each argument individually.

1. Alleged Policy of Fabricating Evidence

First, the Moving Defendants argue the Complaint lacks allegations of an alleged policy, practice, or custom that allowed SPD officers to alter material exculpatory evidence. (Doc. 41-1,

7

at 6.) Plaintiffs argue they are not required to conclusively prove a claim at the pleading stage, and their assertions are sufficient. (Doc. 43, at 6-11.) The Court agrees with the Moving Defendants.

The Complaint simply alleges "SPD had a policy, practice, procedure and/or custom which permitted employees to alter material exculpatory evidence and/or suppress it from being turned over to criminal defendants and their counsel." (Doc. 35, ¶ 71.) The Complaint then states there was a policy of not turning over evidence obtained through search warrants promptly, but only contains conclusory allegations pertaining to fabricating or altering the evidence. (Id. at 9-12.)

Conclusory allegations are insufficient to state a claim, and the Court will not accept them as true. See Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim). The allegations of the City of Savannah having a policy of permitting their employees to alter evidence is simply conclusory and contains no factual support. Thus, the Court finds Plaintiffs failed to state a Monell claim based on a policy of altering or fabricating evidence.

2. <u>Causal Link Between Alleged Policy and Parrish's Alleged Constitutional Violation</u>

Next, the Moving Defendants argue there can be no causal link between any alleged wrongful policy of belatedly filing search warrant returns and Parrish's alleged constitutional violation because it is a purely procedural process that does not affect the accused's substantive rights, and investigating officers have no duty under the Fourteenth Amendment to disclose evidence to a criminal defendant. (Doc. 41-1, at 6-8.) Plaintiffs again argue they sufficiently pled their <u>Monell</u> claim against the City of Savannah, but Plaintiffs make no arguments about causation. (Doc. 43, at 9-11.)

As outlined above, to state a <u>Monell</u> claim, Plaintiffs must allege the policy or custom caused the violation. <u>Underwood</u>, 11 F.4th at 1333. The Complaint conclusory alleges the City of Savannah's policy caused a violation of Parrish's constitutional rights. (Doc. 35, ¶ 78.) The Court found Plaintiffs failed to allege a policy of altering evidence, so for purposes of its analysis, it assumes Plaintiffs sufficiently alleged the City of Savannah has a policy of suppressing or delaying evidence from being turned over to criminal defendants. (<u>Id.</u> at 9-10.) The Court finds Plaintiffs sufficiently alleged the City of Savannah's policy of suppressing evidence and filing search warrant returns untimely caused Parrish's alleged constitutional violation.

The Court recognizes "investigators have no duty to disclose exculpatory and impeachment evidence to the defense," such duty lies on the prosecutor, but investigators must turn the evidence over to the prosecutor. McMillian v. Johnson, 88 F.3d 1554, 1567 (11th Cir. 1996) (citations omitted). Plaintiffs allege the SPD had DNA and ballistic evidence pertaining to Parrish's case since 2021, but as of 2023, were still awaiting results because it was not sent for testing. (Doc. 35, at 4.) They also allege the state prosecutors did not review the video footage until April 2023 and then determined Parrish was not at Walmart. (Id.) While it is unclear who is responsible for the delays in handing over evidence, the Court is satisfied Plaintiffs sufficiently pled a Monell claim against the City of Savannah on this basis. The Moving Defendants' motion to dismiss is **DENIED** on this basis.

3. Widespread Practice

Finally, the Moving Defendants argue Plaintiffs' Monell claim is subject to dismissal because the Complaint does not sufficiently allege a policy of altering and/or suppressing exculpatory evidence. (Doc. 41-1, at 8-10.) The Court already determined Plaintiffs failed to allege a policy of altering evidence, so it only addresses these arguments as to a policy of suppression. Plaintiffs argue they sufficiently provided allegations and examples of the City of Savannah's widespread policy of evidence suppression. (Doc. 43, at 9-11.)

