IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| MARQUIS RAQUEL PARRISH and TYESHA LOVE, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) ) |
| ASHLEY WOOD, in her individual capacity and in her official capacity as an employee of the Savannah Police Department, NICOLE KHAALIS, in her individual capacity and in her official capacity as employee of the Savannah Police Department, and THE MAYOR AND ALDERMEN OF THE CITY OF SAVANNAH, | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

Civil Action No.: 4:23-cv-00261-JRH-CLR

## MEMORANDUM IN SUPPORT OF THE MAYOR AND ALDERMEN OF THE CITY OF SAVANNAH'S MOTION FOR SUMMARY JUDGMENT

NOW COMES Defendant The Mayor and Aldermen of the City of Savannah ("City of Savannah"), and files this Memorandum in support of its Motion for Summary Judgment showing the Court as follows:

**I.    INTRODUCTION**

This case arises out of the alleged wrongful investigation and prosecution of Plaintiff Marquis Parrish ("Parrish") by Defendant Ashley Wood, a former detective within the Savannah Police Department ("SPD"), following the murder of Charles Vinson. (*See generally*, Second Amended Complaint, Doc. 35). Plaintiffs have asserted the following claims against the City of Savannah related to this alleged misconduct:

(i) a *Monell* claim against the City of Savannah under 42 U.S.C. § 1983 in violation of his Fourth, Fifth and Fourteenth Amendment rights (Doc. 35, Count III);

(ii) a claim against the City of Savannah under 42 U.S.C. § 1983 for a failure to train Detective Wood. (*Id.* at Count IV); and

(iii) A loss of consortium claim against the City of Savannah under Georgia law (*Id.* at Count IX).

On September 19, 2024, the Court dismissed Plaintiffs' failure to train claim (Count IV) and Plaintiffs' *Monell* liability claim (Count III) to the extent it is based upon a violation of Parrish's Fifth Amendment rights or upon an alleged policy of altering or fabricating evidence. (*Id.* at pp. 2, 8). All that remains against the City of Savannah is Parrish's *Monell* claim to the extent it is based upon an alleged unconstitutional policy or practice of suppressing evidence from criminal defendants (doc. 35, ¶ 72-76) and Plaintiff Love's related loss of consortium claim (*Id.* at Count IX). As will be shown, Plaintiffs cannot come for with any evidence to support their allegation that Defendant Wood's alleged suppression of evidence was made in compliance with an unconstitutional policy, practice or custom within SPD. Accordingly, the City of Savannah is entitled to summary judgment as to all remaining claims.

## II.   STATEMENT OF RELEVANT FACTS

On April 27, 2021, Charles Vinson was reported missing, and five days later, he was found deceased from gunshot wounds on the 2900 block of Julia Law Street in Savannah, Georgia. (Doc. 35, ¶ 11). Defendant Ashley Wood, a detective with SPD, was assigned as lead detective for Mr. Vinson's case. (*Id.* at ¶ 12; Deposition of Jacob Hilderbrand, p. 8:13-19, attached hereto as Exhibit "A"). Thereafter, Defendant Wood applied for and obtained thirty-four (34) search warrants as part of her investigation into Vinson's murder. A copy of Defendant Wood's affidavit used in support of her search warrants is attached hereto as Exhibit "B." Based on information gathered during Wood's investigation, including evidence obtained via the search warrants, Parrish was

arrested on May 7, 2021 related to the murder of Mr. Vinson. (Doc. 35, ¶ 13). Following Parrish's arrest, Defendant Wood continued her investigation of the murder and initially turned over her investigative file to the Chatham County District Attorney's Office on February 11, 2022, including copies of all search warrants and evidence obtained therefrom. (2/11/22 E-mails between Wood and DA's Office, attached hereto as Exhibit "C") and a hard copy of her case file on February 15, 2022 (2/15/22 E-mail from DA's Office, attached hereto as Exhibit "D").

Defendant Wood's entire file was then provided by the DA's Office to Parrish's criminal attorney on May 26, 2022. (State of Georgia's Discovery Disclosure, attached hereto as Exhibit "E"). The State of Georgia's Discovery Disclosure provides a detailed listing of the significant amount of evidence provided by the DA's Office to Parrish's attorney, including copies of the 34 search warrants obtained by Defendant Wood. (*Id.*; Deposition of Alan Sammons[1], p. 116-117, attached hereto as Exhibit "F"). For over a year, Parrish's criminal case remained stagnant based upon what appears to be a combination of ineffective assistance of counsel by Parrish's criminal counsel[2], turnover in the DA's Office[3] and general case mismanagement within the DA's Office[4].

