**Exhibit I to Memorandum in Support of The Mayor and Aldermen of the City of Savannah's Motion for Summary Judgment**



SavannahPD.org

| | **ADMINISTRATIVE INVESTIGATION** <br> **Incident Report** |
|---|---|
| **OPS NUMBER:** | **23-0041** |
| **EMPLOYEE:** | **Corporal Ashley Wood** |
| **DATE:** | **December 23rd, 2022** |
| **INVESTIGATOR:** | **Sergeant Kaishawn Samuell** |

The purpose of this investigative narrative is to document an investigation into CPL Wood's (PR # 62333) investigation of an Aggravated Assault and a Homicide in which reports and BWC footage were conflicting.

**Friday, March 31st, 2023:**

I met with Assistant District Attorney DeBlasiis and Investigator Sammons, who is also with the District Attorney's Office. During the meeting, I was shown a homicide report submitted by Detective Wood (CRN 210502037). On page 5 of the report, Detective Wood documents an interview that she had with Ms. Tyesha Love in reference to an aggravated assault that she was the victim of (CRN 210501027), which was related to the homicide.

Detective Wood documented the following in her ARS narrative: *Tyesha Love explained to me that Friday night, Marquis and Javaris got into a verbal argument and asked Javaris to leave. Tyesha Love stated that Javaris grabbed his gun and left the apartment. She said that on Saturday morning she was in her bedroom cleaning up and was by the window when suddenly, she heard gun shots hitting her second-floor apartment. **She glanced out the 2nd floor window and saw Javaris Roundtree shooting towards her apartment.** She then stated, a bullet came through her window striking her in the arm.*

I then reviewed the BWC footage of CPL Wood and Detective Hilderbrand interviewing Ms. Love. During the interview Detective Hilderbrand asks Ms. Love if she knows who shot her (11:35). Ms. Love gives a sigh and is led away from bystanders by Detective Wood and Detective Hilderbrand. Detective Wood tells Ms. Love that all she needs to do is give her a nickname. Ms. Love appears to be hesitant when she is asked the question. Detective Wood then asks Ms. Love if "Scooter" (Javaris Roundtree) shot her, and Ms. Love gives a slight head nod.

Detective Wood then walks Ms. Love further away from bystanders and Detective Hilderbrand is not present. Ms. Love stated that the day she got shot, she was in her room near the window and heard gunshots (16:34). She stated that when she got shot, she hit the ground. Detective Wood

1

# SAVANNAH POLICE
To Serve, Protect and Build Trust

*SavannahPD.org*

asked Ms. Love if she looked out the window when she got shot, to which she replied that she just hit the ground after she was shot. Detective Wood then asked Ms. Love if she saw anybody walking up before the gunshots. Ms. Love replied no again.

Investigator Sammons then explained how Detective Wood had not yet submitted crucial evidence to the GBI in reference to the homicide. He also stated that Detective Wood had not completed search warrant returns in reference to the homicide investigation.

Investigator Sammons also mentioned that CPL Wood did not go to court after being subpoenaed on March 22nd, 2023. He stated that he was told that CPL Wood advised that she would not be attending court due to a "work related operation".

There is no mention of search warrants, search warrant returns, or evidence submission in Detective Wood's investigative reports in reference to the aggravated assault or the homicide in ARS.

Corporal Wood was placed on administrative leave on this date as well. CPL Wood was advised of the investigation. She was advised that she needed to communicate with Investigator Sammons and to see what the District Attorney's office needed for the upcoming trial for this case.

In the 2 weeks following being placed on administrative leave, Corporal Wood submitted evidence for this case to the GBI and got appointments with Superior Court Judges to get search warrant returns for this case completed.

