IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| MARQUIS RAQUEL PARRISH and TYESHA LOVE,<br><br>    Plaintiffs,<br><br>  vs.<br><br>ASHLEY WOOD, in her individual capacity and in her official capacity as an employee of the Savannah Police Department and THE MAYOR AND ALDERMEN OF THE CITY OF SAVANNAH,<br><br>    Defendants | Case No.:   4:23-cv-00261-JRH-CLR |

**DEFENDANT WOOD'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

NOW COMES Defendant Ashley Wood and files this Reply Brief in support of her Motion for Summary Judgment, showing the Court as follows:

**Defendant Wood Is Entitled to Summary
Judgment On Plaintiff's Brady Claims**

Plaintiff argues that Defendant Wood is not entitled to summary judgment on Plaintiff's civil Brady claim. In support of that argument, Plaintiff cites Rimmer v. Sec'y, Florida Dep't of Corr., 876 F.3d 1039, 1054 (11th Cir. 2017) for the proposition that to establish a Brady claim, Plaintiff must only prove: "(1) that the evidence was favorable to the [plaintiff], either because it is exculpatory or impeaching; (2) that the prosecution suppressed the evidence, either *willfully or inadvertently*; and (3) that the suppression of the evidence resulted in prejudice to the [plaintiff]."(emphasis added).  However, Rimmer was decided in the context of a habeas petition under 28 U.S.C.S. § 2254, and

1

the Eleventh Circuit has been clear that an inadvertent Brady violation is insufficient to establish civil liability pursuant to 42 U.S.C. § 1983.

In Porter v White, 483 F.3d 1294, 1308 (11th Cir. 2007), the Eleventh Circuit held that there was no viable cause of action for "mere negligence or inadvertence on the part of a law enforcement official in failing to turn over [exculpatory or impeachment] evidence to the prosecution." Investigators only have a clearly established duty not to have prevented prosecutors from having access to Brady material. See id. at 1304 n.5 (stating that, "if the officials intentionally withheld what they knew to be [exculpatory] material, then they violated clearly established law," but recognizing it not clearly established during the relevant time that "less-than-intentional conduct would suffice").

More recently in Polk v. Nugent, 554 Fed. Appx. 795, 799 (2014), the Eleventh Circuit addressed civil Brady claims against investigators. The court noted that "at most [the officers] did not follow up on whether evidence they placed in the case file and the results of the requested testing reached prosecutors. Law enforcement officers, however, have no clearly established constitutional duty to do so. Polk, 554 Fed. Appx. at 799.

The facts in this case do not support the allegation that Defendant Wood intentionally withheld evidence that she knew to be exculpatory. At most, Defendant Wood may have made errors, or she may not have followed up on some items, but there is no evidence she intentionally withheld evidence she knew to be exculpatory. On June 21, 2021, the District Attorney's Office requested body camera footage, which as supplied. (Sammons depo. p. 68; Ex. 3). On February 8, 2022, just over seven months after the July 8, 2021, Indictment, ADA Gibson emailed Defendant Wood

2

requesting her case files. (Sammons depo. p. 68; Ex. 3). Those case files were promptly turned over on February 16, 2022. (Sammons depo. p. 68; Ex. 3). On May 26, 2022, the District Attorney made the first discovery disclosure to defense counsel, which included the Walmart videos. (Sammons depo. p. 113, Ex. 10 (Doc. 64-7); Ex 3). As argued by the City in its Motion for Summary judgment, it is unfortunate that neither the District Attorney's Office nor defense counsel reviewed the evidence for an extended period of time. Regardless, there is no evidence, however that Defendant Wood intentionally failed to turn over evidence to the prosecutors for the purpose of suppressing exculpatory information.

As stated in Porter v. White, the clearly established duty was to not *intentionally* prevent prosecutors from having access to Brady material. The Porter Court held that "mere negligence or inadvertence on the part of a law enforcement official in failing to turn over Brady material to the prosecution, which in turn causes a defendant to be convicted at a trial that does not meet the fairness requirements imposed by the Due Process Clause, does not amount to a "deprivation" in the constitutional sense. Thus, a negligent act or omission cannot provide a basis for liability in a § 1983 action seeking compensation for loss of liberty occasioned by a Brady violation." Porter, 483 F.3d at 1308.

There is no evidence that Defendant Wood intentionally prevented access to Brady material. There is no clearly established law delineating what length of a delay in turning over evidence would constitute a Brady violation. Presumably that is because a civil Brady requires proof of *intentional* withholding of evidence for the purpose of suppressing exculpatory evidence. Thus, the intentional withholding, not the length of

the delay in disclosure, is what is crucial in establishing a civil <u>Brady</u> claim. The record establishes that when the District Attorney's Office requested information, Defendant Wood provided the requested information. (Doc. 73-5, Ex. 5). As shown by Exhibit 5, Defendant Wood did not conceal evidence; she cooperated in the production and disclosure of evidence. There certainly is no evidence that she intentional withheld evidence that she knew to be exculpatory.

### Defendant Wood Is Entitled to Summary Judgment
### On Plaintiff's Malicious Prosecution Claims

Plaintiff's malicious prosecution claims fail, because there is no evidence of intentional misconduct on the part of Defendant. Plaintiff has identified a number of factual assertions made by Defendant Wood that Plaintiff contends have been shown to be false. The issue, however, is whether or not, even absent any incorrect statements, there was sufficient probable cause for the arrest of Plaintiff Parrish.