10

The Complaint alleges the City of Savannah had a policy of suppressing evidence on SPD issued computers and cell phones and a general policy to not turn over evidence obtained through search warrants to prevent defendants from obtaining it. (Doc. 35, at 9-10.) It contains many factual allegations to support this claim, including findings from an internal investigation. (Id. at 10-11.)

The Court is satisfied Plaintiffs' allegations state a Monell claim against the City of Savannah based on a policy of evidence suppression because the facts stated, if true, would establish the City of Savannah either had a policy of permitting unconstitutional acts or was on notice of a need to prevent such. VanNewhouse, 2024 WL 584447, at *3 (citations omitted). Thus, the Moving Defendants' motion to dismiss is **DENIED** on this ground.

Based on these findings, Count III remains, but cannot be based on a policy or practice of altering or fabricating evidence.

**B. Failure to Train Against the City of Savannah**

The Moving Defendants argue Plaintiffs' Monell claim for failure to train fails. (Doc. 41-1, at 11.) Specifically, they argue Plaintiffs failed to plead the failures to train evidenced a deliberate indifference to Parrish's constitutional rights because there are no allegations of widespread abuse before these issues, or any indication the City of Savannah had notice of any need for training. (Id.) The Moving Defendants assert that a

11

single incident of improper training is not enough to defeat a motion to dismiss. (<u>Id.</u> at 12.) In response, Plaintiffs argue they sufficiently alleged that the City of Savannah failed to properly train its supervisors, including specific allegations that Wood was never trained as a homicide detective before Parrish's arrest. (Doc. 43, at 11-12.)

As outlined above, the City of Savannah can only be held liable under § 1983 if Plaintiffs allege it had a policy of failing to train its employees and the policy caused the employees to violate Parrish's constitutional rights. <u>Gold v. City of Miami</u>, 151 F.3d 1346, 1350 (11th Cir. 1998) (citing <u>City of Canton v. Harris</u>, 489 U.S. 378, 389-91 (1989)). Plaintiffs must plead facts demonstrating the City of Savannah's failure to train amounted to deliberate indifference to Parrish's constitutional rights. <u>Id.</u> The Court finds Plaintiffs failed to do so.

The Complaint alleges the City of Savannah violated Parrish's constitutional rights by failing to train its police officers in various ways. (Doc. 35, at 13-14.) It goes on to conclusory allege the City of Savannah's "failures to train and supervise were failures of policy, widespread practice and/or custom," and these "systematic training and supervision failures proximately caused" Parrish's injuries. (<u>Id.</u> at 15.) Although Plaintiffs' allegations state the failure to train was a "widespread practice and/or custom," they provide no support for this allegation, and

12

it is merely conclusory. (Id.) To establish a deliberate indifference claim against the City of Savannah, Plaintiffs had to allege it "knew of a need to train and/or supervise in a particular area and . . . made a deliberate choice not to take any action." Gold, 151 F.3d at 1350-51 (citations omitted). Plaintiffs failed to make these allegations, and so they did not sufficiently state a claim against the City of Savannah for failure to train. For these reasons, the Moving Defendants' motion to dismiss is **GRANTED** as to this claim, and Count IV shall be **DISMISSED**.

### C. Claims Against Khaalis

Next, the Moving Defendants argue Plaintiffs fail to allege a claim for relief against Khaalis. (Doc. 41-1, at 12-14.) They argue there are no allegations she personally participated in the alleged constitutional violations, and there are only conclusory allegations to support a custom or policy resulting in deliberate indifference to Parrish's constitutional rights. (Id. at 13.) Further, the Moving Defendants argue the Georgia state-law claims against Khaalis fail because she is entitled to official immunity for discretionary acts, and there are no allegations of malice or intent to cause injury. (Id. at 13-14.) In response, Plaintiffs assert their claims are sufficient to survive a motion to dismiss. (Doc. 43, at 12-13.) Plaintiffs bring two claims against Khaalis: Count V - supervisor liability under § 1983; and Count VI - negligent training and supervision under Georgia law. (Doc. 35,

at 16-19.) Plaintiffs' supervisor liability claim is based on Khaalis's failure to train and supervise. (Id. at 16-17.) The Court addresses each in turn.