Parrish would ultimately obtain new counsel who finally began taking steps to move his criminal case along. (Doc. 35, ¶ 20). During new counsel's review of the discovery produced by the DA's Office, she discovered that Defendant Wood's affidavit in support of the search warrants obtained material misstatements related to Parrish's involvement in the Vinson murder. (Doc. 35,

---

[1] Alan Simmons is an investigator within the Chatham County District Attorney's Office.

[2] Deposition of Marquis Parrish, p. 58, attached hereto as Exhibit "G."

[3] Ex. F, Sammons Dep. at p. 105, ln. 2-12; DA's Office E-mail to GBI, attached hereto as Exhibit H (failure to test DNA and ballistics evidence due, in part, to short staffing within the DA's office).

[4] Ex. F, Sammons Dep. at p. 125-127.

¶¶ 18, 22; Ex. B, Search Warrant Affidavit). Of particular relevance, Defendant Wood's affidavit incorrectly stated that Parrish was seen in surveillance footage from Walmart purchasing cleaning supplies with the other suspects accused of Vinson's murder. (*Id.* at ¶ 15). In March 2023, Parrish's new counsel filed a Motion to Suppress the evidence obtained via these search warrants due to the material misstatements. (Doc. 35, ¶ 28). It was at this time that the DA's Office finally reviewed Defendant Wood's case file, including the Walmart footage they had received from Defendant Wood back in February 2022. (Ex. F, Sammons Dep., p. 105-106). Shortly thereafter, on June 16, 2023, the DA's Office elected to drop all charges against Parrish. (Doc. 35, ¶ 32).

Upon learning of Defendant Wood's actions, SPD's Internal Affairs ("IA") launched an investigation into her handling of the Charles Vinson matter. (Wood IA Report, attached hereto as Exhibit I). It was discovered by IA that Defendant Wood had made other misstatements within her search warrant affidavit, had failed to submit DNA and ballistics evidence for testing by the GBI and failed to file any search warrant returns until nearly 2 years after their execution. (*Id.* at p.7-8). Upon conclusion of the IA investigation, Defendant Wood was terminated from her employment with the SPD for a violation of numerous SPD policies. (Wood Notice of Termination, attached hereto as Exhibit "J").

III.   **LEGAL ARGUMENTS AND CITATIONS TO AUTHORITY**

   A.   **Standard of Review**

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Defendants can meet their initial burden of showing no genuine issue of material fact by showing that no dispute of material fact exists or that Plaintiff failed to present evidence in support

4

of elements of his claims on which he bears the ultimate burden of proof. *Id.* at 322-24. Plaintiff must then "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* He must do more than deny the allegations or "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, he must provide "enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

      **B.**     **The City of Savannah is Entitled to Summary Judgment as to Parrish's *Monell* Liability Claim**

In this case, Plaintiffs have alleged that Parrish was wrongfully detained and incarcerated in violation of his rights under the Fourth and Fourteenth Amendment as a result of Defendant Wood's alleged suppression of material exculpatory evidence. Plaintiffs' claim that the City of Savannah should also be held liable because SPD had a policy, custom or practice of permitting its police officers to suppress or delay evidence from being turned over to criminal defendants and their counsel.

In *Monell v. Dept. of Social Services*, the Supreme Court held that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." 436 U.S. 658, 691 (1978). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under [section] 1983." *Id.* at 694. Thus, to succeed on their claim against the City of Savannah, Plaintiffs must prove: "(1) that [Parrish's] constitutional rights were violated; (2) that the [City of Savannah] had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citation omitted). Notably, "[t]he

5

standard for holding a municipality liable under section 1983 is high." *Denham v. Corizon Health, Inc.*, 675 F. App'x 935, 944 (11th Cir. 2017).

As will be shown, the City of Savannah is entitled to summary judgment as to Plaintiffs' *Monell* claim for a number of reasons. *First*, there is no evidence that the City of Savannah had a custom or policy of suppressing evidence as alleged by Plaintiffs. *Second*, there is no evidence of deliberate indifference to Parrish's constitutional rights. *Third*, even if the alleged customs or policies existed, there is no evidence that they caused the alleged violation of Parrish's Fourth or Fourteenth Amendment rights.