### Thursday, April 13th, 2023 at approximately 1330 hours:

Corporal Wood came to the IA Office and a formal interview was conducted. Prior to the interview, Corporal Wood was given a copy of her report for CRN 210502037. She was also allowed to watch BWC footage of her interview with Tyesha Love. Corporal Wood was then read Garrity and the notification of general order # OPS-016. She signed both forms and stated she understood them. The interview was audio recorded and added to the case file for this investigation. The following is a summary of the interview. Corporal Wood was advised that the purpose of the investigation was to figure out why there were discrepancies in her report when compared with the BWC footage. Corporal Wood confirmed that she read the report she placed in ARS under CRN 210502037, specifically where it says that Ms. Love identified Javaris Roundtree as the person who shot her because she saw him shooting at her. She was then asked why the ARS reports says that Ms. Love saw who shot her, but in the BWC footage, Ms. Love states to Corporal Wood that when the shooting started, she got down on the floor and did not see who was shooting. Corporal Wood is then shown again, the footage from the BWC where Ms. Love stated she did not see who shot her.

2



Corporal Wood was asked why there was a discrepancy in the report and the BWC footage. She responded by saying that when she asked Ms. Love if "Scooter" shot her, Ms. Love's body language told her that "Scooter" did shoot her. She stated that she believed Ms. Love did not verbalize that "Scooter" shot her because "Scooter's" baby mama was 10 feet away. Corporal Wood stated that Ms. Love's body language indicated to her that Ms. Love saw "Scooter" shoot her. Corporal Wood then stated that later in the interview, Ms. Love changed her story. She stated that when she typed her Detective supplemental report, she typed it from memory without watching the BWC footage. When asked how long after the incident did she swear out warrants on Javaris Roundtree, she stated that she did not remember. When asked if she swore the warrants out via Cloud Gavel or if she went to see a Judge in person, she replied by saying she did not remember. When asked who her supervisors were at the time of this incident, Corporal Wood stated that Sergeant Khaalis and Lieutenant Burdette were the supervisors of the unit at that time. When asked why a case file was not submitted for the homicide and aggravated assault investigations, Corporal Wood responded by saying that she had been transferred to the Gang Unit and forgot to submit the case file.

*(This incident occurred in May of 2021 and Corporal Wood was transferred to the gang unit in October of 2021)*

Corporal Wood was then asked why search warrant returns were just getting done if the incident happened 2 years ago. She replied by saying that she was trained to hold off on doing search warrant returns until the case was about to go to trial and just before the defense attorney filed for discovery. She stated that was standard practice for the homicide unit at that time. She then stated that the District Attorney's Office had a copy of the case file for this incident.

## Friday, April 14th, 2023, at approximately 1000 hours:

Corporal Hilderbrand came to the IA Office and a formal interview was conducted. Corporal Hilderbrand was then read Garrity. He signed the form and stated he understood it. The interview was audio recorded and added to the case file for this investigation. The following is a summary of the interview. When asked if he recalled the incident at 10714 Abercorn Street in 2021, Corporal Hilderbrand stated that he did not remember details about the case off the top of his head. He was then shown BWC footage of his and Corporal Wood's interview with Ms. Love. After reviewing the BWC footage, Corporal Hilderbrand was asked if he was present during any time that Ms. Love verbalized who shot her. He responded by saying that he did not recall and requested to view the entire BWC footage from the interview with Ms. Love. He was then asked about when he first started in the homicide unit, if he was trained not to turn in search warrants and evidence until right before discovery from the defense. He replied by saying that the standing practice for the unit when he started there was not to turn in search warrant returns to the courts until right before discovery, so that the defense could not have access to them before the District Attorney's office wanted the defense to have them. Corporal Hilderbrand stated that the practice of doing this was initiated when former SPD Sergeant Santoro was supervising the

3

unit. Corporal Hilderbrand stated that it was never standard practice to not submit evidence immediately to be tested by GBI.

Corporal Hilderbrand then was allowed the entire BWC footage for this incident. He confirmed that in the beginning of the interview, when Ms. Love was asked if "Scooter" was the person who shot her, she put her head down and nodded to indicate yes. Corporal Hilderbrand stated that when he asked Ms. Love it nodding her head meant yes, she nodding her head again. Corporal Hilderbrand also confirmed that Corporal Wood walked away with Ms. Love to complete the interview and he did not know what was said during that portion because he was standing by with "Scooter's" baby mama.