Plaintiff has identified several statements that Plaintiff asserts are false. Plaintiff asserts that "Defendant Wood erroneously averred in her search warrant affidavit that Mr. Parrish claimed he had never been inside the red rental car believed to be involved in the murder of Mr. Vinson. Mr. Parrish had, however, admitted that he drove the rental car to the airport." (Doc 76, p. 5). However, the fact that Mr. Parrish admitted to being in the car involved in the murder of Mr. Vinson only strengthens rather than weakens Defendant Wood's probable cause.

Plaintiff also asserts that "Defendant Wood falsely claimed in her search warrant affidavit that Mr. Parrish requested Antwane Snipe, the renter of the car, to extend the rental. Such request was actually made by another of Mr. Parrish's co-defendants, Carlos Roundtree. (Doc. 76, p. 5). Regardless of the accuracy of this statement, the

4

remaining statements by Mr. Carlos Roundtree in Defendant Wood's report clearly support probable cause.  (See Doc. 73-1, Ex. 1, pp. 4 – 5, 8).

Plaintiff asserts that "Defendant Wood incorrectly swore in her search warrant affidavit that Antwane Snipe saw Mr. Parrish in possession of a firearm on or about the night of the Vinson murder. Ms. Snipe never mentioned Mr. Parrish possessing a firearm." (Doc. 76, p. 5).  Regardless of the accuracy of that statement, Carlos Roundtree stated that on the day before Charles Vinson's body was discovered, he saw Marquis Parrish with a revolver tucked in his waistband, and he saw two handguns in the center console of the vehicle.  (Doc. 73-1, Ex. p. 5).  A mistake about who was the source of the information of Plaintiff Parrish possessing firearms does not vitiate Defendant Woods probable cause for the arrest of Plaintiff.

Plaintiff states that "Defendant Wood stated in her search warrant affidavit that she reviewed Walmart surveillance footage and saw Mr. Parrish purchasing cleaning supplies with the other suspects accused of Mr. Vinson's murder. Defendant Wood never saw Mr. Parrish on the security camera footage." (Doc 76, p. 6).  The source for Plaintiff's assertion is the Internal Affairs report.  (Doc. 64-11, p. 9).  In the Internal Affairs report, Defendant Wood is not quoted as saying she saw Plaintiff Parrish on the security video.  Defendant Wood never stated she saw Plaintiff Parrish on security footage at Walmart.  (Doc. 64-11, p. 8).  Plaintiff has accused Defendant Wood of making a false statement (seeing Plaintiff Parrish on the video) when Defendant Wood never made the statement in the first place.

In her report, Defendant Wood states that "Antwane Snipe [said] that at 8:00 AM she spoke to Carlos and asked him where he was because the rental vehicle needed to

5

be turned in by 11:00 AM [on April 26], Carlos told her that he was at Walmart with his cousin (Marquis), Javaris and Layah." (Doc. 73-1, p. 8). Carlos Roundtree told Defendant Wood that "around 8:00 AM Monday morning (April 26, 2021) he took Javaris, Aaliyah and Marquis (who followed them in his vehicle) to Walmart across from the Savannah Mall. Carlos Roundtree stated, Javaris and Aaliyah purchased cleaning supplies, towels, rags, clothes and trash bags from Walmart." (Doc. 73-1, p. 8). Defendant Wood went on to conclude in her report that "I also know that on 04/26/2021 Carlos Roundtree, Aaliyah Duncan and Marquis Parrish went to the Walmart Super Center located at 14030 SR-204 E to purchase cleaning supplies, towels, wash rags, trash bags and clothes. I saw the video footage captured by Walmart security cameras. It was determined that the shooting death of Charles Vinson occurred between the hours of 0310 on 04/26/2121 and 0800 hours on 04/26/2021, It was also determined that Charles Vinson body was disregarded from the 2016 red Toyota Camry between those hours as well at 2429 Julia Law Street behind shed." (Doc. 73-1, p. 9).

In the Internal Affairs investigation, Defendant Wood was asked how she knew Marquis Parrish was at Walmart. "She stated that she did not remember, but it could have been someone that she interviewed that told her that Marquis was there. She stated that she remembers seeing Aaliyah Duncan on the surveillance footage, but may have placed the other individuals, to include Marquis Parrish, at the Walmart through interviewing co-defendants." (Doc. 64-11, p. 8). A review of Defendant Wood's report reveals that the source of her information was Carlos Roundtree. Defendant Wood was truthful, and she never claimed to have seen Plaintiff Parrish in the security video at Walmart.

Without repeating all of the facts in her report, when one leaves out the the alleged false or incorrect statements in her report, Plaintiff Wood had ample probable cause for the arrest of Plaintiff Parrish.  See Doc. 73-1.

## Conclusion

For the reasons set forth above, this Court should grant Defendant Wood's Motion for Summary Judgment.

This March 19, 2025.

> **/s Charles E. Cox, Jr.**
> **Charles E. Cox, Jr., LLC**
> Ga. Bar No. 192305
> Post Office Box 67
> Macon, Georgia 31202-0067
> Telephone:  (478) 757-2990
> Facsimile:  (478) 757-2991
> E-mail:  Charles@cecoxjr.com

**CERTIFICATE OF SERVICE**

    I, Charles E. Cox, Jr., hereby certify that I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, who will send notification and a copy of such to all counsel of record.

    This March 19, 2025.

    **/s Charles E. Cox, Jr.**
**Charles E. Cox, Jr., LLC**
Ga. Bar No. 192305
Post Office Box 67
Macon, Georgia 31202-0067
Telephone:  (478) 757-2990
Facsimile:  (478) 757-2991
E-mail:  Charles@cecoxjr.com