1. Supervisor Liability

Supervisors are not subject to § 1983 liability under theories of respondeat superior or vicarious liability. Keith v. DeKalb Cnty., 749 F.3d 1034, 1047 (11th Cir. 2014) (citation omitted). Supervisors can only be held liable for the acts of their subordinates "when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." Cotton v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (citation omitted). To establish a causal connection, a plaintiff must allege:

> (1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so; (2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so.

Gibbons v. McBride, 124 F. Supp. 3d 1342, 1364 (S.D. Ga. 2015) (citing Williams v. Santana, 340 F. App'x 614, 617 (11th Cir. 2009)). "[T]he standard by which a supervisor is held liable in his individual capacity for the actions of a subordinate is

14

extremely rigorous." Id. at 1364-65 (quoting Keith, 749 F.3d at 1048).

The Moving Defendants argue Plaintiffs' supervisor liability claim against Khaalis fails because there are no allegations she personally participated in the alleged constitutional violations, and Plaintiffs only make conclusory allegations that she had a custom or policy that resulted in deliberate indifference. (Doc. 41-1, at 12-13.) They assert Plaintiffs fail to provide a single factual allegation of a custom or policy. (Id. at 13.) In response, Plaintiffs argue Khaalis had a history of acting with deliberate indifference by failing to train and supervise. (Doc. 43, at 14 (citing Doc. 35, ¶ 103.) However, a plaintiff alleging failure to train "must demonstrate that the supervisor had actual or constructive notice that a particular omission in their training program causes [his or her] employees to violate citizens' constitutional rights, and that armed with that knowledge the supervisor chose to retain that training program." Gibbons, 124 F. Supp. 3d at 1365 (citations and quotation marks omitted). Plaintiffs' allegations do not meet this threshold. There are no allegations Khaalis was aware her training was insufficient or caused constitutional violations before the incident involving Parrish. Without such allegations, Plaintiffs fail to allege supervisor liability based on a history of widespread abuse. Thus, the Moving Defendants' motion to dismiss is **GRANTED** on this ground.

15

The Court now turns to Khaalis's personal participation because the Moving Defendants argue there are no allegations she personally participated, but Plaintiffs argue she was actually and directly involved in the constitutional deprivations Parrish suffered. (Doc. 41-1, at 13; Doc. 43, at 14.) Plaintiffs rely on the SPD's internal investigation that found Khaalis did not review Wood's case file for accuracy every ten days, in violation of SPD policies. (Doc. 43, at 14; Doc. 35, at 15.) But there are no allegations that this failure caused Parrish's constitutional violations, thus alleging Khaalis personally participated. Without allegations Khaalis personally participated in the alleged violations to Parrish, Plaintiffs' claim also fails on this ground. As such, the Moving Defendants' motion to dismiss is **GRANTED** as to Plaintiffs' claim against Khaalis for failure to train under § 1983, and Count V shall be **DISMISSED**.

2. Negligent Training and Supervision

The Moving Defendants also move to dismiss the state-law claim against Khaalis for negligent training and supervision on the basis of official immunity. (Doc. 41-1, at 13-14.) They argue training is a discretionary function, and there are no allegations of malice or intent to cause injury, so Khaalis is entitled to official immunity. (Id.) In reply, Plaintiffs assert Khaalis breached a ministerial duty to train and supervise, and she has no immunity for ministerial functions. (Doc. 43, at 15.) They argue Khaalis's

16

violation of a clear, written SPD policy illustrates a ministerial function. (Id. at 16.)

The state law allegations against Khaalis state she acted under color of state law and "breached her ministerial duty to train, supervise, and assure that Wood timely and truthfully disclosed all evidence obtained through search warrants" and "beached her ministerial duty in failing to supervise and review" Parrish's case file. (Doc. 35, at 18.)