### a. *No Evidence of an Unconstitutional Policy, Custom or Practice*

A plaintiff may establish a custom or policy by identifying either (1) "an officially promulgated [city] policy or (2) an unofficial custom or practice of the [city] shown through repeated acts of a final policymaker of the [city]." *Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1329-30 (11th Cir. 2003) (citing *Monell*, 436 U.S. at 690-91). Plaintiffs' claim that the City of Savannah had a policy, custom or practice of suppressing or delaying evidence from being turned over to criminal defendants by: (1) refraining from filing search warrant returns until shortly before discovery in the criminal prosecution; (2) delaying the turnover of evidence obtained through search warrants; and (3) withholding potential exculpatory evidence on SPD-issued computers and cell phones. (*Id.* at ¶ 71-74).

There is no evidence in this case that SPD had any policy which permitted or encouraged its police officers to suppress evidence as alleged by Plaintiffs. In fact, there is an SPD policy affirmatively requiring its officers to return search warrants in a timely manner and no later than five (5) days of execution of the search warrant. (SPD General Order # ADM-018, p. 2, attached hereto as Exhibit "K"). Instead, the Plaintiffs must prove that, it was an unofficial custom or

practice of SPD to suppress or delay evidence from being turned over to criminal defendants and their counsel. To do so, Plaintiffs must "establish a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law[.]" *Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1481 (1991) (internal citations and quotation omitted). "In other words, a longstanding and widespread practice is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Id.*

### i. The Alleged Policy of Failing to Timely File Search Warrants

Here, Plaintiffs assert that SPD had an unofficial custom or practice of waiting to file search warrant returns until shortly before discovery in the criminal prosecution and that such practice amounted to the unconstitutional suppression of evidence. The City of Savannah does not dispute that a former sergeant for SPD's homicide unit, Robert Santoro, coached Defendant Wood to wait until shortly before discovery in the criminal prosecution to file search warrant returns. (Deposition of Zachary Burdette, p. 36, ln. 11-21, attached hereto as Exhibit "L"). However, the evidence shows that Defendant Wood did not even act in accordance with this alleged practice as she failed to file search warrant returns until instructed to do so by the DA's Office (and her superiors) ***over a year after discovery in the criminal case.*** There is certainly no evidence that such action was taken in furtherance of an unofficial custom or practice within the SPD. In fact, the evidence shows that such behavior was not tolerated as Defendant Wood was terminated as a result. (Ex. K, Wood Notice of Termination).

Even further, there is absolutely no evidence that the "practice" of waiting to file search warrant returns within SPD's Homicide Unit was longstanding or widespread throughout the entire SPD. Instead, it appears to have been limited only to a couple of detectives within the Homicide Unit, including Defendant Wood. (Deposition of Nicole Khaalis, p. 58, ln. 1-11, attached hereto

7

as Exhibit "M"). Further, there is no evidence that the relevant policymaking official – the Chief of Police – had knowledge of this practice, or was on notice of a need to prevent such practice, such that it can be considered "***so permanent and well settled*** as to constitute a custom or usage with the force of law." *Brown*, 923 F.2d at 1481 (emphasis added).

    ii. <u>The Alleged Policies of Not Turning Over Evidence Obtained Through Search Warrants and Suppressing Evidence on SPD Computers and Cell Phones</u>

Defendant is not aware of any evidence in this case that SPD had a policy, custom or practice within the SPD to delay the turnover of evidence obtained through search warrants or to suppress evidence on SPD computers and cell phones. To the extent evidence was withheld by Defendant Wood in this case, there is nothing in the record which tends to demonstrate that this occurrence was anything more than an isolated incident. Because the theory of *respondeat superior* does not apply to *Monell* claims, Defendant Wood's isolated bad acts cannot give rise to liability against the City of Savannah. *Oklahoma City v. Tuttle*, 471 U.S. 808, 831 (1985) (BRENNAN, J., concurring in part and concurring in judgment) ("To infer the existence of a city policy from the isolated misconduct of a single, low-level officer, and then to hold the city liable on the basis of that policy, would amount to permitting precisely the theory of strict respondeat superior liability rejected in *Monell*."); *McDowell v. Brown*, 392. F.3d 1283, 1291 (11th Cir. 2004) (isolated incidents do not demonstrate evidence of a "persistent or widespread" policy).

  b. *No Evidence of Deliberate Indifference*

To succeed on their *Monell* claim, Plaintiffs "must show that the municipal action was taken with the requisite degree of culpability, *i.e.*, that the municipal action was taken with 'deliberate indifference' to its known or obvious consequences." *Davis v. DeKalb County School Dist.*, 233 F.3d 1367, 1375-76 (11th Cir. 2000) (quotations and citations omitted). In other words,

the municipality must have a deliberate intent to suppress evidence from criminal defendants. *See McDowell v. Brown*, 392 F.3d 1283, 1291 (11th Cir. 2004). A pattern of similar constitutional violations is generally necessary to demonstrate deliberate indifference. *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (2011); *McDowell*, 392 F.3d at 1290–91. Further, there must be evidence that the municipality knew or should have known about the pattern of constitutional violations. *Williams v. Fulton County School District*, 181 F. Supp. 3d 1089, 1122 (N.D. Ga. Mar. 31, 2016). "That knowledge may come from actual notice, or may be imputed via constructive notice under some circumstances through notice to an appropriate senior official." *Id.*

Even if any of the customs or practices alleged by Plaintiffs existed, which they do not, Plaintiffs cannot come forth with any evidence to support the requisite culpability (*i.e.,* knowledge of prior constitutional violations caused by the customs or practices) for the City of Savannah to be held liable under *Monell*. For this reason alone, the City of Savannah is entitled to summary judgment as to Plaintiffs' *Monell* claims.

   c. ***No Evidence That The City of Savannah Caused Parrish's Alleged Constitutional Violations***

"A plaintiff must prove causation by demonstrating that the municipality's 'deliberate conduct ... was the moving force behind [his] injury....' " *McDowell*, 329 F.3d at 1292 (quoting *Brown*, 520 U.S. at 404). Here, even if the customs and practices alleged by Plaintiffs existed, which they do not, there is no evidence that they were the "moving force" behind the alleged violations of Parrish's rights under the Fourth and Fourteenth Amendments.

    i. <u>Fourth Amendment</u>

It is apparent that Plaintiffs are under the mistaken belief that the failure to file a search warrant is tantamount to the suppression of evidence. The purpose of filing a search warrant is two-fold: (1) to inform the issuing judge whether the search warrant was or was not executed; and

9

(2) to provide ***an inventory*** of the items seized pursuant to the warrant. *See* O.C.G.A. § 17-5-29. Contrary to Plaintiffs' assertion, the filing of a return does not make the seized items, even if potentially exculpatory, available for inspection by the accused and his counsel. Instead, the items are kept as evidence by the investigating officer as part of his or her investigation into the alleged crimes. Once the investigation is concluded, the evidence is then provided to the prosecuting attorney for potential disclosure to the accused and his counsel irrespective of whether a search warrant return has been filed by the investigating officer.

Because of the purely procedural purpose of filing a search return warrant, it has long been established in Georgia that the making and filing of a search warrant return is "merely a ministerial act not affecting the substantive rights of the accused" and does not affect the validity of the search warrant itself. *Manemann v. State*, 147 Ga. App. 747, 747 (1978); *See also Williams v. State*, 125 Ga. App. 170, 171-172 (1971). In fact, the Eleventh Circuit has expressly affirmed that failure to file a search warrant return is a procedural defect and "certainly not a violation of any Fourth Amendment right." *United States v. Baty*, 486 F.2d 240, 243 (5th Cir. 1973)[5].

In the case at hand, the alleged violation of Plaintiff's Parrish's Fourth Amendment rights would have still occurred regardless of whether Defendant Wood timely filed the returns as required by SPD policy. The validity of the search and/or arrest warrant themselves is what may potentially give rise to a Fourth Amendment violation, because the warrants (not the returns) are the vehicles used to conduct a search and seizure of Parrish's property and person. *See Williams v. Aguirre,* 965 F.3d 1147, 1167 (11th Cir. 2020). To the extent a Fourth Amendment violation occurred, it was caused solely by the misstatement(s) contained within Defendant Wood's search

---

[5] The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981. *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).

warrant affidavit, including the statement that Parrish was seen at a Walmart purchasing cleaning supplies with the other suspects accused of Vinson's murder. It was not the result of Defendant Wood failing to file search warrant returns or otherwise withholding evidence from being turned over to Parrish and his counsel.

      ii. Fourteenth Amendment

Plaintiffs' *Monell* claim against the City of Savannah based on the Fourteenth Amendment likewise fails as it would require the Court to ignore long-standing law that investigating police officers have no duty under the Fourteenth Amendment to disclose exculpatory and impeachment evidence to criminal defendants and/or their counsel. *See McMillan v. Johnson*, 88 F.3d 1554, 1567 (11th Cir. 1996). Instead, "[i]nvestigators satisfy their obligations under *Brady*[6] when they turn exculpatory and impeachment evidence over ***to the prosecutor***." *Id.* (emphasis added). Because Defendant Wood had no constitutional obligation to turn over evidence directly to Parrish, any adherence to an alleged custom or practice of withholding evidence from criminal defendants cannot be said to have caused a violation of Parrish's Fourteenth Amendment rights.

In any event, the evidence in this case clearly demonstrates that Defendant Wood turned over her investigative file, including the search warrants and alleged exculpatory evidence (e.g., the Walmart footage), to the District Attorney's office in satisfaction of her obligation under *Brady*. This occurred on February 15, 2022, shortly after Defendant Wood concluded her investigation of the Vinson murder. (Ex. D, Wood E-mail to DA's Office) The record also shows that this evidence was then provided by the District Attorney's Office to Parrish's criminal counsel

---

[6] In *Brady v. Maryland*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963).

11

on May 26, 2022 upon demand in the underlying criminal prosecuting. (Ex. E, Discovery Disclosure). While it is unfortunate that neither the District Attorney's Office nor Parrish's criminal counsel reviewed Defendant Wood's case file for nearly a year, such delay is not contributable to an alleged policy, practice or custom of SPD. Therefore, the City of Savannah cannot be held liable for the alleged violation of Plaintiff's Parrish's Fourteenth Amendment rights.

### C. The City of Savannah is Entitled to Summary Judgment as to Plaintiff Tyesha Love's Loss of Consortium Claim

In Georgia, "a wife has an independent cause of action for the loss of consortium of her husband due to a tortious injury inflicted upon him." *Walden v. Coleman*, 105 Ga. App. 242, 243 (1962). Accordingly, a loss of consortium claim is generally held to be a "derivative" claim arising out of a tort committed against the plaintiff's spouse. *Canberg v. City of Toccoa*, 255 Ga. App. 890, 892 (2002). Because the City of Savannah is entitled to summary judgment as to Parrish's underlying *Monell* claim, it is also entitled to summary judgment as to Plaintiff Love's derivate claim for loss of consortium.

## IV. CONCLUSION

For the foregoing reasons, the City of Savannah respectfully request that the Court enter summary judgment in their favor as to all remaining claims.

Respectfully submitted this 13th day of January 2025.

                    **HUNTER, MACLEAN, EXLEY & DUNN, P.C.**

                    */s/Taylor L. Dove*
                    Bradley M. Harmon
                    Georgia Bar No. 327097
                    Taylor L. Dove
                    Georgia Bar No. 993210
                    *Attorneys for City of Savannah*

200 East Saint Julian Street
Post Office Box 9848
Savannah, Georgia 31412-0048
Telephone: 912.236.0261
Facsimile: 912.236.4936
Email: BHarmon@HunterMaclean.com
Email: TDove@HunterMaclean.com

                                **OFFICE OF THE CITY ATTORNEY**

                                */s/ R. Bates Lovett*
                                R. Bates Lovett
                                Georgia Bar No. 459568
                                Jennifer N. Herman
                                Georgia Bar No. 327017

P.O. Box 1027
Savannah, Georgia 31402
Telephone: 912.525.3092
Facsimile: 912.525.3267
Email: BLovett@savannahga.gov
Email: JHerman@savannahga.gov

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing **MEMORANDUM IN SUPPORT OF DEFENDANT THE MAYOR AND ALDERMEN FOR THE CITY OF SAVANNAH AND NICOLE KHAALIS'S MOTION FOR SUMMARY JUDGMENT** by using the CM/ECF system which will send a notice of electronic filing to all parties.

Respectfully submitted this 13th day of January 2025.

**HUNTER, MACLEAN, EXLEY & DUNN, P.C.**

*/s/Taylor L. Dove*
Bradley M. Harmon
Georgia Bar No. 327097
Taylor L. Dove
Georgia Bar No. 993210
*Attorneys for City of Savannah*

200 East Saint Julian Street
Post Office Box 9848
Savannah, Georgia 31412-0048
Telephone: 912.236.0261
Facsimile: 912.236.4936
Email: BHarmon@HunterMaclean.com
Email: TDove@HunterMaclean.com