### Monday, April 17th, 2023 at approximately 1118 hours:

Sergeant Khaalis came to the IA Office and a formal interview was conducted. Prior to the interview, Sergeant Khaalis was given a copy of Corporal Wood's report for CRN 210502037. She was also allowed to watch BWC footage of the interview of Tyesha Love, conducted by Corporal Wood and Corporal Hilderbrand. Sergeant Khaalis was then read Garrity and the notification of general order # OPS-016. She signed both forms and stated she understood them. The interview was audio recorded and added to the case file for this investigation. The following is a summary of the interview. Sergeant Khaalis confirmed that she and Lt. Burdette were supervisors of the homicide unit during this incident. When asked how often she received updates on homicide cases that are being actively worked, she replied by saying that it depends, and it is case by case. When asked how long after an arrest is made should a case file be turned in for supervisor review, she stated 60 days, but the DA's office wants them within 90 days. She stated that things like search warrant returns and results from evidence submissions probably would not be in the case file within the 60-90 day period, but they would be added later when the detective got results. When asked if she remembered supervisor approving Corporal Wood's report, she confirmed that she remembered approving it. When asked if she watched the BWC footage of the interview Corporal Wood and Corporal Hilderbrand conducted with Ms. Love, she stated that she did not review the footage. Sergeant Khaalis agreed that there were discrepancies in Corporal Wood's report after viewing the BWC footage of the interview for the first time. She stated that Javaris Roundtree should not have been arrested based off what she saw on the BWC footage.

When asked about evidence submission and how the supervisors are updated on the detective's cases, Sergeant Khaalis stated that yes, things like DNA swabs and shell casings should have been turned in to GBI immediately. She stated that in 2021, the DA assigned to the homicide case would usually send an email, with a list of things that still needed to be done for the case. She stated that she never got an email or was advised on any further actions needing to be taken by Corporal Wood.

# SAVANNAH POLICE
To Serve, Protect and Build Trust

*SavannahPD.org*

When asked about search warrant returns not being turned in until right before trial for discovery by the defense, Sergeant Khaalis replied by saying that former SPD Sergeant Santoro initiated that practice before she went to the unit. She stated that her chain of command did not seem to have a problem with it, so she didn't think it was a problem. She stated that currently, the homicide unit turns the search warrant returns in as soon as the requested items are provided to the detective.

When asked if there was a process for if case files were turned in, Sergeant Khaalis stated that it is tracked on a excel spreadsheet on the OneDrive. When asked if she has communicated with Corporal Wood about getting the case file for this investigation turned in over the last 2 years, she stated that she had, but could not remember if it was via email or phone call.

SGT Khaalis provided me with emails showing a mid-year work plan for CPL Wood, which addressed expectations for her updates for CRN 210501027 and CRN 210502037. The email indicated that reports needed to be uploaded to ARS and a casefile needed to be submitted for both investigations. SGT Khaalis also provided an email correspondence with CPL Wood from September 1st 2021, reminding CPL Wood that she still had not submitted her report for the homicide in ARS.

### Thursday, April, 20th, 2023, at approximately 1003 hours:

Lieutenant Burdette came to the IA Office and a formal interview was conducted. Lieutenant Burdette read the report Corporal Wood submitted in reference to this incident (CRN 210502037). He then watched the BWC footage of the interview of Tyesha Love, conducted by Corporal Wood and Corporal Hilderbrand. Lieutenant Burdette then read Garrity. He signed the form and stated he understood it. The interview was audio recorded and added to the case file for this investigation. The following is a summary of the interview. Lieutenant Burdette confirmed that he was Sergeant assigned as a supervisor in the homicide unit in May of 2021. When asked if it was common practice for supervisors to review BWC footage along with detective supplemental reports, Lieutenant Burdette stated that it was not. He stated that supervisors just read the detectives reports. He stated that when arrests were made in these cases, detectives would let him and/or Sergeant Khaalis know, so the news could be passed along through the chain of command. When asked if there would have been anything done differently if Lieutenant Burdette would have viewed the BWC footage after viewing the ARS report in 2021, Lieutenant Burdette stated that there was no probable cause for an arrest if he would have viewed the BWC footage in 2021. Lieutenant Burdette stated that he got promoted to Lieutenant in July of 2021 and had no further involvement with the homicide unit until he was recently transferred back as the unit commander.

**1305 hours:**

Corporal Wood came to the Internal Affairs office to be re-interviewed. Corporal Wood confirmed that she remembered Garrity and was told it was still in effect. The following is a summary of the interview. When asked how long after the interview with Ms. Love did she type her report, Corporal Wood stated it was maybe a month later. When asked what her probable cause was for the aggravated assault arrest on Javaris Roundtree, she stated that Ms. Love's body language during the interview told her that Javaris Roundtree shot her, even though she did not see him shoot her. Corporal Wood stated that when she wrote the report for this incident, she wrote it from memory and did not review the BWC footage of the incident. When asked what she testified to when getting the warrant sworn out the next day to the Judge, she stated that she did not remember. When asked if Corporal Wood told ADA DeBlasiis that MS. Love told her that Javaris Roundtree shot her, Corporal Wood stated that she told ADA DeBlasiis she did not remember. When asked specific questions pertaining to her probable cause and overall investigation of the homicide (CRN 210502037) Corporal Wood stated that she did not remember. When asked about submitting evidence (specifically shell casings, guns and DNA) to the GBI to be processed, Corporal Wood said that she just forgot to do it. When asked about why she did not interview 2 of the subjects she had warrants out on for the homicide, she stated that she did not feel the need to interview them at that point. She then stated that she was on her back porch, screening her porch in and drinking a beer when the arrests were made. When asked about supplemental reports that should have been typed after she got information obtained via search warrants (i.e., phone records and tower dump records), Corporal Wood replied that she didn't know why she didn't type the supplemental reports.

**Friday, April 28th, 2023**

I received information that a press released was aired and posted on news outlets. The article alleged that CPL Wood used false information to obtain warrants in the homicide investigation she conducted in 2021 (CRN 210502037). The article stated that CPL Wood obtained 34 search warrants, all of which stated that Marquise Parrish was with co-defendants purchasing cleaning supplies at Walmart, and that CPL Wood viewed security footage confirming that. The article alleges that Mr. Parrish's attorneys viewed 67 hours of Walmart security footage and never saw Mr. Parrish anywhere in the footage.

**Monday, May 8th, 2023, at approximately 1400 hours:**

CPL Wood came to the Internal affairs office to be interviewed, in reference to the allegations from the press release. CPL Wood was reminded of the Garrity warning that she signed and advised that it was still in effect. The interview was audio recorded and added to this case file. The following is a summary of the interview.



*SavannahPD.org*

CPL Wood confirmed that she knew about the press release, but stated she did not read it. CPL Wood was told that the press release alleged that she obtained arrest and search warrants under false pretenses. She was asked if she saw Marquis Parrish on the surveillance footage at the Walmart across from Savannah Mall, along with the other 3 co-defendants for the homicide case she investigated (CRN 210502037). She stated that she did not remember, because it had been so long ago. She was then provided a copy of her police report, focusing on page 8 where she reports the following:

 *" I also know that on 4/26/2021 Carlos Roundtree, Aaliyah Duncan and Marquis Parrish went to the Walmart Super Center located at 14030 SR-204 E to purchase cleaning supplies, towels, wash rags, trash bags and clothes. I saw the video footage captured by Walmart security camera's."*

CPL Wood was asked how she knew Marquis Parrish was at Walmart on the date in question. She stated that she did not remember, but it could have been someone that she interviewed that told her that Marquis was there. She stated that she remembers seeing Aaliyah Duncan on the surveillance footage, but may have placed the other individuals, to include Marquis Parrish, at the Walmart through interviewing co-defendants.

## Facts and Findings

- On March 31st, 2023, I met with Assistant District Attorney DeBlasiis and Investigator Sammons, who is also with the District Attorney's Office. During the meeting, I was shown a homicide report submitted by Detective Wood (CRN 210502037).

- On page 5 of the report, Detective Wood documents an interview that she had with Ms. Tyesha Love in reference to an aggravated assault that she was the victim of (CRN 210501027), which was related to a homicide. Detective Wood indicated in her report that Ms. Love saw Javaris Roundtree shooting at her apartment.

- Upon review of the BWC interview between Ms. Love and Detective Wood, Ms. Love states that she did not see who was shooting at her apartment, because she fell to the ground when she heard the shooting happening.

- Detective Wood still had evidence that was not submitted to GBI to be processed in reference to this incident.

- Defense Attorneys alleged that Detective Wood obtained search warrants and arrests warrants based on statements given to the courts that were not true.

# SAVANNAH POLICE

To Serve, Protect and Build Trust

*SavannahPD.org*

- Detective Wood did not go to court after being subpoenaed on March 22nd, 2023. She advised the DA's office that that she would not be attending court due to a "work related operation".

- Detective Wood did not complete tasks in reference to the homicide and the aggravated assault investigations that were given to her by her supervisor at the time (Sergeant Khaalis).

- Upon completion of my investigation, CPL Wood was cited with the following:

    o ADM-004, Oath of Office, Ethics, and Conduct
        - Knowledge of rules and laws
        - Truthfulness/honesty

    o ADM-018, Search and Seizure
        - Requirements for a search warrant return

    o OPS-001, Criminal Investigations
        - Follow-up Investigations
        - Case file management

    o OPS-033, Court Protocol
        - Superior Court / Electric Notification/Subpoena
        - Preparation for Court
        - Courtroom Demeanor and Rules

    o OPS-002, Organization and Direction
        - Employee Responsibility

## ADM-004 , OATH OF OFFICE, ETHICS, AND CONDUCT

**Truthfulness/Honesty**
**Knowledge of rules and Laws**

- Corporal Wood swore out arrests warrants on Javaris Roundtree for aggravated assault even though he was not properly identified by the victim.

8



- Corporal Wood swore out arrest warrants and search warrants on Marquis Parrish testifying that she knew he was seen on security footage at Walmart with co-defendants, when he was actually not seen on security footage.

## ADM-018, SEARCH AND SEIZURE

**Searches with a warrant**

-Corporal Wood did not turn in search warrant returns within 5 days of receiving items listed in search warrants submitted.

## OPS-001, CRIMINAL INVESTIGATIONS

**Follow-up Investigations**
**Case file management**

-Corporal Wood did not submit evidence to be processed at the GBI until April 2023

-No supplemental reports were written and loaded in ARS in reference to what was received from the execution of search warrants, submitting of evidence to GBI

-Corporal Wood did not review supplemental reports and had no knowledge of a suspect vehicle or a potential additional witness in the aggravated assault case.

-No case file was turned into SPD case file management until April 2023.

## OPS-033, COURT PROTOCOL

**Electric Notification/Subpoena**
**Superior Court**

- Corporal Wood did not go to court after being subpoenaed on March 22nd, 2023, for a motion hearing. Corporal Wood advised that she would not be attending court due to a "work related operation".

**Preparation for Court**

-Corporal Wood did not submit evidence to be processed with the GBI. She also did not review supplemental reports in reference to either case.

9



-Corporal did not have a completed case file nor did she have lab results due to her failure to submit evidence collected for testing at the GBI.

**Courtroom Demeanor and Rules**

-Corporal gave inaccurate testimony when applying for arrest warrants and search warrants

**OPS-002, ORGANIZATION AND DIRECTION**

**Employee Responsibility**

**-**Corporal Wood did not complete tasks in reference to the homicide and the aggravated assault investigations that were given to her by her supervisor at the time (Sergeant Khaalis).

-Sergeant Khaalis was cited with the following:

- o   OPS-002, Organization and Direction
  - Supervisor Responsibility

- o   OPS-001, Criminal Investigations
  - Case file management

**OPS-002, ORGANIZATION AND DIRECTION**

**Supervisor Responsibility**

-Sergeant Khaalis did not ensure that Corporal Wood submitted a complete case file and accurate report for this investigation.

**OPS-001, CRIMINAL INVESTIGATIONS**

**Case file management**

-Sergeant Khaalis did not review Corporal Wood's case file for accuracy every 10 days.



SavannahPD.org

11