"Official immunity applies to government officials and employees sued in their individual capacities." Williams v. Deal, No. CV 311-061, 2014 WL 4101225, at *16 (S.D. Ga. Aug. 18, 2014), rev'd in part, 659 F. App'x 580 (11th Cir. 2016). Official immunity does not apply to purely ministerial duties required by law, but it protects officials from individual liability for discretionary acts taken in the course of their duties without willfulness, malice, or corruption. Schmidt v. Adams, 438 S.E.2d 659, 659-60 (Ga. Ct. App. 1993) (citation omitted). "A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty." Middlebrooks v. Bibb Cnty., 582 S.E.2d 539, 543 (Ga. Ct. App. 2003) (citation omitted). On the other hand, discretionary acts require "the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on

17

them in a way not specifically directed." Id. (citations omitted). For procedures or instructions to be merely ministerial, they "must be so clear, definite and certain as merely to require the execution of a relatively simple, specific duty." Id. (citations omitted). Under Georgia law, police department operations, "including the degree of training and supervision to be provided its officers, is a discretionary governmental function . . . as opposed to a ministerial function." Id. at 543-44 (citations omitted).

Plaintiffs oppose the Moving Defendants' motion to dismiss, arguing Khaalis's actions were ministerial, as she simply carried out her employer's written policies. (Doc. 43, at 16.) They also argue that depending on the facts revealed in discovery, her actions may be ministerial or discretionary based on what the policies required of her. (Id. at 17.) The Court finds Georgia case law clear that training and supervising officers is a discretionary, not ministerial duty. Middlebrooks, 582 S.E.2d at 543 (citing McDay v. City of Atlanta, 420 S.E.2d 75 (Ga. Ct. App. 1992)). Plaintiffs fail to allege any policy so clear cut it requires no exercise of judgment or discretion, crossing the line into a ministerial duty. While Plaintiffs rely on Khaalis's alleged violation of an SPD policy for not reviewing Wood's case file, they insufficiently allege this was a clear and definite

ministerial act, rather than supervision required in Khaalis's position as Wood's superior.

Having found Plaintiffs' allegations against Khaalis fall into the category of discretionary functions of her role as Wood's supervisor, the Court turns to the remaining official immunity analysis. Official immunity will protect Khaalis from individual liability for these discretionary acts so long as there was no willfulness, malice, or corruption. Schmidt 438 S.E.2d at 659-60 (citation omitted). The Complaint contains no allegations of willfulness, malice, or corruption on behalf of Khaalis. As a result, Khaalis is entitled to qualified immunity on Plaintiffs' state-law claims against her, the Moving Defendants' motion to dismiss is **GRANTED** on this ground, and Count VI shall be **DISMISSED**.

### D. Loss of Consortium Claims Against the Moving Defendants

Finally, the Moving Defendants argue Love's claim for loss of consortium cannot be maintained because Plaintiffs failed to plead an underlying tort committed against Parrish. (Doc. 41-1, at 14.) They argue loss of consortium is a derivative claim, and cannot be maintained against the Moving Defendants. (Id.) In response, Plaintiffs argue they sufficiently alleged § 1983 violations resulting in tortious injuries against the Moving Defendants, so Love's derivative claim is valid. (Doc. 43, at 17-18.)

"Loss of consortium is a derivative claim and only can be sustained when a defendant is liable in tort to a spouse who is

19

unable to provide consortium." Roberson v. Seaspan Corp., 521 F. Supp. 3d 1325, 1332 n.6 (S.D. Ga. 2021) (citations omitted). Because Plaintiffs' claims against Khaalis are all dismissed, there is no potential tort liability as to Khaalis. Thus, Plaintiffs' loss of consortium claim against Khaalis is also **DISMISSED**. However, the Court found Plaintiffs sufficiently stated a claim against the City of Savannah, so the loss of consortium claim against it shall also remain. Based on these findings, the Moving Defendants' motion to dismiss Count IX is **GRANTED IN PART AND DENIED IN PART**. Count IX remains pending against the City of Savannah and Wood.

### IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that the Moving Defendants' motion to dismiss (Doc. 41) is **GRANTED IN PART AND DENIED IN PART**. Since all claims against Nicole Khaalis have been dismissed, the Clerk is **DIRECTED** to terminate her as a party to this action.

**ORDER ENTERED** at Augusta, Georgia, this 19th day of September, 2024.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA